UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------- x
SHARI L. DEMBIN and BURTON T. FRIED,   :
                                        :
                Plaintiffs,   :   Civil Action No.:
                                        :
      v.   :
                                        :   **COMPLAINT**
LVI SERVICES INC., LVI PARENT CORP., and:
SCOTT E. STATE,                         :
                                        :   **JURY TRIAL DEMANDED**
                Defendants.   :
                                        :
---------------------------------------------------------------- x

Plaintiffs Shari L. Dembin ("Dembin") and Burton T. Fried ("Fried") (together, "Plaintiffs"), by and through their undersigned counsel, Madsen, Prestley & Parenteau LLC, as and for their Complaint in this action against Defendants LVI Services Inc. ("LVI"), LVI Parent Corp. (the "Parent") (together, the "LVI Defendants") and Scott E. State ("State") (all together, "Defendants"), hereby allege as follows:

## NATURE OF THE CLAIMS

1. This is an action for declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendants' unlawful discrimination and/or retaliation against Plaintiffs in violation of the Connecticut Fair Employment Practices Act, Connecticut General Statute §§ 46a-51 *et seq.* ("CFEPA").

## JURISDICTION AND VENUE

2. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332, as there is complete diversity of citizenship between Plaintiffs, residents of Connecticut, and all Defendants, and this action involves an amount in controversy in excess of $75,000, exclusive of interest and costs.

1

3. Venue is proper in this district pursuant to 28 U.S.C. §1391(a) because LVI is a corporation doing business in the State of Connecticut and is subject to personal jurisdiction in this district, and a substantial part of the events giving rise to the claims herein occurred in the State of Connecticut.

## PROCEDURAL REQUIREMENTS

4. Ms. Dembin and Mr. Fried filed complaints with the Connecticut Commission on Human Rights and Opportunities ("CHRO") alleging violations of the CFEPA on or about March 10, 2011 and May 16, 2011, respectively.

5. On or about October 17, 2011, Plaintiffs received notices that the CHRO had released jurisdiction over their complaints. This Complaint has been filed within 90 days of Plaintiffs' receipt of their release of jurisdiction.

6. Pursuant to Conn. Gen. Stat. §46a-103, Plaintiffs will serve a copy of this Complaint upon the CHRO at the same time the Complaint is served on Defendants.

## PARTIES

7. Plaintiff Burton T. Fried, a former employee of LVI and Chairman of the Board of Directors of Parent (the "Board"), was born on February 26, 1940 and is currently 71 years of age. Mr. Fried is a resident of the State of Connecticut. At all relevant times, Mr. Fried met the definition of an "employee" under the CFEPA throughout his employment with LVI.

8. Plaintiff Shari L. Dembin, a former employee of LVI, is a resident of the State of Connecticut. At all relevant times, Ms. Dembin met the definition of an "employee" under the CFEPA throughout her employment with LVI.

9. Defendant LVI Services Inc., a Delaware corporation, maintains its principal place of business in the State of New York. At all relevant times, both Mr. Fried and Ms.

Dembin worked in LVI's Westport, Connecticut office and LVI met the definition of an "employer" under the CFEPA.

10. Defendant LVI Parent Corp., a Delaware corporation and the sole shareholder of LVI, maintains its principal place of business in the State of New York. At all relevant times, Parent met the definition of an "employer" and/or "agent thereof" under the CFEPA.

11. Defendant Scott E. State, who is approximately 48 years of age, is a resident of the State of Colorado. At all relevant times, he is, and has been, a member of the Board, as well as employed by LVI as its President and CEO, in which capacity he participated directly and/or aided and abetted in the unlawful retaliation against Ms. Dembin as alleged herein.

## FACTUAL ALLEGATIONS

**Plaintiff Burton T. Fried**

12. LVI is an environmental remediation company which, along with all of its subsidiaries and related companies, is comprised of thousands of employees across approximately 20 offices throughout the United States.

13. Mr. Fried, who has been referred to as the "founder" of LVI, was born on February 26, 1940. Hired by LVI in July 1986, he was the General Counsel of LVI until he became its President and Chief Executive Officer in 1989.

14. Because LVI became the dominant leader in its industry while he was President and CEO, Mr. Fried, in 2005, recommended to the then current owner of LVI that it find a President and CEO with experience managing a billion-dollar company. However, Mr. Fried had no intention of retiring once a new President and CEO was hired and he intended to continue working for LVI as an employee with the job title of Chairman, while also continuing to serve as Chairman of the Board.

15. In or around July 2006, Robert McNamara was hired by LVI as its President and CEO and Mr. Fried became Chairman of LVI.

16. As Chairman of LVI under Mr. McNamara, Mr. Fried was responsible for, among other things, strategic growth, legal matters and sales. As Chairman, Mr. Fried's work performance was excellent.

17. In early 2010, Mr. McNamara resigned and Mr. Fried was asked by Brian Simmons ("Simmons"), a member of the Board, to be the interim President and CEO of LVI until Mr. McNamara's replacement could be found. Not only did Mr. Fried agree to serve in this capacity, but he also continued to serve as Chairman of LVI and he intended to continue as Chairman of LVI once a new President and CEO was hired.

18. While interim President and CEO, Mr. Fried's work performance was excellent. In fact, he was specifically told by Simmons that he was "earning every penny" of his salary and Rajay Bagaria ("Bagaria") and Gerald J. Girardi ("Girardi"), two other Board members, commended Mr. Fried's performance by writing that "we are fortunate to have Burt Fried as interim CEO who has done a good job stabilizing the situation."

19. In or around August 2010, State, who was 47 years old at the time, was introduced to Mr. Fried as a candidate for President and CEO of LVI.

20. On September 14, 2010, before State was even hired, he inquired about how Mr. Fried could be removed as Chairman of the Board.

21. Again, before he was hired, State asked John Leonard, the Chief Operating Officer of LVI, if Mr. Fried, who was 70 years old at the time, was going to retire. Mr. Leonard told State that Mr. Fried was not going to retire. In fact, Mr. Fried had often told Mr. Leonard that he intended to die in his chair.

15. In or around July 2006, Robert McNamara was hired by LVI as its President and CEO and Mr. Fried became Chairman of LVI.

16. As Chairman of LVI under Mr. McNamara, Mr. Fried was responsible for, among other things, strategic growth, legal matters and sales. As Chairman, Mr. Fried's work performance was excellent.

17. In early 2010, Mr. McNamara resigned and Mr. Fried was asked by Brian Simmons ("Simmons"), a member of the Board, to be the interim President and CEO of LVI until Mr. McNamara's replacement could be found. Not only did Mr. Fried agree to serve in this capacity, but he also continued to serve as Chairman of LVI and he intended to continue as Chairman of LVI once a new President and CEO was hired.

18. While interim President and CEO, Mr. Fried's work performance was excellent. In fact, he was specifically told by Simmons that he was "earning every penny" of his salary and Rajay Bagaria ("Bagaria") and Gerald J. Girardi ("Girardi"), two other Board members, commended Mr. Fried's performance by writing that "we are fortunate to have Burt Fried as interim CEO who has done a good job stabilizing the situation."

19. In or around August 2010, State, who was 47 years old at the time, was introduced to Mr. Fried as a candidate for President and CEO of LVI.

20. On September 14, 2010, before State was even hired, he inquired about how Mr. Fried could be removed as Chairman of the Board.

21. Again, before he was hired, State asked John Leonard, the Chief Operating Officer of LVI, if Mr. Fried, who was 70 years old at the time, was going to retire. Mr. Leonard told State that Mr. Fried was not going to retire. In fact, Mr. Fried had often told Mr. Leonard that he intended to die in his chair.

22. On September 19, 2010, despite already being told by Mr. Leonard that Mr. Fried had no intention of retiring, State wrote the following in the body of a lengthier email to Robert Hogan, a member of the Board:

> In the best-case scenario Burt will decide to retire at some date certain from LVI upon a new CEO being named and offer to support the business under a consulting agreement in any way the new CEO sees fit. Several members of the senior team have told me that Burt will never retire because he has no other interests and nothing else to do. That is not a healthy situation for Burt or LVI.

23. On approximately September 28, 2010, State was hired by LVI as its President and CEO. Upon State's hire, Mr. Fried assumed his prior title and job duties of Chairman of LVI. As Chairman, Mr. Fried's work performance was excellent.

24. On October 19, 2010, State, for the first time since he was hired, met with Mr. Fried to discuss Mr. Fried's job duties.

25. During this meeting, State told Mr. Fried that he was going to take away all of his job duties and give them to other employees (who were younger than Mr. Fried by decades). When Mr. Fried asked State why he was doing this, State admitted asking Mr. Fried: "Burt, you're 71 years of age, how much longer do you expect to work?"

26. State made this age-based discriminatory comment despite knowing that Mr. Fried wanted to "remain active forever."

27. In response to State's discriminatory decision and remark, Mr. Fried told State that he was 70 years old and that he intended to work for LVI for many years to come. Despite Mr. Fried's response, State continued with his discriminatory plan to reassign Mr. Fried's job duties to younger LVI employees.

28. After he met with Mr. Fried, State emailed Simmons that same day and wrote the following sentence in reference to Mr. Fried:

5

> I was clear with him that it was my objective to have him truly
> retire and be just an on call resource.

29.  After his meeting with State, as early as October 19, 2010, Mr. Fried complained to Bagaria, Simmons, and John Schnabel ("Schnabel"), who is another Board member, about State's discriminatory decision to reassign all of his duties and told them that the comment State made about his age was discriminatory.

30.  On November 4, 2010, the Board held a quarterly meeting which Mr. Fried attended.

31.  During this meeting, Mr. Fried complained to the entire Board about State's discriminatory decision to reassign all of his duties and told them that the comment State made about his age was discriminatory.  However, the Board decided not to investigate Mr. Fried's complaint of age discrimination, even though an attorney who is LVI's outside counsel was present at the Board meeting.

32.  On November 5, 2010, State emailed his personal friend, who he was communicating with about LVI business, and wrote the following sentence in reference to Mr. Fried:

> In a battle with founder about his need to retire but Board gets it
> and is working to exit him with some respect.

33.  On November 15, 2010, Mr. Fried's attorneys hand delivered a letter to State's attention at LVI's New York City office to address the discriminatory conduct that Mr. Fried previously complained about.

34.  On November 16, 2010, a majority of the Board members (Girardi, Simmons, Hogan, Schnabel and State) discussed the November 15 letter.  Their discussion, which was

memorialized in writing, reflected the Board's intention to ignore the issues raised in the November 15 letter and instead, to send a letter to Mr. Fried.

35. The letter the Board sent to Mr. Fried, which was sent to him on November 16, 2010, informed Mr. Fried that after 24 years at LVI, his employment with LVI would be terminated effective November 30, 2010.

36. Mr. Fried's job duties were reassigned to employees who were between 13 to 35 years younger than him.

**Plaintiff Shari L. Dembin**

37. Plaintiff Shari Dembin, who is Mr. Fried's daughter, graduated from Ithaca College in 1995 with a B.A. in Sociology. She began working for LVI in April 1996 as an Administrative Assistant.

38. In 1998, Ms. Dembin was promoted to Insurance and Bonding Administrator. In her new position, she assumed responsibility for administering insurance and bonding for all of LVI and reported to Joseph Annarumma, LVI's Treasurer and Secretary, who was previously responsible for handling insurance and bonding. In addition, Ms. Dembin was later given responsibility for risk management, LVI's travel program, and LVI's meetings and promotions.

39. Throughout her tenure, Ms. Dembin's work performance was excellent and she regularly received raises.

40. Approximately one month after Mr. Fried first complained to Bagaria, Simmons and Schnabel about being discriminated against, and little over one week after he complained to the Board about the same thing, on November 13, 2010, LVI's senior management met in Denver, Colorado to discuss, among other things, potential layoffs.

41. At or some time shortly after this meeting, out of the thousands of people employed within the LVI organization that were eligible for layoff, State decided to terminate Ms. Dembin, along with approximately 10 others, effective January 2011. At the time of his decision, State was aware that Ms. Dembin was Mr. Fried's daughter.

42. This decision to include Ms. Dembin in the layoff was in retaliation for Mr. Fried's prior complaints of discrimination.

43. Ms. Dembin's job duties were reassigned to two employees with far less experience than her.

44. Significantly, prior to Mr. Fried's complaints of discrimination, LVI conducted several rounds of layoffs in which every LVI employee was considered for layoff. However, Ms. Dembin was neither identified as a candidate for layoff, nor selected for layoff in those prior rounds.

45. After Ms. Dembin was notified of her termination, she met with Mr. Annarumma and asked him, "Why are they doing this to me?" In response, Mr. Annarumma, her supervisor, said "I don't know." When Ms. Dembin asked Mr. Annarumma if she was being terminated because of her father, he again said "I do not know."

**The LVI Defendants**

46. At all relevant times, the LVI Defendants operated as a single, integrated enterprise, a single employer, or as joint employers.

47. Parent operates from the same offices as LVI. All the corporate officers of Parent, except Hogan, are employed by LVI. Additionally, three of the four officers of Parent maintain offices at the New York office of the LVI Defendants.

48.     Parent is a holding company that maintains no payroll and conducts no business outside of signing documents.

49.     Further, the Board exercises authority over the terms and conditions of employees of LVI.  In particular, the Board altered the terms of Mr. Fried's employment with LVI by stripping him of his job duties and unilaterally terminating his employment.

50.     Additionally, Parent is the sole shareholder and owner of LVI.  The only assets of Parent are the shares it holds of LVI.

51.     Due to the foregoing, the LVI Defendants have an interrelation of operations, centralized control over labor relations, common management and common ownership.  As such, they are jointly and severably liable for the unlawful conduct alleged herein.

**AS AND FOR A FIRST CLAIM FOR RELIEF**
**(Discrimination in Violation of the CFEPA)**

52.     Mr. Fried hereby repeats and realleges each and every allegation in paragraphs 1 through 51, inclusive, as if fully set forth herein.

53.     The LVI Defendants discriminated against Mr. Fried on the basis of his age in violation of the CFEPA by subjecting him to disparate treatment, including, but not limited to, stripping him of his job responsibilities and terminating his employment.

54.     As a direct and proximate result of the unlawful discriminatory conduct in violation of the CFEPA, Mr. Fried has suffered, and continues to suffer, monetary and/or economic harm for which he is entitled to an award of monetary damages and other relief.

55.     As a direct and proximate result of the unlawful discriminatory conduct in violation of the CFEPA, Mr. Fried has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, humiliation, demoralization, embarrassment,

emotional pain and suffering, as well as loss of enjoyment, for which he is entitled to an award of monetary damages and other relief.

56. The LVI Defendants' unlawful discriminatory conduct constitutes a willful, wanton, reckless and/or malicious violation of the CFEPA entitling Mr. Fried to an award of punitive damages.

## AS AND FOR A SECOND CLAIM FOR RELIEF
**(Retaliation in Violation of the CFEPA)**

57. Mr. Fried hereby repeats and realleges each and every allegation in paragraphs 1 through 56, inclusive, as if fully set forth herein.

58. Defendants retaliated against Mr. Fried in violation of the CFEPA by terminating his employment with LVI, and by terminating Ms. Dembin's employment, after he engaged in protected activity by opposing Defendants' discriminatory conduct.

59. As a direct and proximate result of the unlawful retaliatory conduct in violation of the CFEPA, Mr. Fried has suffered, and continues to suffer, monetary and/or economic harm for which he is entitled to an award of monetary damages and other relief.

60. As a direct and proximate result of the unlawful retaliatory conduct in violation of the CFEPA, Mr. Fried has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, humiliation, demoralization, embarrassment, emotional pain and suffering, as well as loss of enjoyment, for which he is entitled to an award of monetary damages and other relief.

61. The Defendants' unlawful retaliatory conduct constitutes a willful, wanton, reckless and/or malicious violation of the CFEPA entitling Mr. Fried to an award of punitive damages.

**AS AND FOR A THIRD CLAIM FOR RELIEF**
**(Retaliation in Violation of the CFEPA)**

62. Ms. Dembin hereby repeats and realleges each and every allegation in paragraphs 1 through 61, inclusive, as if fully set forth herein.

63. Defendants retaliated against Ms. Dembin in violation of the CFEPA by terminating her employment, after Mr. Fried, her father, engaged in protected activity by opposing Defendants' discriminatory conduct.

64. As a direct and proximate result of the unlawful retaliatory conduct in violation of the CFEPA, Ms. Dembin has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

65. As a direct and proximate result of the unlawful retaliatory conduct in violation of the CFEPA, Ms. Dembin has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, humiliation, demoralization, embarrassment, emotional pain and suffering, as well as loss of enjoyment, for which she is entitled to an award of monetary damages and other relief.

66. Defendants' unlawful retaliatory conduct constitutes a willful, wanton, reckless and/or malicious violation of the CFEPA entitling Ms. Dembin to an award of punitive damages.

**AS AND FOR A FOURTH CLAIM FOR RELIEF**
**(Aiding and Abetting Violations of the CFEPA)**

67. Ms. Dembin hereby repeats and realleges each and every allegation in paragraphs 1 through 66, inclusive, as if fully set forth herein.

68. State knowingly and/or recklessly aided and abetted in the unlawful retaliation against Ms. Dembin in violation of the CFEPA.

69. As a direct and proximate result of the unlawful retaliatory conduct, Ms. Dembin has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

70. As a direct and proximate result of the unlawful retaliatory conduct, Ms. Dembin has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, humiliation, demoralization, embarrassment, emotional pain and suffering, as well as loss of enjoyment, for which she is entitled to an award of monetary damages and other relief.

71. State's unlawful retaliatory conduct constitutes a willful, wanton, reckless and/or malicious violation of the CFEPA entitling Ms. Dembin to an award of punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that the Court enter judgment in their favor and against Defendants, containing the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the State of Connecticut;

B. An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiffs for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment;

D. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiffs for all non-monetary and/or compensatory damages, including, but not limited to, compensation for their mental anguish and emotional distress, including, but

not limited to, humiliation, demoralization, embarrassment, emotional pain and suffering, as well as loss of enjoyment, and any other physical or mental injuries;

E.   An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiffs for harm to their professional and personal reputation and loss of career fulfillment;

F.   An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiffs in an amount to be determined at trial, plus prejudgment interest;

G.   An award of punitive damages;

H.   An award of costs that Plaintiffs have incurred in this action, as well as Plaintiffs' reasonable attorneys' fees to the fullest extent permitted by law; and

I.   Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues of fact and damages stated herein.

Dated: Hartford, Connecticut
November 30, 2011

>Respectfully submitted,
>
>**MADSEN, PRESTLEY & PARENTEAU**
>
>By:   \_\_\_\_\_/s/Todd Steigman_____
>William Madsen (ct 09853)
>Todd Steigman (ct26875)
>Madsen, Prestley & Parenteau, LLC
>44 Capitol Ave.
>Suite 201
>Hartford, CT 06106
>Telephone: (860) 246-2466
>Facsimile:  (860) 246-1794
>tsteigman@mppjustice.com
>
>*Attorneys for Plaintiffs*