# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHARI L. DEMBIN and BURTON T. FRIED, | : |
| | : |
| | :    **CIVIL NO.: 3:11-CV-01855-JBA** |
| Plaintiffs, | : |
| | : |
| | : |
| v. | : |
| | : |
| | :    **APRIL 26, 2012** |
| LVI SERVICES, INC., LVI PARENT CORP., and SCOTT E. STATE, | : |
| | : |
| | : |
| Defendants. | : |

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Michael D. Mann (phv02157)
(mdmann@sidley.com)
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

Deborah Dehart Cannavino (CT08144)
(dcannavino@littler.com)
Matthew K. Curtin (CT27765)
(mcurtin@littler.com)
LITTLER MENDELSON, P.C.
One Century Tower
265 Church Street, Suite 300
New Haven, CT 06510
(203) 974-8700

***ORAL ARGUMENT REQUESTED***

# TABLE OF CONTENTS

Page

INTRODUCTION ....................................................................................................... 1

STATEMENT OF FACTS ......................................................................................... 3

    A.    The Sale of LVI to CHS ...................................................... 3

    B.    Scott State's Hire as President and CEO of LVI ......................... 4

    C.    Scott State's Transition to CEO of LVI .................................. 5

    D.    October 19, 2010 Meeting ................................................. 7

    E.    The November 4th Board Meeting ......................................... 8

    F.    Fried's Litigation ............................................................ 9

LEGAL ARGUMENT ............................................................................................. 12

    I.    SUMMARY JUDGMENT STANDARD ..................................... 12

    II.    PRINCIPLES OF RES JUDICATA MANDATE DISMISSAL ............ 13

        A.    There is a Final Judgment on the Merits by a Court of Competent Jurisdiction between the Same Parties ........................... 15

        B.    There is An Exact Identity of Issues .............................. 16

        C.    Fried Had Multiple Opportunities to Bring His CFEPA Claim in *Fried I* ...................................................... 18

    III.    COLLATERAL ESTOPPEL BARS PLAINTIFF'S CLAIMS ............. 22

        A.    The District Court's Findings in *Fried I* Bar His CFEPA Discrimination Claims under Both a Mixed-Motives Theory or Burden-Shifting Approach ......................................... 23

        B.    The District Court's Findings in *Fried I* Bar his CFEPA Retaliation Claims ............................................... 27

    IV.    FRIED'S CFEPA CLAIMS FAIL ON THE MERITS ...................... 27

| | | | |
|---|---|---|---|
| | 1. | Fried Cannot Establish a *Prima Facie* Case | 28 |
| | 2. | Defendants Would Have Made the Same Employment Decision for a Legitimate Reason | 31 |
| B. | | FRIED'S RETALIATION CLAIMS UNDER THE CFEPA SHOULD BE DISMISSED | 33 |
| | 1. | The Purported Adverse Employment Decisions Taken Against Fried Were Made Before His Discrimination Complaint | 34 |
| | 2. | Fried Cannot Rebut the Legitimate Business Reason for His Termination | 35 |
| V. | | FRIED'S CLAIMS AGAINST STATE SHOULD BE DISMISSED | 36 |
| CONCLUSION | | | 38 |

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aiello v. Stamford Hosp.,*
    No. 3:09-cv-1161, 2011 WL 3439459 (D. Conn. Aug. 8, 2011) ................................24, 26, 29

*Alungbe v. Bd. of Trustees of Connecticut State University (CSU) System,*
    283 F. Supp. 2d 674 (D. Conn. 2003)..................................................................37

*Anaconda-Ericsson Inc. v. Hessen,*
    762 F.2d 185 (2d Cir. 1985) ...........................................................................15

*Anderson v. Derby Bd. Of Educ.,*
    718 F. Supp. 2d 258 (D. Conn. 2010)................................................................37

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ................................................................................12, 13

*Ayantola v. The Board of Trustees of Community Tech. Colleges of State of Conn.,*
    No. 3:05-cv-957, 2007 WL 3432748 (D. Conn. Nov. 15, 2007) .............................21

*Barnes v. Royal Health Care LLC,*
    357 Fed. Appx. 375 (2d Cir. 2009), *cert. denied,* 131 S. Ct. 106 (2010) .........................20, 21

*Berkowitz v. County of Orange,*
    120 F. Supp. 2d 386 (S.D.N.Y. 2000) ..........................................................25, 26, 30

*Berlitz Schools of Languages, Inc. v. Everest House,*
    619 F.2d 211 (2d Cir. 1980) ...........................................................................14

*Bunk v. General Services Admin.,*
    408 F. Supp. 2d 153 (W.D.N.Y. 2006)..............................................................24

*Carlyle Johnson Mach. Co. v. April,*
    2000 Conn. Super. LEXIS 403 (Conn. Super. Feb. 10, 2000) .................................14

*Carter v. City of Hartford,*
    No. 397-cv-832, 1998 WL 823044 (D. Conn. Sept. 30, 1998) .........................36, 37

*Cassotto v. Potter,*
    No. 3:09-cv-1303, 2012 WL 603281 (D. Conn. Feb. 24, 2012) .............................27

*Chen v. Zygo Corp.,*
    No. 3:95-879, 1997 U.S. Dist. LEXIS 19708 (D. Conn. Mar. 27, 1997)................18

*Cieszkowska v. Gray Line New York*,
    295 F.3d 204 (2d Cir. 2002) ................................................................................18

*Cimino v. Pratt & Whitney*,
    No. CV 075011977, 2007 WL 4577957 (Conn. Super. 2007)................................33

*Comm'r of Internal Revenue v. Sunnen,.*,
    333 U.S. 591 (1948) ...........................................................................................13

*Cooke v. Prototype & Plastic Mold Co., Inc.*,
    220 F. Supp. 2d 104 (D. Conn. 2002)..................................................................37

*Crews v. The Trustees of Columbia Univ.*,
    452 F. Supp. 2d 504 (S.D.N.Y. 2006) ..................................................................26

*Day v. Moscow*,
    955 F.2d 807 (2d Cir. 1992) ................................................................................16

*De La Cruz v. New York City Human Resources Admin. Dept. of Social Servs.*,
    82 F.3d 16 (2d Cir. 1996) ...................................................................................31

*Desert Palace, Inc. v. Costa*,
    539 U.S. 90 (2003) .............................................................................................25

*Donahue v. Norwich Roman Catholic Diocesan Corp.*,
    No. 3:05-cv-413, 2008 WL 821890 (D. Conn. Mar. 26, 2008)..............................27

*Donahue v. Windsor Locks Bd. of Fire Comm'rs*,
    834 F.2d 54 (2d. Cir. 1987) ................................................................................12

*Durgin v. Town of Madison*,
    No. 3:10-cv-347, 2011 WL 692989 (D. Conn. Feb. 18, 2011) ..............................36

*Faraday v. Blanchette*,
    596 F. Supp. 2d 508 (D. Conn. 2009)..................................................................22

*Farrar v. Town of Stratford*,
    537 F. Supp. 2d 332 (D. Conn. 2008)..................................................................23

*Federated Dept. Stores, Inc. v. Moitie*,
    452 U.S. 394 (1981) ...........................................................................................14

*Fitzgerald v. Alleghany Corp.*,
    904 F. Supp. 223 (S.D.N.Y. 1995) ......................................................................26

*Fried v. LVI Services, Inc.*,
    No. 10-cv-9308, Slip Copy, 2011 WL 4633985 (S.D.N.Y. Oct. 4, 2011) ......................passim

*Ghaly v. Southeastern Mental Health Authority,*
No. 3:08-cv-293, 2011 WL 1225996 (D. Conn. Mar. 30, 2011) .............................................. 15

*Grady v. Affiliated Cent. Inc.,*
130 F.3d 553 (2d Cir. 1997) ...................................................................................................... 30

*Gross v. FBL Fin. Servs.,*
557 U.S. 167 (2009) .................................................................................................................. 23

*Harris v. Beth Isr. Med. Ctr.,*
367 Fed. Appx. 184 (2d Cir. 2010) ..................................................................................... 18, 19

*Herendeen v. Chamption International Corp.,*
525 F.2d 130 (2d Cir. 1975) ..................................................................................................... 15

*Hildabrand v. Difeo P'ship, Inc.,*
89 F. Supp. 2d. 202 (D. Conn. 2000) ....................................................................................... 13

*Hunter v. St. Francis Hosp.,*
281 F. Supp. 2d 534 (E.D.N.Y. 2003) ...................................................................................... 36

*Interoceanica Corp. v. Sound Pilots,*
107 F.3d 86 (2d Cir. 1997) ................................................................................................. 16, 22

*Issac v. Truck Serv., Inc.,*
253 Conn. 416, 752 A.2d 509 (2000) ....................................................................................... 14

*Jalal v. Columbia Univ.,*
4 F. Supp. 2d 224 (S.D.N.Y. 1998) ......................................................................................... 26

*Joe's Pizza, Inc. v. Aetna Life and Cas. Co.,*
236 Conn. 863, 675 A.2d 441 (1996) ....................................................................................... 18

*Jorgensen v. Sony BMG Music Entm't.,*
310 Fed. Appx. 419 (2d Cir. 2008) ........................................................................................... 19

*Kaplan v. Beth Israel Med. Ctr.,*
No. 07-cv-8842, 2010 WL 1253967 (S.D.N.Y. Mar. 31, 2010) .............................................. 33

*Kaytor v. Elec. Boat Corp.,*
609 F.3d 537 (2d Cir. 2010) ..................................................................................................... 23

*Kole v. FCI Danbury,*
No. 09-cv-1865, 2010 WL 2679981 (D. Conn. June 28, 2010) ............................................... 22

*Kucharski v. Cort Furniture Rental,*
594 F. Supp. 2d 207 (D. Conn. 2008) ........................................................................... 23,25, 26, 28

*Lawrence v. Richman Group Capital Corp.*,
   358 F. Supp. 2d 29 (D. Conn. 2005)............................................................................14

*Levy v. Comm'n of Human Rights and Opportunities*,
   236 Conn. 96 (1996)....................................................................................................23, 27

*Lynch v. Pathmark Supermarkets*,
   987 F. Supp. 236 (S.D.N.Y. 1997) ..............................................................................31

*McDonnell-Douglas Corp. v. Green*,
   411 U.S. 792 (1973) .............................................................................................passim

*Media Group, Inc. v. Tuppatsch*,
   298 F. Supp. 2d 235 (D. Conn. 2003)........................................................................13, 18

*Monahan v. N.Y. City Dep't. of Corrections*,
   214 F.3d 275 (2d Cir. 2000) .......................................................................................14

*Mulero v. Hartford Bd. of Educ.*,
   No. 3:05-cv-630, 2006 WL 752852 (D. Conn. Mar. 20, 2006)..................................19, 20

*Nativita St. Louis v. New York City Health & Hosp. Corp.*,
   682 F. Supp. 2d 216 (E.D.N.Y. 2010) .......................................................................32

*Negron v. Rexam Cosmetic Packaging*,
   No. CV 044000333S, 2006 WL 240528 (Conn. Super. Jan. 11, 2006) ......................27

*O'Connor v. Pierson*,
   568 F.3d 64 (2d Cir. 2009) .........................................................................................14

*Overview Books, LLC v. United States*,
   438 Fed. Appx. 31 (2d Cir. 2011)...............................................................................18

*Paul v. Bank of America*,
   No. 3:08 Civ. 1066, 2010 WL 419405 (D. Conn. Jan. 29, 2010)...............................34

*Peia v. United States Bankr. Courts*,
   152 F. Supp. 2d 226 (D. Conn. 2001).........................................................................15

*Perez v. Danbury Hosp.*,
   347 F.3d 419 (2d Cir. 2003) .......................................................................................13, 14

*Perodeau v. City of Hartford*,
   259 Conn. 729 (Conn. 2002) ......................................................................................37

*Pike v. Freeman*,
   266 F.3d 78 (2d Cir. 2001) .........................................................................................14

*Price Waterhouse v. Hopkins*,
    490 U.S. 228 (1989) ........................................................................................................passim

*Proctor v. MCI Commc'n. Corp.*,
    19 F. Supp. 2d 11 (D. Conn. 1998)..................................................................................25

*Raskin v. Wyatt Co.*,
    125 F.3d 55 (2d Cir. 1997) ..........................................................................................passim

*Rhodes v. Advance Property Management, Inc.*,
    No. 3:10-cv-826, 2011 WL 4739750 (D. Conn. Oct. 7, 2011).................................22

*Ross v. New Canaan Envtl. Comm'n*,
    433 Fed. Appx. 7 (2d Cir. 2011)......................................................................................14

*Sebold v. City of Middletown*,
    2007 WL 2782527 (D. Conn. 2007)................................................................................37

*Sekor v. Capwell*,
    1 F. Supp. 2d 140 (D. Conn. 1998)..................................................................................18

*Sellick v. Agency-Castle Point*,
    No. 09-cv-6616, 2010 WL 2813431 (S.D.N.Y. July 16, 2010) .................................33

*Shapiro v. N.Y. City Dep't of Educ.*,
    561 F. Supp. 2d 413 (S.D.N.Y. 2008) ..........................................................................24

*Slattery v. Swiss Reinsurance Am. Corp.*,
    248 F.3d 87 (2d Cir. 2001) ..............................................................................................36

*Stone v. Manhattan & Bronx Surface Transit Operating Author.*,
    539 F. Supp. 2d 669 (E.D.N.Y. 2008)............................................................................32

*Sullivan v. Hyland*,
    647 F. Supp. 2d 143 (D. Conn. 2009)............................................................................15

*Tibbetts v. Stempel*,
    354 F. Supp. 2d 137 (D. Conn. 2005)......................................................................13, 14

*Timbie v. Eli Lilly & Co.*,
    429 Fed. Appx. 20 (2d Cir. 2011)....................................................................................24

*Tyler v. Bethlehem Steel Corp.*,
    958 F.2d 1176 (2d Cir. 1992), *cert. denied* 506 U.S. 826 (1992)...........................26

*United Oil Co. v. Urban Redevelopment Comm'n*,
    158 Conn. 364, 260 A.2d 596 (1969) ..........................................................................13

*Van Dine v. Robert Bosch Corp.*,
   62 F. Supp. 2d 644 (D. Conn. 1999)................................................................13

*Wagner v. Board of Trustees for Connecticut State University*,
   No. 85023775, 2012 WL 669544 (Conn. Super. Jan. 30, 2012) ........................33

*Waldman v. Village of Kiryas Joel*,
   207 F.3d 105 (2d Cir. 2000) ...............................................................................18

*Ward v. U.S. Surgical Div. of Tyco Healthcare Group, LP*,
   No. 3:03-cv-1326, 2005 WL 2972974 (D. Conn. Sept. 16, 2005) .....................34

*Weber v. Fujifilm Medical Systems U.S.A., Inc.*,
   No. 3:10-cv-401, 2012 WL 681681 (D. Conn. Feb. 28, 2012) ....................23, 24

*Weichman v. Chubb & Son*,
   552 F. Supp. 2d 271 (D. Conn. 2008).................................................................29

*Weinstock v. Columbia University*,
   224 F.3d 33 (2d Cir. 2000) .................................................................................13

*Wilkes v. Wyoming Dep't of Empl. Div. of Labor*,
   314 F.3d 501 (10th Cir. 2002) ...........................................................................19

*Woods v. Dunlop Tire Corp.*,
   972 F.2d 36 (2d Cir. 1992) ...........................................................................16, 20

*Yoon v. Fordham Univ. Faculty & Admin. Ret. Plan*,
   263 F.3d 196 (2d Cir. 2001) ...............................................................................16

*Zabelle v. Coratolo*,
   816 F. Supp. 115 (D. Conn. 1993)......................................................................13

*Zawacki v. Realogy Corp.*,
   628 F. Supp. 2d 274 (D. Conn. 2009).................................................................24

*Zboray v. Wal-Mart Stores East, L.P.*,
   650 F. Supp. 2d 174 (D. Conn. 2009)............................................................33, 34

**STATUTES**

Age Disrimination in Employment Act of 1967,
   29 U.S.C. §§ 621, *et seq.* ............................................................................passim

Connecticut Fair Employment Practices Act,
   Conn. Gen. Stat. §§ 46a-51, *et seq.* ...........................................................passim

New York City Human Rights Law,
    New York City Administrative Code §§ 8-101, *et seq.*.......................................................9, 10

**OTHER AUTHORITIES**

47 Am. Jur. 2d Judgments § 475 ........................................................................................18

18A Charles A. Wright, et al., Federal Practice and Procedure § 4433 (2d ed. 2002).................15

Fed. R. Civ. P. 56..............................................................................................................12

Defendants, LVI Services, Inc. ("LVI"), LVI Parent Corp. ("LVI Parent") and Scott E. State (collectively, the "Defendants"), respectfully submit this memorandum of law in support of their motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, seeking dismissal as to all counts of the Complaint filed by plaintiff Burton T. Fried (the "Plaintiff" or "Fried").[1]

## INTRODUCTION

This action comes on the heels of Plaintiff's unsuccessful pursuit of factually identical allegations in *Fried v. LVI Services, et al.*, 10-cv-9308 (S.D.N.Y.) (JSR) (hereinafter, "*Fried I*"), an action formerly pending in the United States District Court for the Southern District of New York, on which summary judgment has been granted, and an appeal is pending. No new facts or issues have come to light, only a new theory of liability under the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. §§ 46a-51, *et seq.* ("CFEPA").

The essence of Plaintiff's claims arise from his refusal to honor his own offer to make way for the new CEO of Defendant LVI. In September 2010, Fried, the Chairman and interim CEO of LVI, persuaded Defendant Scott State to take the permanent CEO position by making him an "offer he can't refuse": Fried would "remain at LVI until [State], the Board or I decide its [sic] time for me to leave . . . . [State] will be in charge and get all the room he wants from me." Exhibit A to the Affirmation of Michael D. Mann, dated April 26, 2012 ("Mann Aff."). Less than a month after becoming CEO, State took Fried up on his offer, and asked him to consider limiting his activities on behalf of LVI to those customarily exercised by a Chairman. In

---

[1] On or about January 9, 2012, co-plaintiff Shari L. Dembin ("Dembin"), who is Fried's daughter, filed a stipulation of dismissal, with prejudice, thereby dismissing her from this action. It is only Fried's claims that remain pending before this Court.

1

response, Fried cried discrimination, and embarked on a campaign against LVI and State that continues to this day.

Fried's new theory under the CFEPA, however, does not change the fact that he has failed to adduce even a shred of evidence that the decision by LVI's Board of Directors to offer him the opportunity to continue as Chairman of the Board and to transition to a consulting arrangement in lieu of employment by LVI, was motivated by any discriminatory animus. Instead, the undisputed evidence shows that Fried had, and has, the abilities to perform a valuable role with LVI, as evidenced by the fact that the very same Board that voted to reduce his role within LVI had only months earlier tapped him to fill the interim CEO role while a permanent candidate was sought. It was not his age, but rather his refusal to relinquish control of the reins of management to State that prompted his dismissal. As Fried testified at his deposition in *Fried I*: "[T]he CEO role, by its title . . . should have the day-to-day and final decision in the operations of the business. And the chairman should be a person who supports the actions of the CEO and in any way that the CEO seeks that advice and counsel." (Pl. Tr., pp. 80-81.)[2] Fried failed to follow his own advice and posed an ultimatum to the Board and to State that he, not they, would determine his role going forward with LVI, creating the rift that led to his termination.

Each allegation in the latest Complaint (the "*Fried II* Compl.")[3] has been presented, hotly contested and considered on the merits by the Honorable Jed S. Rakoff, in the action formerly pending in the United States District Court for the Southern District of New York. Plaintiff had a full and fair opportunity to litigate his claims under the CFEPA, and that he chose not to pursue

---

[2] Copies of relevant pages from the transcript of Burton T. Fried's deposition ("Pl. Tr.") are attached to the Mann Aff. as Exhibit B.

[3] A copy of the *Fried II* Compl. is attached to the Mann Aff. as Exhibit C.

2

options available to him that would have allowed him to bring his CFEPA claims in *Fried I* --

even with a release of jurisdiction from the Connecticut Commission on Human Rights and

Opportunities ("CCHRO") in hand -- precludes this action, in its entirety, under the sound

principles of res judicata and collateral estoppel.  The principles of res judicata do not permit a

litigant to earn a proverbial "second bite at the apple" simply by changing his legal theory of the

case immediately after his first bite at the apple.  And even if this action is somehow not barred

by res judicata and collateral estoppel, which it clearly is, Fried cannot, as a matter of law, set

forth a *prima facie* case of discrimination or retaliation under the CFEPA.  For all the following

reasons, this action should be dismissed, on the merits, in its entirety.

## STATEMENT OF FACTS

LVI is an environmental remediation company specializing in, among other things,

asbestos abatement, demolition, emergency/disaster response such as the response to Hurricane

Katrina, and biological and chemical decontamination.  (*Fried II* Compl., ¶ 12.)  Burton Fried

began his employment with LVI in 1986, and subsequently held various positions including

General Counsel, President and CEO, interim President and CEO and Chairman.  (*Fried II*

Compl., ¶ 13.)  Although LVI's corporate office is in New York City, for the seven years prior to

his departure from LVI, Fried worked out of a satellite office in Westport, Connecticut that LVI

leased exclusively for his personal convenience.  (*Fried II* Compl., ¶ 9; Pl. Tr., pp. 64-66.)

### A.    The Sale of LVI to CHS

In or about November 2005, LVI was purchased by Code Hennessy Simmons LLC

("CHS").  As a condition of the sale and at Fried's insistence, LVI agreed that Fried would be

replaced as LVI's President and CEO, and Fried expressed to the Board his wish to relinquish all

day-to-day operational responsibilities to the new CEO.  (Compl., ¶ 14; Pl. Tr., pp. 74-75, 81;

Mann Aff., Exh. D, p. 3.)  This new arrangement was documented in an agreement between

3

Fried and LVI dated November 16, 2005 (the "November 2005 Agreement"). Pursuant to the November 2005 Agreement, Fried was charged with hiring his replacement as President and CEO. Thereafter, in his new role as Chairman, Fried would have primary responsibility for "strategic growth," at the direction of the new CEO. (Mann Aff., Exh. E; Pl. Tr., pp. 79-81.) Significantly, Fried's employment under the November 2005 Agreement was at-will, and LVI retained at all times the discretion to alter Fried's duties and responsibilities and to terminate Fried's employment without notice or reason. (Mann Aff., Exh. E; Pl. Tr., pp. 83-84.)

Due in large part to Fried's efforts, in or about July 2006, LVI hired Robert McNamara as its new President and CEO. (*Fried II* Compl., ¶ 15.) As contemplated by the November 2005 Agreement, Fried thereupon resigned from his position as President and CEO and assumed the position of Chairman. (*Fried II* Compl., ¶ 15; Pl. Tr., p. 77.)

### B. Scott State's Hire as President and CEO of LVI

In or about April 2010, McNamara abruptly resigned as President and CEO. As a result, the Board of Directors asked Fried, who by then was 70 years old, to accept the position of interim President and CEO until a replacement for McNamara could be found. (*Fried II* Compl., ¶ 7; Pl. Tr., pp. 110-12.) As in 2005, Fried insisted on a prompt search for a new President and CEO to assume the day-to-day management of the business. (*Fried II* Compl., ¶ 14; Pl. Tr., p. 113.) LVI retained an executive search firm, Russell Reynolds Associates, to work with Fried to identify qualified candidates for the position. (Pl. Tr., p. 113.) Fried, who had known individual defendant Scott State for a number of years, identified State as a candidate for the position and introduced him to LVI and the Board. (*Fried II* Compl., ¶ 19; Pl. Tr., pp. 116-17.) State was one of three finalists for the job and ultimately became the choice of Fried and LVI's management. (Pl Tr., p. 121-22.) The Board was equally impressed by State and, upon Fried's recommendation, offered him the position of President and CEO. (Pl. Tr., pp. 121-22.)

4

The offer to State was made on September 8, 2010 and negotiations thereafter ensued. As part of these negotiations, and as a condition for accepting the CEO position, State insisted that he be guaranteed the discretion to run the business as he saw fit. In an email to Fried dated September 21, 2010, Board member Brian Simmons asked Fried to have a conversation with State to assure him that he would have authority as CEO to align his team and manage the business without Fried's interference. (Mann Aff., Exh. A.) Simmons added: "I think it will be very important for him to hear unambiguously from you that he is in charge and you will give him the room he needs." *Id.* Fried responded to Simmons: "I will repeat my offer to Scott. I am prepared to remain at LVI until he, the Board or I decide its time for me to leave . . . an offer he can't refuse . . . . He will be in charge and get all the room he wants from me." *Id.* On September 22, Fried again emailed Simmons to tell him that he had spoken with State and that State "now ha[d] no concern about [Fried's] support in [State's] role as CEO." (Mann Aff., Exh. F.)[4] With assurances from both the Board and Fried that he could manage the business without interference from Fried, State accepted the offer of employment on September 23, 2010 and assumed the CEO role seven days later on October 1, 2010. (Mann Aff., Exh. H; *Fried II* Compl, ¶ 23.)

**C.      Scott State's Transition to CEO of LVI**

State hit the ground running at LVI – meeting and soliciting advice from key LVI management, visiting LVI's many offices, and making the types of decisions he believed necessary to help turnaround what, at that time, was a struggling business. (Mann Aff., Exh. I.) During this transition period, State began to notice some reluctance on Fried's part to relinquish

---

[4] Fried also expressed his willingness to remain at LVI until State, the Board or he decided it was time to leave with a number of his managers, prior to State's start of his employment with LVI. (Mann Aff., Exh. G.)

his interim CEO responsibilities, as he had previously assured State he would do. In addition, State had concerns about Fried's insistence that State confer with him prior to making certain decisions. (State Tr., pp. 213-14.)[5] State's concerns were heightened after Fried sent State a number of emails criticizing him for failing to consult with Fried on various issues such as the suspension of the search for a Chief Information Officer and a meeting with an overseas client. (Mann Aff., Exhs. K, L.) Out of frustration, on October 3, 2010, State forwarded one of Fried's acerbic emails to Robert Hogan, a member of LVI's Board of Directors, stating that he feared a similar reaction every time he made a decision without consulting Fried – "exactly the issue I had prior to accepting the job." (Mann Aff., Exh. M.) On October 5, State promised Hogan he would "lay the ground work for an orderly transition" with Fried and that he intended "to have him available as needed for consultation or special assignments." (Mann Aff., Exh. N.)

On or about October 5, 2010, State and Fried agreed to meet on October 19, 2010 to discuss transition issues, including Fried's future duties as Chairman. (Mann Aff., Exh. O.) On October 14, 2010, Fried sent State an unsolicited email listing responsibilities he purportedly had handled as Chairman under McNamara. (Mann Aff., Exh. P.) To State's surprise, the expansive list included day-to-day operational responsibilities that State envisioned would be performed by him, such as the development and implementation of new business initiatives, the negotiations of company acquisitions and the management of major client relations. *Id.* The list also included responsibilities that State believed could be performed by LVI's General Counsel, Gregory DiCarlo (such as selection of outside counsel and management of LVI litigation and legal matters) and by other members of LVI management and staff (such as review of LVI offers of

---

[5] Copies of the pages of the deposition of Scott State cited in this memorandum are attached to the Mann Aff. as Exh. J.

6

employment and monitoring of employee air travel). (*Id.*; State Tr., pp. 215-18.) State shared the list of responsibilities with members of LVI's Board of Directors and sought input on how best to handle Fried's expectations regarding his role, which State considered an issue for the Board to determine. (Mann Aff., Exh. Q.)

### D.  October 19, 2010 Meeting

On October 19, 2010, State met with Fried to discuss, among other transition items, his proposed responsibilities as LVI Chairman. (*Fried II* Compl, ¶ 24; Pl. Tr., pp. 163-64.) At the meeting, State explained that he believed most of the duties on Fried's list would be more appropriately handled by either him or other LVI management and staff members. (*Fried II* Compl., ¶ 25; Pl. Tr., pp. 180-82; State Tr., p. 263.) State explained that the duties and responsibilities of LVI's Chairman should be those traditionally delegated to the role. (State Tr., pp. 263-64.) Notwithstanding his prior assurances to State that State "will be in charge and get all the room he wants from me", Fried opposed the restructuring of his role. (Mann Aff., Exh. A.) State reminded Fried of his prior assurances, and as a reminder that transition planning and delegation of responsibilities was important, allegedly asked Fried: "Burt, you're 71 years of age, how long do you expect to work . . . . [W]hat if you get hit by a bus[?]"[6] (Pl. Tr., pp. 181-82; State Tr., pp. 264-65.) Despite State's overtures, and despite his own prior assurances, Fried refused to discuss any transition of his role.

After the meeting, State, concerned with Fried's refusal to relinquish any of his day-to-day responsibilities at LVI, asked Simmons and other Board members to intervene. (Mann Aff., Exh. R.) On October 28, 2010, at Simmons' request, Fried sent him the list of responsibilities

---

[6] State testified that this comment echoed a similar statement Fried made to him in a telephone conversation prior to the meeting. (State Tr., pp. 261-62.) It is further worth noting that age has never been a sensitive subject for Fried until now. Over the years on countless occasions he has made light of his age and the prospect of retirement. (Mann Aff., Exhs. U, V.)

prepared for Fried's meeting with State to distribute to the Board of Directors. (Mann Aff., Exh. S.) On November 2, 2010, Simmons, on behalf of the Board, responded to Fried's list of responsibilities, telling Fried that the list was "much more expansive than what [he] envisioned" and "[not] consistent with the sentiments [Fried] had expressed to [him]" when State was hired. (Mann Aff., Exh. T.) Simmons expressed his opinion of the need to transition all of Fried's day-to-day activities to State and other members of the management team. (Mann Aff., Exh. T.) Simmons wrote: "It is my hope that you continue as Chairman of the board in a non-executive capacity and act as [an] on call resource for Scott." *Id.* He further proposed that he "replace [Fried's] existing employment arrangement with a consulting agreement." *Id.*

E.    **The November 4th Board Meeting**

On November 4, 2010, LVI Parent held a regular board meeting to discuss a number of pending business matters. (*Fried II* Compl., ¶ 30; Pl. Tr., p. 229.) At the conclusion of the meeting, the Board went into a closed session and LVI management – except State – left the meeting. (Pl. Tr., pp. 231-32.) Thereafter, in a 30 plus minute speech, Fried heatedly objected to any restructuring of his role and complained of State's alleged comment at their October 19th meeting. (Pl. Tr., pp. 29-33.) Fried and State were then asked to leave the meeting and the Board discussed how best to resolve the issue, concluding that John Schnabel, a member of the Board and longtime friend and ally of Fried, would contact Fried to resolve what the Board viewed as a political skirmish. (Pl. Tr., p. 252; Mann Aff., Exh. W; Simmons Tr., pp. 107-09.)[7] Unfortunately, Schnabel was unable to broker an agreement with Fried, leaving the Board no choice but to proceed with the plan outlined in Simmons' November 2nd email. (Simmons Tr., pp. 122-25.)

---

[7] Copies of the pages of the deposition transcript of Brian Simmons ("Simmons Tr.") are attached to the Mann Aff. as Exhibit X.

Pursuant to that plan, the Board proposed that Fried would transition from his role as an employee of LVI to the dual role of non-executive Chairman of the Board and of consultant. (Mann Aff., Exh. Y, pp. 3-6.)  Under the proposal, Fried's employment as Chairman would end, and he would be formally offered a consulting agreement pursuant to which he would be paid an annual retainer of $150,000, plus $250 per hour for time spent in his consulting role.  This amount was intended to compensate Fried at the same level as he was previously compensated as an LVI employee.  (Simmons Tr., pp. 149-50.)  Fried's initial assignment would include overseeing several litigation matters.  (Mann Aff., Exh. Y, p. 2.)

On November 15, 2010, however, before the Board could make its formal offer of a consulting agreement to Fried, Fried sent a letter through his attorney to State threatening to sue LVI and demanding, among other things, that he be reinstated with his former responsibilities. (Mann Aff., Exh. Z, pp. 2-6.)  State, who was traveling at the time, did not receive the letter until November 16, 2010.  On November 16, 2010, the Board sent the consultancy agreement to Fried. (State Tr., pp. 371-74.)  Fried rejected LVI's offer and resigned his position on the Board effective November 30, 2010.  (Mann Aff., Exh. AA.)  LVI, as planned, terminated Fried's employment with LVI on November 30, 2010, but continued to offer Fried the consultancy arrangement through counsel.  Fried rejected LVI's offer.

F.    **Fried's Litigation**

Fried wasted no time in making good on his threat to sue LVI.  On December 13, 2010, less than two weeks after parting ways with the company, Fried filed a suit captioned *Fried v. LVI Services, Inc., et al.*, 10-cv-9308 (S.D.N.Y.) (JSR) in the United States District Court for the Southern District of New York, seeking "declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendants' unlawful employment practices and retaliation against Plaintiff, including discriminatory treatment of Plaintiff due to his Age, in violation of the New

York City Human Rights Law, New York Administrative Code §§ 8-101 *et seq.* ("NYCHRL")."[8] (*Fried I* Compl. ¶ 1.)[9]  Fried also sought relief for "common law breach of contract and breach of the implied covenant of good faith and fair dealing, as well as tortious interference with Plaintiff's employment relationship by defendants."  On the same day, Fried filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging violations of the Age Discrimination in Employment Act ("ADEA").  Fried received a right-to-sue letter from the EEOC and amended his complaint on February 3, 2011 to add claims of discriminatory treatment due to Plaintiff's age in violation of the ADEA.[10]  The *Fried I* amended complaint contained eight counts: (1) discrimination in violation of the ADEA; (2) retaliation in violation of the ADEA; (3) discrimination in violation of the NYCHRL; (4) retaliation in violation of the NYCHRL; (5) aiding and abetting violations of the NYCHRL; (6) breach of contract; (7) breach of implied covenant of good faith and fair dealing; and (8) tortious interference with employment and/or contractual relations.  On April 1, 2011, Judge Rakoff issued a bottom-line order dismissing counts 6-8 and defendants CHS and Apollo. *Fried v. LVI Services, Inc.*, No. 10-cv-9308, 2011 U.S. Dist. LEXIS 57639 (S.D.N.Y. May 23, 2011).

 *More than a month later, and just 21 days from the close of discovery in Fried I*, on May 16, 2011, Fried filed a complaint with the CCHRO against defendants LVI and LVI Parent. (Mann Aff. Exh. DD.)  In his CCHRO complaint, Fried alleged he was terminated and retaliated against because of his age in violation of the CFEPA. (Mann Aff. Exh. DD ¶¶ 19-22.)  Fried did

---

[8] The named defendants, in addition to LVI, LVI Parent and State, were: CHS and Apollo Investment Corp., minority equity investors in LVI Parent; and Brian Simmons, Rajay Bagaria and Gerald J. Girardi, three members of LVI Parent's Board of Directors.

[9] A copy of the *Fried I* complaint ("*Fried I* Compl.") is attached to the Mann Aff. as Exhibit BB.

[10] A copy of the *Fried I* amended complaint ("*Fried I* Am. Compl.") is attached to the Mann Aff. as Exhibit CC.

not seek leave to amend his complaint in *Fried I* to add his CFEPA claims or otherwise give the district court notice of these new charges.

On or about October 4, 2011, following months of discovery and briefing after oral argument on Defendants' motion for summary judgment, the Honorable Jed S. Rakoff granted "summary judgment to the defendants' on all of plaintiff's claims with the exception of the prong of plaintiff's claim of retaliation under the ADEA relating to the firing of [Fried's] daughter." (Opinion and Order at 34; Mann Aff. Exh. FF.) Following a conference call with Chambers on October 11, 2011, a trial was scheduled for the week of December 5, 2011 on Fried's remaining retaliation claim. (Mann Aff., Exh. GG.)

On October 17, 2011, Fried, through counsel, received a release of jurisdiction from the CCHRO. (Mann Aff., Exh. II.) Fried, however, did not seek leave to amend his complaint to add his CFEPA claims (or otherwise give the district court notice of his release of jurisdiction) and instead sought Defendants' consent to voluntarily dismiss his remaining claim to pursue an appeal of Judge Rakoff's grant of summary judgment in the United States Court of Appeals for the Second Circuit. On October 19, 2011, the parties stipulated to the dismissal, and on October 27, 2011, the court "so-ordered" the stipulation, dismissing Fried's remaining retaliation claim, with prejudice. (Mann Aff., Exh. EE.)

On November 14, 2011, Fried filed a Notice of Appeal in the United States District Court for the Southern District of New York. (Mann Aff., Exh. JJ.) Fried's appeal is limited in scope to the grounds of Judge Rakoff's October 4th Opinion and Order. The appeal is currently pending in the United States Court of Appeals for the Second Circuit, with Appellee/Defendants' opposition brief due May 29, 2012. (Mann Aff., Exh. KK.)

11

On November 30, 2011, Fried and Dembin filed the instant action in the U.S. District Court for the District of Connecticut ("*Fried II*"). (Mann Aff. at Exh. C.)  The complaint in *Fried II* contains four claims for relief: (1) discrimination against Fried on the basis of his age in violation of the CFEPA; (2) retaliation against Fried in violation of the CFEPA for terminating his employment with LVI, and by terminating the employment of Dembin after he engaged in protected activity by opposing Defendants' discriminatory conduct; (3) retaliation against Dembin in violation of the CFEPA by terminating her employment, after Fried engaged in protected activity by opposing Defendants' discriminatory conduct; and (4) aiding and abetting violations of the CFEPA against State for knowingly and/or recklessly aiding and abetting in the alleged retaliation against Dembin.  The allegations are factually identical to those in *Fried I* only with a new theory of liability under the CFEPA.

On January 9, 2012, the parties stipulated to the dismissal of this action as to plaintiff Dembin, with prejudice.  Fried continued his litigation and on February 15, 2012, the parties submitted a Joint Fed. R. Civ. P. 26(f) Report, where it was agreed, in light of the prior action, to forego any discovery and proceed to the instant dispositive motion for summary judgment.  On April 4, 2012, the parties participated in a telephonic conference with the Court and Defendants were granted leave to file the instant motion.

## LEGAL ARGUMENT

### I.   SUMMARY JUDGMENT STANDARD

Summary judgment is proper where there is no genuine issue of material fact to be tried on a matter and the moving party is entitled to summary judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d. Cir. 1987).  In determining whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Anderson v. Liberty*

12

*Lobby, Inc.*, 477 U.S. 242, 255 (1986). "[T]he 'genuine issue' aspect of summary judgment procedure requires the parties to bring forward before trial evidentiary facts, or substantial evidence outside of the pleadings, from which the material facts alleged in the pleadings can warrantably be inferred." *United Oil Co. v. Urban Redevelopment Comm'n*, 158 Conn. 364, 378-79, 260 A.2d 596, 604 (1969); *Van Dine v. Robert Bosch Corp.*, 62 F. Supp. 2d 644, 646 (D. Conn. 1999). Indeed, a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Zabelle v. Coratolo*, 816 F. Supp. 115, 119 (D. Conn. 1993); *see also Anderson*, 477 U.S. at 249 (a legally sufficient opposition must submit admissible evidence that is more than "merely colorable"); *Hildabrand v. Difeo P'ship, Inc.*, 89 F. Supp. 2d. 202, 205 (D. Conn. 2000). "The very purpose of summary judgment is to weed out those cases that are destined to be dismissed on a motion for a directed verdict . . . ." *Weinstock v. Columbia University*, 224 F.3d 33, 49 (2d Cir. 2000). Summary judgment is an appropriate method for resolving the affirmative defense of res judicata. *Media Group, Inc. v. Tuppatsch*, 298 F. Supp. 2d 235, 241 (D. Conn. 2003).

## II.   PRINCIPLES OF RES JUDICATA MANDATE DISMISSAL

The doctrine of res judicata "provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim and demand, but as to any other admissible matter which might have been offered for that purpose.' The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment." *Tibbetts v. Stempel*, 354 F. Supp. 2d 137, 146 (D. Conn. 2005) (quoting *Comm'r of Internal Revenue v. Sunnen*, 333 U.S. 591, 597 (1948); *Perez v. Danbury Hosp.*, 347 F.3d 419, 426 (2d Cir. 2003) ("Res judicata precludes parties from litigating

issues that were or could have been raised in a prior proceeding."); *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) ("A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.")); *Berlitz Schools of Languages, Inc. v. Everest House*, 619 F.2d 211, 215 (2d Cir. 1980) ("[W]hatever legal theory is advanced, when the factual predicate upon which claims are based are substantially identical, the claims are deemed to be duplicative for purposes of res judicata.").

The purpose of the doctrine of res judicata is three-fold: "(1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation." *Tibbetts*, 354 F. Supp. 2d at 146; *see also Monahan v. N.Y. City Dep't. of Corrections*, 214 F.3d 275, 285 (2d Cir. 2000).[11] "The judicial doctrine of res judicata expresses no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest." *O'Connor v. Pierson*, 568 F.3d 64, 69 (2d Cir. 2009) (citing *Joe's Pizza, Inc. v. Aetna Life and Cas. Co.*, 236 Conn. 863, 871-72, 675 A.2d 441, 446-47 (1996)).[12] Res judicata applies on summary judgment if the earlier decision was (1)

---

[11] "The Court may thus take judicial notice of 'prior pleadings, orders, judgments, and other items appearing in the court's records of prior litigation that is closely related to the case sub judice . . . .'" *Lawrence v. Richman Group Capital Corp.*, 358 F. Supp. 2d 29, 35 (D. Conn. 2005) (JBA) (citation omitted).

[12] In Connecticut, res judicata "'bars not only subsequent relitigation of a claim previously asserted, but subsequent relitigation of any claims relating to the same cause of action which were actually made or which might have been made.'" *Ross v. New Canaan Envtl. Comm'n*, 433 Fed. Appx. 7, *8 (2d Cir. 2011) (citing *Issac v. Truck Serv., Inc.*, 253 Conn. 416, 421, 752 A.2d 509, 512 (2000)). There is no significant difference between federal res judicata law and res judicata law for New York and Connecticut. *Pike v. Freeman*, 266 F.3d 78, 90 n. 14 (2d Cir. 2001) ("there appears to be no significant difference between New York preclusion law and federal preclusion law."); *Carlyle Johnson Mach. Co. v. April*, 2000 Conn. Super. LEXIS 403 (Conn. Super. Feb. 10, 2000) (noting that federal and Connecticut res judicata law are substantively the same).

a final judgment on the merits; (2) by a court of competent jurisdiction; (3) in a case involving the same parties or their privies; and (4) involving a cause of action, which arises from the same common operative facts. *Anaconda-Ericsson Inc. v. Hessen*, 762 F.2d 185, 190 (2d Cir. 1985); *Herendeen v. Champion International Corp.*, 525 F.2d 130, 133 (2d Cir. 1975).

### A.    There is a Final Judgment on the Merits by a Court of Competent Jurisdiction between the Same Parties

First, there has plainly been a final judgment on the merits by a court of competent jurisdiction.  In granting Defendants' motion for summary judgment in *Fried I*, Judge Rakoff held, in substance, that Plaintiff's claims under ADEA failed to offer evidence giving rise to an inference of discrimination or retaliation.  (Mann Aff., Exh. FF.)  A grant of summary judgment to a party is a decision on the merits.  *Ghaly v. Southeastern Mental Health Authority*, No. 3:08-cv-293, 2011 WL 1225996, *3 (D. Conn. Mar. 30, 2011).  The pending appeal in *Fried I* "does not suspend the claim-preclusive effect of a final judgment from a lower court." *Peia v. United States Bankr. Courts*, 152 F. Supp. 2d 226, 234 (D. Conn. 2001); *see also Sullivan v. Hyland*, 647 F. Supp. 2d 143, 180 (D. Conn. 2009); 18A Charles A. Wright, et al., Federal Practice and Procedure § 4433 (2d ed. 2002) ("The bare act of taking an appeal is no more effective to defeat preclusion than a failure to appeal.  The Supreme Court long ago seemed to establish the rule that a final judgment retains all of its res judicata consequences pending decision of the appeal, apart from the virtually nonexistent situation in which the 'appeal' actually involves a full trial de novo.").

Identity of parties, or their privies, between the initial and subsequent action is also critical for summary judgment on the grounds of res judicata.  Here, there can be no dispute that the parties (and their respective counsel) in *Fried I* are also parties in this action.  (Mann Aff. GG.)  Although Plaintiff has subtracted five parties as defendants (CHS, Apollo, Simmons,

15

Bagaria and Girardi), he has once again named LVI Services, LVI Parent and Scott State as defendants. Res judicata precludes claims, rather than particular configurations of parties.

**B.    There is An Exact Identity of Issues**

The Second Circuit applies a transactional analysis to determine whether or not there is sufficient identity of issues to justify the dismissal of the subsequent claim. *See Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38-39 (2d Cir. 1992). Under this analysis, "a variation in the facts alleged, legal theories asserted, or relief sought in the new pleading generally will not affect the result, because separately stated causes of action may nevertheless be grounded on the same gravamen of the wrong upon which the action is brought." *Yoon v. Fordham Univ. Faculty & Admin. Ret. Plan*, 263 F.3d 196, 201 (2d Cir. 2001) (emphasis in original) (internal quotation omitted). A party therefore is barred from raising not only claims already asserted and decided, but also any other claim that the party could have asserted "arising out of the same series of events." *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992). Two actions "spring from the same 'transaction' or 'claim'" when the underlying facts demonstrate that they are "related in time, space, origin, or motivation, form a convenient trial unit, and their treatment as a unit conforms to the parties' expectations . . . ." *See Interoceanica Corp. v. Sound Pilots*, 107 F.3d 86, 90-91 (2d Cir. 1997).

Plaintiff's claims revolve around the same transactions (or the same "gravamen of wrong") raised in *Fried I*: Defendants' purported unlawful discrimination and alleged retaliation in connection with the decision to reassign Plaintiff's duties and ultimately his termination. *Compare Fried I* Am. Compl. ¶ 113 ("The Corporate [LVI] Defendants have discriminated against Plaintiff on the basis of his age in violation of the ADEA by subjecting Plaintiff to disparate treatment based upon his age, including, but not limited to, by stripping Plaintiff of his responsibilities and terminating Plaintiff because of his age"), *with Fried II* Compl. ¶ 53 ("The

16

LVI Defendants discriminated against Mr. Fried on the basis of his age in violation of the CFEPA by subjecting him to disparate treatment, including, but not limited to, stripping him of his job responsibilities and terminating his employment"). Put another way, the basic "transaction" the parties litigated in *Fried I* was Defendants' purported discriminatory and retaliatory conduct and the damages available to Plaintiff as a result. The exact same "transaction" is at the heart of the current complaint. In *Fried I* the claims were based on allegedly unlawful (i) discrimination and retaliation in violation of the ADEA; (ii) discrimination, retaliation and aiding and abetting discriminatory employment practices in violation of the NYCHRL; and (iii) other common law causes of action, including breach of contract, breach of the implied covenant of good faith and fair dealing, and tortious interference with employment and/or contractual relations. (*Fried I* Am. Compl. ¶¶ 112-54; Mann Aff. Exh. CC.) In *Fried II*, based on the same parties and transactions, Plaintiff refashions his claims into violations of the CFEPA. Specifically, Plaintiff alleges that Defendants: (i) discriminated against "Mr. Fried on the basis of his age in violation of the CFEPA by subjecting him to disparate treatment, including, but not limited to stripping him of his job responsibilities and terminating his employment;" (ii) "retaliated against Mr. Fried in violation of the CFEPA by terminating his employment with LVI . . . after he engaged in protected activity by opposing Defendants' discriminatory conduct." (*Fried II* Compl. ¶¶ 53, 58.) These claims are duplicative of those raised in *Fried I* and dismissed by Judge Rakoff on summary judgment. (Opinion and Order at 26-27 ("In sum, even after drawing all reasonable inferences in favor of the plaintiff, the Court concludes that plaintiff's discrimination claim under the ADEA must fail as a matter of law."; Mann Aff., Exh. FF.)) No new evidence was required to support Plaintiff's CFEPA claims, indeed the parties agreed to forego any discovery at all in this action. Simply stated, there are no

new facts or allegations, only a different theory of recovery. *See Cieszkowska v. Gray Line New York*, 295 F.3d 204, 205 (2d Cir. 2002) ("Even claims based upon different legal theories are barred provided they arise from the same transaction or occurrence."); *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 110 (2d Cir. 2000) ("[A] plaintiff cannot avoid the effects of res judicata by 'splitting' his claim into various suits, based on different legal theories . . . ."); *Media Group, Inc. v. Tuppatsch*, 298 F. Supp. 2d 235, 245 (D. Conn. 2003) ("[Plaintiff] cannot escape the operation of the doctrine of res judicata by inventing new legal labels or theories to place upon the same cause of action that has already been adjudicated on the merits . . . ."); *Overview Books, LLC v. United States*, 438 Fed. Appx. 31, 33 (2d Cir. 2011) (applying res judicata where "the claims in each case ha[d] identical factual predicates."); *Chen v. Zygo Corp.*, No. 3:95-879, 1997 U.S. Dist. LEXIS 19708 (D. Conn. Mar. 27, 1997) (applying res judicata to bar plaintiff's retaliation claim after plaintiff had previously brought a state retaliation claim "based on identical facts.").

### C.   Fried Had Multiple Opportunities to Bring His CFEPA Claim in *Fried I*

Res judicata bars the litigation of not only issues that were already litigated, but also issues that "*could have been litigated*, might have been litigated, or should have been litigated" in the former proceedings. 47 Am. Jur. 2d Judgments § 475; *Sekor v. Capwell*, 1 F. Supp. 2d 140, 145 (D. Conn. 1998) ("a former adjudication of a claim on its merits is an absolute bar to a subsequent action on the same claim or on any claim based on the same operative facts that might have been made in the prior action."). While Fried is likely to blame his failure to bring his CFEPA claims in *Fried I* on the 180-day statutory time period a complainant must wait to request a release of jurisdiction from the CCHRO, courts regularly reject arguments that administrative exhaustion requirements excuse a plaintiff from bringing all claims arising out of the same factual transaction in one suit. *Harris v. Beth Isr. Med. Ctr.*, 367 Fed. Appx. 184, 187

18

n.3 (2d Cir. 2010) ("the mere fact that [plaintiff's] ADA claims were unexhausted at the time the state action was filed does not alter the conclusion that the claims could have been asserted in the earlier action and are therefore barred under the doctrine of res judicata."); *Jorgensen v. Sony BMG Music Entm't.*, 310 Fed. Appx. 419, 420 (2d Cir. 2008) (granting motion for summary judgment "because the prior lawsuit, which was decided on its merits, and the instant complaint involve[d] the same factual allegations, legal theories and parties."); *Wilkes v. Wyoming Dep't of Empl. Div. of Labor*, 314 F.3d 501, 503 (10th Cir. 2002) (finding plaintiff should have pursued procedural options that would have allowed her to bring all of her Title VII claims in the first suit).

By way of example, in *Mulero v. Hartford Bd. of Educ.*, No. 3:05-cv-630, 2006 WL 752852, *2 (D. Conn. Mar. 20, 2006) (Dorsey, J.), the plaintiff alleged, in a Title VII action, that she exhausted her administrative remedies and subsequently received a right-to-sue letter from the Department of Justice. The court found that the plaintiff "could not raise the Title VII claim in the first action because the EEOC had not yet issued her the 'right-to-sue' letter. But Plaintiff's receipt of a letter from the Justice Department subsequent to an action in which final judgment on the merits has been rendered does not mean that Plaintiff is now given the right to re-file that action; the doctrine of res judicata is not so easily avoided." *Id.* Judge Dorsey reasoned that the plaintiff's Title VII claims "could have been raised in *Mulero I* and may no longer be submitted. 'Under the doctrine of res judicata, or claim preclusion, [a] final adjudication on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Id.* (quotations and citation omitted). Particularly applicable here, the court found that although "[i]t may be true that Plaintiff was legally unable to allege a Title VII claim in the prior complaint . . . she could have either stayed

19

the proceedings or later amended the complaint." *Id.* at *3. The court relied on *Woods v. Dunlop Tire Corp.*, 972 F. 2d 36, 41 (2d Cir. 1991), where the Second Circuit held that "to avoid a res judicata bar against a second suit where the prior complaint did not raise Title VII claims, a litigant can either (1) seek a stay in the [first suit] pending the outcome of the EEOC's investigation of the administrative complaint or (2) seek a right-to-sue letter from the EEOC 180 days after filing the charge with the EEOC and then amend the [first] complaint to include the Title VII claim." *Mulero*, 2006 WL 752852, at *3. Like the plaintiffs in *Mulero* and *Woods*, Fried also had several options available to him that would have allowed him to bring his CFEPA claims in *Fried I*, but he failed to pursue those options.

First, Fried could have filed his claim with the CCHRO along with his EEOC complaint on December 13, 2010. Instead he waited until May 16, 2010 -- 21 days from the close of discovery in *Fried I* -- to bring his charge. Second, Fried could simply have sought leave to amend his complaint to add his CFEPA claims in *Fried I*. Third, if Fried wished to pursue his CFEPA claims, he could have requested a stay in *Fried I* until he received a release of jurisdiction from the CCHRO. Assuming it was even reasonable for him to wait until May 16, 2011 to file his complaint with the CCHRO, Fried had yet another option to avoid filing two suits. After he received his release of jurisdiction on October 17, 2011, he could have immediately filed a motion to amend his complaint to add his CFEPA claim to *Fried I*. Fried never even gave the district court the opportunity to rule on a motion to amend. Instead, Fried chose to voluntarily dismiss his remaining federal claim, with prejudice, on October 19, 2011, so he could pursue an appeal. That Fried had multiple options available to him that would have allowed him to bring all of his claims together in one suit bars this second action. Similar to the plaintiffs in *Mulero* and *Woods*, Fried should have pursued those options. *See Barnes v. Royal*

20

*Health Care LLC*, 357 Fed. Appx. 375, 377 (2d Cir. 2009), *cert. denied*, 131 S. Ct. 106 (2010) (affirming summary judgment and noting a Plaintiff with unexhausted claims "could have either (1) commenced his state court action and then stayed the proceedings pending the outcome of his Title VII EEOC charge; or (2) amended his state court complaint to include his Title VII claim once he received a right-to-sue letter from the EEOC.").

Because Fried had countless opportunities to raise his CFEPA claims to Judge Rakoff before and after he received a release of jurisdiction from the CCHRO, dismissal of this action is the only equitable result. Fried's choice not to pursue any of his options had, and continues to have, a significant impact on both Defendants and the resources of the federal judiciary. Proceeding to trial on Fried's claims would put Defendants to the vexation of litigating identical sets of facts in two cases and require two federal courts, in addition to the United States Court of Appeals for the Second Circuit, to weigh the same sets of facts. This depletes precious party and judicial resources, fosters inconsistent decisions, and diminishes reliance on Judge Rakoff's sound decisions in *Fried I*. Indeed, if litigants were able to so easily overcome res judicata effect the courts would be deluged by claims of litigants seeking new legal theories for their disposed claims. Fried had every opportunity to prove the extent of Defendants' purportedly unlawful conduct in *Fried I*, and ought not be afforded yet another. *Ayantola v. The Board of Trustees of Community Tech. Colleges of State of Conn.*, No. 3:05-cv-957, 2007 WL 3432748, at *3 (D. Conn. Nov. 15, 2007) ("a party who splits his claims between two fora inevitably runs the risk that a final resolution in one forum will foreclose adjudication in the other."). Any result other than dismissal on the merits would unjustly reward Plaintiff for his failure to bring all of his claims in a single action.

### III.   COLLATERAL ESTOPPEL BARS PLAINTIFF'S CLAIMS

Collateral estoppel, or issue preclusion, bars a party from relitigating in a second proceeding an issue that was clearly raised and necessarily decided in a prior proceeding. *Kole v. FCI Danbury*, No. 09-cv-1865, 2010 WL 2679981, at *5 (D. Conn. June 28, 2010).  Under the doctrine of collateral estoppel, Plaintiff's claims should not be reconsidered (i) if they rely on an identical issue that was raised in a previous proceeding, where the issue was actually litigated and decided in that proceeding; (ii) the party against whom the issue was decided had a "full and fair opportunity" to litigate the issue; and (iii) if the resolution of the issue was "necessary to support a valid and final judgment on the merits." *See Interoceanica Corp.*, 107 F.3d at 91; *Faraday v. Blanchette*, 596 F. Supp. 2d 508, 515 (D. Conn. 2009).

Here the specific issues which form the foundation of *Fried II* have already been fully and fairly litigated before Judge Rakoff, who, in a carefully reasoned 35-page Opinion and Order, "grant[ed] summary judgment to the defendants' on all of plaintiff's [ADEA and NYCHRL] claims with the exception of the prong of plaintiff's claim of retaliation under the ADEA relating to the firing of plaintiff's daughter." (Opinion and Order at 34; Mann Aff. at Exh. FF.)  Plaintiff cannot allege that he had anything but a full and fair opportunity to litigate these issues.  In *Fried I*, Plaintiff obtained discovery of more 4,000 pages of documents from Defendants, deposed nine witnesses and prevailed, in part, on summary judgment, with a trial scheduled for the week of December 5, 2011.  *See Rhodes v. Advance Property Management, Inc.*, No. 3:10-cv-826, 2011 WL 4739750, at *3 (D. Conn. Oct. 7, 2011) ("An issue has been actually litigated if it is properly raised in the pleadings or otherwise submitted for determination, and in fact, determined.").

**A.     The District Court's Findings in *Fried I* Bar His CFEPA Discrimination
Claims under Both a Mixed-Motives Theory or Burden-Shifting Approach**

The CFEPA provides that "[i]t shall be a discriminatory practice in violation of this

section[ ][f]or an employer . . . to refuse to hire or employ or to bar or to discharge from

employment any individual or to discriminate against such individual in compensation or in

terms, conditions or privileges of employment because of the individual's . . . age . . . ." Conn.

Gen. Stat. § 46a-60(a)(1). "The Connecticut Supreme Court looks to federal precedent when

interpreting and enforcing the CFEPA." *Farrar v. Town of Stratford*, 537 F. Supp. 2d 332, 348

(D. Conn. 2008); *see Levy v. Comm'n of Human Rights and Opportunities*, 236 Conn. 96, 103

(1996) ("Although this case is based solely on Connecticut law, we review federal precedent

concerning employment discrimination for guidance in enforcing our own anti-discrimination

statutes."); *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 556 (2d Cir. 2010) ("The analysis of

discrimination and retaliation claims under CFEPA is the same as under Title VII.").

Courts have analyzed CFEPA claims under the "*McDonnell-Douglas* burden-shifting

analysis", or the *Price Waterhouse* "mixed-motive" analysis. *Kucharski v. Cort Furniture

Rental*, 594 F. Supp. 2d 207, 210 (D. Conn. 2008); *see generally Price Waterhouse v. Hopkins*,

490 U.S. 228 (1989); *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). The

*McDonnell-Douglas* burden-shifting analysis has applied where there is "indirect evidence of

discrimination." *Id.* The *Price Waterhouse* "mixed motives" analysis has applied where there is

direct evidence of discrimination. Here, Fried points to State's purported October 19th statement

as direct evidence of discrimination.

There is an ongoing debate within Connecticut courts on the impact of the Supreme

Court's decision in *Gross v. FBL Fin. Servs.*, 557 U.S. 167 (2009) and whether courts should

continue to apply a mixed-motives analysis to CFEPA age-based claims. *See, e.g., Weber v.*

*Fujifilm Medical Systems U.S.A., Inc.*, No. 3:10-cv-401, 2012 WL 681681 n.7 (D. Conn. Feb.

28, 2012) (JBA).  Defendants respectfully submit that *Gross* applies to CFEPA claims for age

discrimination, *see, e.g., Timbie v. Eli Lilly & Co.*, 429 Fed. Appx. 20, 22 (2d Cir. 2011) (noting

post-*Gross* that "[c]laims of age discrimination under the CFEPA and the ADEA are subject to

the same legal analysis")[13] and that the same burden-shifting frame work carefully applied by the

district court in *Fried I* applies in *Fried II*.

      This Court, however, need not determine the applicability of *Gross*, as the district court

in *Fried I* specifically held under the *McDonnell-Douglas* burden-shifting framework that Fried

could not "sustain [his] burden of proving pretext as a matter of law."  (Opinion and Order at 23;

Mann Aff. at Exh. FF.)[14]  If Fried cannot show pretext under the *McDonnell-Douglas* burden-

---

[13] *Compare Zawacki v. Realogy Corp.*, 628 F. Supp. 2d 274, 283 (D. Conn. 2009) *with Aiello v. Stamford Hosp.*, No. 3:09-cv-1161, 2011 WL 3439459, *27 (D. Conn. Aug. 8, 2011).

[14] Specifically, the Court concluded "that Fried has failed to sustain this burden as a matter of law. Indeed, Fried's case hinges almost exclusively on the October 19, 2010 conversation between Fried and State, when State purportedly indicated that he would be reassigning Fried's duties and stated: "Burt, you're 71 years of age, how long do you expect to work . . . . [W]hat if you get hit by a bus . . . we have to plan for the future." (Pl. Tr. at 182.) However, "[s]tray remarks, even if they occurred as plaintiff claims, are not enough to satisfy the plaintiff's burden of proving pretext. Stray remarks alone do not create an issue of material fact to defeat summary judgment." *Bunk v. General Services Admin.*, 408 F. Supp. 2d 153, 158 (W.D.N.Y. 2006). *See also Shapiro v. N.Y. City Dep't of Educ.*, 561 F. Supp. 2d 413, 424 (S.D.N.Y. 2008) ("[t]he stray remarks of a decision-maker, without more, cannot prove a claim of employment discrimination"). In this case, the single, isolated mention of Fried's age, the only such mention in the entire record, cannot, standing alone, create an issue of material fact sufficient to defeat summary judgment. This is especially true given that State, by Fried's own admission, qualified his remark by asking "what if you get hit by a bus." Accordingly, unless other indicia of discrimination are properly presented, see *Shapiro v. N.Y. City Dep't of Educ.*, 561 F. Supp. 2d 413, 424 (S.D.N.Y. 2008), this comment alone is insufficient to sustain plaintiff's burden of proving pretext as a matter of law." (Opinion & Order at 23 (emphasis added); Mann Aff. at Exh. FF.)

shifting analysis, he certainly cannot, as a matter of law, establish a *prima facie* case under a mixed-motive theory.

To establish a *prima facie* case under *Price Waterhouse*, a "plaintiff must show that the evidence is sufficient to allow a fact finder to infer both permissible and discriminatory motives." *Berkowitz v. County of Orange*, 120 F. Supp. 2d 386, 400 (S.D.N.Y. 2000). To satisfy this burden and shift the burden to the defendant, "the plaintiff must be able to produce a 'smoking gun' or at least a 'thick cloud of smoke' to support his allegations of discriminatory treatment." *Raskin v. Wyatt Co.*, 125 F.3d 55, 61 (2d Cir. 1997). This burden "is heavier than the de minimis showing required to establish a *prima facie McDonnell-Douglas* case." *Id.*; *Kucharski*, 594 F. Supp. 2d at 210 ("The plaintiff's burden of establishing a *prima facie* case is greater under the mixed-motive approach than under the pretext analysis."). If a plaintiff establishes a *prima facie* case, the "burden [then] shift[s] to the employer to prove that it would have made the same decision absent the discriminatory factor." *Proctor v. MCI Commc'n. Corp.*, 19 F. Supp. 2d at 15 (D. Conn. 1998); *see also Desert Palace, Inc. v. Costa*, 539 U.S. 90, 93 (2003); *Price Waterhouse*, 490 U.S. at 244; *Raskin*, 125 F.3d at 60. Because a plaintiff's burden of establishing a *prima facie* case is greater under the mixed-motive approach than under the *McDonnell-Douglas* framework, if the plaintiff fails on the *McDonnell-Douglas* analysis, he necessarily fails under the mixed-motive analysis. *Berkowitz*, 120 F. Supp. 2d at 400.

In *Berkowitz*, the court explained:

> This argument for a mixed-motives approach is of no avail to
> plaintiff [in opposing] the instant motion for summary judgment
> because it concerns only the shifting of the burden of proof to the
> defendant *after* the plaintiff has made out a *prima facie* case of
> discrimination. It never comes into play if the plaintiff fails to
> produce evidence creating an inference of discrimination. Thus, in
> the present case, plaintiff fails on the mixed-motives analysis for
> the precise reason he failed on the *McDonnell-Douglas* analysis.

*Id.* at 400.  Similarly, in *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1185 (2d Cir. 1992),

*cert. denied* 506 U.S. 826 (1992), the Second Circuit concluded that, for purposes of jury

instructions and summary judgment, the proof required to trigger mixed-motive analysis was the

same as plaintiff's burden in the last step of pretext analysis, *i.e.*, sufficient to rebut the

defendant's non-discriminatory reason.  *See also Kucharski*, 594 F. Supp. 2d at 210 ("a plaintiff

that fails [in opposing] summary judgment under a pretext theory will also fail under a mixed-

motive theory").  In *Kucharski*, the court reasoned that "as prior courts have observed, the

question whether plaintiff has established sufficient evidence from which a jury could find

plaintiff to be a victim of discrimination remains the same regardless of a mixed motive or

pretext analysis." *Id.* at 211 (citing *Crews v. The Trustees of Columbia Univ.*, 452 F. Supp. 2d

504, 522 (S.D.N.Y. 2006); *Jalal v. Columbia Univ.*, 4 F. Supp. 2d 224, 234 (S.D.N.Y. 1998)

(considering ultimate issue without applying burden shifting analysis)); *see also Fitzgerald v.*

*Alleghany Corp.*, 904 F. Supp. 223, 231 (S.D.N.Y. 1995) ("for many of the same reasons

plaintiff has failed to meet his burden of raising a triable issue of fact about discriminatory

motive under pretext analysis, plaintiff has failed to raise a jury question of mixed motive

discrimination."); *Aiello v. Stamford Hosp.*, No. 3:09-cv-1161, Slip Copy, 2011 WL 3439459, at

*27 (D. Conn. Aug. 8, 2011) (finding "Plaintiff has failed to provide sufficient evidence

establishing that Defendant's legitimate non-discrimination reason for the adverse employment

action was a pretext for age discrimination under the prior more lenient [pre-*Gross*] standard.");

*Crews*, 452 F. Supp. 2d at 521-22 ("[I]f the plaintiff fails on the *McDonnell-Douglas* analysis, he

necessarily fails under the mixed-motive analysis.").  Because the *Fried I* Court concluded Fried

could not show pretext under the burden-shifting standard, regardless of whether the Court

26

applies a burden-shifting or mixed-motive standard in *Fried II*, Fried's claims are barred by the doctrine of collateral estoppel.

**B.     The District Court's Findings in *Fried I* Bar his CFEPA Retaliation Claims**

Finally, unlike discrimination claims, Connecticut courts evaluate retaliation claims brought pursuant to the CFEPA under the *McDonnell-Douglas* burden-shifting analysis. *Negron v. Rexam Cosmetic Packaging*, No. CV 044000333S, 2006 WL 240528, at *8-9 (Conn. Super. Jan. 11, 2006); *Levy*, 236 Conn. at 108. In *Fried I*, the district court posited in connection with Fried's retaliation claim "whether defendants ha[d] articulated a legitimate nondiscriminatory reason for the adverse employment action and whether plaintiff ha[d] demonstrated that the reason was pretextual." The court then concluded Defendants had articulated a legitimate nondiscriminatory reason and that plaintiff could not demonstrate that reason was a pretext. (Opinion and Order at 29; Mann Aff. at Exh. FF.) Accordingly, for all the reasons previously set forth above, Fried's retaliation claim is similarly barred by the sound principles of collateral estoppel.

**IV.    FRIED'S CFEPA CLAIMS FAIL ON THE MERITS**

Even if Plaintiff can overcome the strong legal policies that bar relitigation of claims, and he cannot, Plaintiff still cannot prevail on the merits. In a discrimination case, summary judgment is appropriate where "[the] plaintiff's argument is 'based on conclusory allegations of discrimination and the employer provides a legitimate rationale for its conduct." *Cassotto v. Potter*, No. 3:09-cv-1303, 2012 WL 603281, at *3 (D. Conn. Feb. 24, 2012); *Donahue v. Norwich Roman Catholic Diocesan Corp.*, No. 3:05-cv-413, 2008 WL 821890, at *3 (D. Conn. Mar. 26, 2008) (granting summary judgment in age discrimination case where plaintiff set forth only "unsupported allegations" that "the plaintiff's age . . . played a role in [the employer's

decision making] process and had a determinative influence on the outcome."). Notwithstanding the legal arguments discussed above, Fried's claims under the CFEPA are simply insufficient to withstand summary judgment. Fried alleges that he was stripped of his job responsibilities and then terminated because of his age. (*Fried II* Compl., ¶¶ 25-27, 35-36.) At his deposition, when asked what led him to believe these decisions were fuelled by discriminatory animus, Fried testified that his belief was based on State's purported statement at the October 19, 2010 meeting regarding transition planning: "You're 71 years of age. How long do you expect to work? What if you're hit by a bus?" (Pl. Tr., pp. 16-18) and on the fact that the Board of Directors supported State's plan to re-allocate his job responsibilities and terminate his employment with LVI. (Pl. Tr., pp. 25-29.) Even taking Fried's allegations as true, this "evidence" is woefully insufficient to defeat Defendants' motion for summary judgment under either a mixed-motives analysis or burden shifting approach.

### 1.    Fried Cannot Establish a Prima Facie Case

As explained above, to establish a *prima facie* case under *Price Waterhouse*, "the plaintiff must be able to produce a 'smoking gun' or at least a 'thick cloud of smoke' to support his allegations of discriminatory treatment." *Raskin*, 125 F.3d at 60. This burden "is heavier than the de minimis showing required to establish a *prima facie McDonnell-Douglas* case." *Id.*; *Kucharski*, 594 F. Supp. 2d at 210 ("The plaintiff's burden of establishing a *prima facie* case is greater under the mixed-motive approach than under the pretext analysis."). Fried maintains that Defendants reduced his responsibilities and ultimately terminated his employment because of his age. (*Fried II* Compl., ¶¶ 25-27, 34-36.) In support of this contention, Fried proffers a single statement purportedly made by State: "Burt, you're 71 years old. How long do you expect to work?" (Pl. Tr., pp. 17-18) and the fact that the LVI Board members supported State's decision to limit Fried's day-to-day operational responsibilities in accordance with an assurance Fried

himself had made to State in writing. (Pl. Tr., pp. 16-18, 21-25.) Other than this single statement, Fried admits to having absolutely no other evidence that the decisions taken by LVI and the Board were based on age. (Pl. Tr., pp. 42-52, 54-58.)

State's comment at the October 19, 2010 meeting, when placed in proper context, is nothing more than a request for clarification of how long Fried intended to retain his operational responsibilities at LVI. Connecticut courts have held that remarks relating to retirement or transition planning alone, even when made by a decision maker, are insufficient to defeat a motion for summary judgment in a CFEPA case. *See Weichman v. Chubb & Son*, 552 F. Supp. 2d 271 (D. Conn. 2008) (supervisors comment that "'older people' 'slow down' and 'should retire'" did "not demonstrate that [defendant] terminated the Plaintiff because of her age."); *Aiello*, 2011 WL 3439459, at \*2 (supervisor referring to plaintiff as "Old Man" and asking plaintiff "are you going to retire soon" did not create issue of fact sufficient to defeat summary judgment).

In light of Fried's numerous representations to State and to the Board of Directors that he fully intended to relinquish his responsibilities for running LVI, it is logical that State, upon receipt of Fried's expansive list of operational responsibilities, would question Fried as to when he intended to assume his new role. The question was not ageist; it was a legitimate inquiry into Fried's future plans, and, as such, does not constitute evidence of discrimination, much less the "smoking gun" or "thick cloud of smoke" under firmly established law.

Fried's other "evidence" of discrimination consists solely of the Board's agreement with State's plans to distribute operational responsibilities to other LVI managers and to himself and to clearly define for Fried the role he would assume going forward. This strategic decision, which the Board had approved of during the October 2010 restructuring, was based on the

Board's judgment as to what would be in the best interest of LVI and, had previously been agreed to by Fried. In *Berkowitz v. County of Orange*, 120 F. Supp. 2d 386 (S.D.N.Y. 2000), a reverse discrimination case, the court found a discriminatory statement of one commissioner voting to terminate plaintiff could not be considered a substantial or motivating factor in the decision to terminate plaintiff where other commissioners expressed strong views to the contrary. Indeed, the authority to terminate Fried rested with the Board of Directors of LVI Parent – not State. (Mann Aff. Exh. R.) The comment by State "thus cannot be considered a 'substantial or motivating factor'" in the *Board's* decision to restructure Fried's role -- a decision first communicated to Fried by Board Member Brian Simmons in a November 2, 2010 email to Fried, discussed at a November 4, 2010 Board meeting and communicated in a letter to Fried from the Board on November 16, 2010. Moreover, it was this same Board that five months earlier installed Fried as interim CEO. "[W]hen the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to [them] an invidious motivation that would be inconsistent with the decision to hire." *Grady v. Affiliated Cent. Inc.*, 130 F.3d 553, 560 (2d Cir. 1997).

In *Raskin*, the Second Circuit affirmed the grant of summary judgment to the employer in a factually analogous mixed-motives age discrimination claim brought under the ADEA. The plaintiff, Richard Raskin, alleged that his employer had discriminated against him by failing to promote him and by constructively discharging him. *See id.* at 58. The primary evidence in support of this claim proffered by Raskin was defendant employer's early retirement plan, a statement by his supervisor that Raskin might not be interested in a manager position because of his age, and a reference to Raskin's eligibility for early retirement. *Id.* at 63. The Court reasoned that the evidence did not show "that age 'played some part in the decision-making

process'...[because Raskin's supervisor] had a legitimate reason to confirm Raskin's interest in a career change notwithstanding the possibility that Raskin would have the option of taking early retirement." *Id.* at 63.   The Second Circuit held that this evidence was insufficient to establish a *prima facie* case, and "warrant a mixed-motive burden shift." *Id.* at 61.

When presented with similar evidence of discrimination, other courts within the Second Circuit have also held that a plaintiff cannot establish a *prima facie* mixed motive case. *De La Cruz v. New York City Human Resources Admin. Dept. of Social Servs.*, 82 F.3d 16, 23 (2d Cir. 1996) (where plaintiff alleged national origin discrimination, plaintiff could not establish a mixed motive case where he alleged that his supervisor described their problems as "cultural" and that a director commented that plaintiff and his new Hispanic supervisor would "understand each other better"); *Lynch v. Pathmark Supermarkets*, 987 F. Supp. 236, 240 (S.D.N.Y. 1997) (where plaintiff alleged discrimination on the basis of religion, plaintiff could not establish mixed motive case by pointing to evidence that store manager had said "God may have your soul, but your ass belongs to me" and "you have the Bible in your hand, but you still look up the women's skirts."). Accordingly, Plaintiff cannot allege a *prima facie* case of age discrimination on single remark plainly taken out of context and his action should be dismissed.

### 2.   Defendants Would Have Made the Same Employment Decision for a Legitimate Reason

Assuming *arguendo*, that Fried can establish a *prima facie* case, the burden then shifts to Defendants to "prove that [they] would have made the same decision absent the discriminatory factor." *Raskin*, 125 F.3d at 60; *De La Cruz*, 82 F.3d at 23. Applying this standard, summary judgment is still appropriate because Defendants have established that Fried would have been terminated even if he was not 71 years of age. The record is replete with undisputed evidence that, in fact, Fried began a campaign of interference from State's earliest days at LVI.

31

Specifically, during the transition period, Fried demanded that State confer with him prior to making decisions, leading State to protest to the Board that this was "exactly the issue I had prior to accepting the job." (Mann Aff., Exhs. J, K, L & M.)  Moreover, Fried communicated his intent to continue to involve himself with LVI's management by presenting State with a list of responsibilities he expected to perform, ranging from the development and implementation of business initiatives to tasks as mundane as the monitoring of all employee air travel.  (Mann Aff., Exh. P.)  It was precisely Fried's blind refusal to accept a role as envisioned by the CEO and Board that led to the decision to restructure his role with LVI and offer him a consultancy.  This rationale is set forth in numerous documents and in unchallenged deposition testimony, *see, e.g.*, Mann Aff., Exhs. P, Q, S, E, F & G; State Tr., pp. 217-18, 263-64; Simmons Tr., pp. 89-92, and easily satisfies Defendant's burden of proof under *Price Waterhouse*. *See Nativita St. Louis v. New York City Health & Hosp. Corp.*, 682 F. Supp. 2d 216, 230 (E.D.N.Y. 2010) (where plaintiff established a *prima facie* case under the mixed-motive standard by alleging that her supervisor, who "exert[ed] enormous influence in the decision-making process", had stated "she did not like working with females," the court granted defendant's motion to dismiss because defendant showed that plaintiff would have been terminated regardless of her gender); *Stone v. Manhattan & Bronx Surface Transit Operating Author.*, 539 F. Supp. 2d 669 (E.D.N.Y. 2008) (where plaintiff established a *prima facie* case under the mixed-motive standard by alleging that, after learning plaintiff had been diagnosed with cataracts, plaintiff's supervisor commented that plaintiff would be unable to see the buses or trains, court granted defendant's motion for summary judgment where defendant proved that plaintiff would have been discharged for reasons unrelated to plaintiff's disability).  No reasonable juror could conclude that age discrimination was a reason, much less the reason, for Fried's termination in light of Fried's

interference with State's management of LVI in contravention of the promises he repeatedly made to Defendants.

In addition, Fried's objections to the decisions taken by Defendants with respect to his future role with LVI are patently insufficient to defeat summary judgment. Connecticut courts have stated that the purpose of the CFEPA is to "rid the workplace of discrimination", and "create an effective machinery in this state for the elimination of discrimination in employment." *Wagner v. Board of Trustees for Connecticut State University*, No. 85023775, 2012 WL 669544, at *11 (Conn. Super. Jan. 30, 2012); *Cimino v. Pratt & Whitney*, No. CV 075011977, 2007 WL 4577957, at *4 (Conn. Super. 2007). Its stated purpose is not to police an employer's potentially objectionable conduct. It is well settled in this Circuit that "[i]t is not the role of federal courts to review the correctness of employment decisions or the processes by which those decisions are made." *Sellick v. Agency-Castle Point*, No. 09-cv-6616, 2010 WL 2813431, at *10 (S.D.N.Y. July 16, 2010); *see also Kaplan v. Beth Israel Med. Ctr.*, No. 07 Civ. 8842, 2010 WL 1253967, at *6 (S.D.N.Y. Mar. 31, 2010). Defendants' legitimate business reason for defining Fried's role as Chairman – to ensure that the new CEO and President, State, would have the freedom to manage the Company as he saw fit – is set forth in numerous documents and in unchallenged deposition testimony.

## B.   FRIED'S RETALIATION CLAIMS UNDER THE CFEPA SHOULD BE DISMISSED

Fried also alleges that Defendants retaliated against him by (1) taking away his responsibilities and distributing them to younger employees and (2) terminating his employment and offering him a position as a consultant. (*Fried II* Compl., ¶¶ 25, 34-36.) Retaliation claims under the CFEPA are analyzed using the *McDonnell-Douglas* burden-shifting framework. *Zboray v. Wal-Mart Stores East, L.P.*, 650 F. Supp. 2d 174, 179 (D. Conn. 2009). To establish

his *prima facie* claim, plaintiff must show that (1) he participated in protected activity known to defendant; (2) he suffered an adverse employment action; and (3) a causal connection exists between the plaintiff's engagement in the protected activity and the adverse employment action. *Id.* Once established, the burden shifts to Defendants to articulate a legitimate nondiscriminatory reason for the adverse employment action. *Id.* Finally, the burden shifts back to the plaintiff to demonstrate that the reason is pretextual. *Id.*

### 1. The Purported Adverse Employment Decisions Taken Against Fried Were Made Before His Discrimination Complaint

Setting aside the fact that the district court in *Fried I* resolved this precise issue by applying the same burden-shifting approach, it is axiomatic that there can be no cause-and-effect relationship between a protected activity and an adverse employment action where the alleged adverse employment action occurred prior to the commencement of any protected activity. *Ward v. U.S. Surgical Div. of Tyco Healthcare Group, LP*, No. 3:03-cv-1326, 2005 WL 2972974, at *15 (D. Conn. Sept. 16, 2005) (finding no retaliation claim where plaintiff complained after her work hours were cut). Moreover, where timing is the only basis for a claim of retaliation, and gradual adverse job actions began before the plaintiff ever engaged in any protected activity, an inference of retaliation is negated. *Paul v. Bank of America*, No. 3:08 Civ. 1066, 2010 WL 419405, at *11 (D. Conn. Jan. 29, 2010); *Zboray v. Wal-Mart Stores East, L.P.*, 650 F. Supp. 2d 174, 184 (D. Conn. 2009).

Fried claims that he complained about age discrimination at the Board of Directors meeting held on November 4, 2010. (*Fried II* Compl., ¶ 31.) He also alleges that he reached out to Board members from CHS and Apollo to tell them of State's alleged discriminatory treatment shortly after the meeting with State on October 19, 2010. (*Fried II* Compl., ¶ 29.) The decision to shift Fried's day-to-day responsibilities to other members of LVI management, however, had

been contemplated by Fried as early as 2005 and had been considered by State and members of the Board even before State accepted the position of CEO and President. (Pl. Tr., pp. 80-81; Mann Aff., Exhs. E, F.) As early as September 19, 2010, a month before State's conversation with Fried, State, in an email to Robert Hogan, stated: "In the best-case scenario Burt will decide to retire at some date certain from LVI upon a new CEO being named and offer to support the business under a consulting agreement in any way the new CEO sees fit." (Mann Aff., Exh. HH, p. 2.) Moreover, as noted above, Fried had repeatedly represented that he was "prepared to remain at LVI until [State], the Board or I decide its time for me to leave . . . ." (Mann Aff., Exh. A.) Likewise, the offer to Fried of the consulting agreement and a reduced role with LVI was initiated by Simmons in an email dated November 2, 2010, in which he wrote to Fried: "I am of the opinion that we need to transition all of your day-to-day activities to Scott and other members of the management team. It is my hope that you continue as Chairman of the [B]oard in a non-executive capacity and act as on-call resource for Scott. . . . I would like to replace your existing employment arrangement with a consulting agreement that compensates you for the services you will continue to provide and also as Chairman of the Board." (Mann Aff., Exh. T, pp. 1-2.) The communication of the decision to transfer Fried's day-to-day responsibilities and to transition his role from employee to consultant occurred before his discrimination complaint on November 4, 2010 and even before the purported conversation he had with certain Board members about his meeting with State on October 19, 2010. As such, his retaliation claims on the basis of these alleged adverse actions is simply not actionable.

### 2. Fried Cannot Rebut the Legitimate Business Reason for His Termination

Finally, Fried cannot show the legitimate business reason articulated by Defendants is pretext for retaliation. The only purported evidence of retaliation concerns Defendants' receipt

of the letter from Fried's counsel on November 15, 2010. However, the Board was prepared to move forward with presenting the offer of consultancy to Fried as had been planned even before Fried's complaint at the November 4, 2010 Board meeting. The offer of consultancy had been made by Simmons to Fried on November 2, 2010 and a draft of the offer letter had been circulated for comment by November 11, 2010, four days prior to the receipt of Fried's demand letter. (Mann Aff., Exh. T). This evidence, far from proving that the offer of the consultancy was triggered by Fried's demand letter of November 15, 2010, instead shows the Board's intent to ignore Fried's litigation threat and proceed with the offer of a consultant role with LVI. Indeed discussions about the decision to ask Fried to assume a consultant role were considered by State and members of the Board even before State accepted the position of CEO and President. (Mann Aff. Exh. HH, p. 2.). Courts have found that if an employer's conduct before and after the employee complaint is consistent, the post-complaint conduct is not retaliatory. *See e.g., Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 94-95 (2d Cir. 2001); *Hunter v. St. Francis Hosp.*, 281 F. Supp. 2d. 534, 547 (E.D.N.Y. 2003). Accordingly, Plaintiff cannot prevail on his retaliation claim because he cannot show Defendants' legitimate business rationale is a pretext.

## V.    FRIED'S CLAIMS AGAINST STATE SHOULD BE DISMISSED

Finally, Fried's claims against individual defendant State should be dismissed for two additional reasons: First, defendant State is an improper party to this action because Fried failed to file a charge against him with the CCHRO. *See Durgin v. Town of Madison*, No. 3:10-cv-347, 2011 WL 692989 (D. Conn. Feb. 18, 2011) (dismissing plaintiff's CFEPA claims where plaintiff did not file an complaint with the CCHRO.); *see also Carter v. City of Hartford*, No. 397-cv-832, 1998 WL 823044, at *9 (D. Conn. Sept. 30, 1998) ("It is axiomatic that a plaintiff who fails to follow the administrative route that the legislature has prescribed for her claim of

discrimination lacks the statutory authority to pursue that claim in court."); *Sebold v. City of Middletown*, 2007 WL 2782527 (D. Conn. 2007) (same).

Second, it is black letter law that individuals, as opposed to the employing entity, cannot be held liable for age discrimination under the CFEPA. *See Anderson v. Derby Bd. Of Educ.*, 718 F. Supp. 2d 258, 267 (D. Conn. 2010) (citing *Perodeau v. City of Hartford*, 259 Conn. 729, 743-44 (2002) (courts have interpreted the language of Conn. Gen. Stat. Section 46a-60(a)(1) of the CFEPA as a prohibition on individual liability); *Alungbe v. Bd. of Trustees of Connecticut State University (CSU) System*, 283 F. Supp. 2d 674, 686-87 (D. Conn. 2003) (citing *Perodeau* to dismiss plaintiff's claim that individual defendants violated Section 46a-60(a)(1) because "individuals who are not employers may be not be held liable under § 46a-60(a)(1)"); *Cooke v. Prototype & Plastic Mold Co., Inc.*, 220 F. Supp. 2d 104, 111 (D. Conn. 2002) (citing *Perodeau* to grant defendants' motion for summary judgment on plaintiff's claim against individual defendant under Section 46a-60(a)(1)). Accordingly, Fried's CFEPA claims against State should be dismissed in their entirety with prejudice.[15]

---

[15] The Fourth Claim for Relief in the Complaint alleges State "knowingly and/or recklessly aided and abetted in the unlawful retaliation against Ms. Dembin in violation of the CFEPA." Not only is the Complaint silent as to who State purportedly "aided and abetted", but Dembin is no longer a party to this action. *See supra* n.1.

## CONCLUSION

For the reasons set forth above, Defendants respectfully requests that the Court enter summary judgment dismissing the Complaint in its entirety.

Dated: April 26, 2012

By: _____

Michael D. Mann (phv02157)
(mdmann@sidley.com)
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

Deborah Dehart Cannavino (CT08144)
(dcannavino@littler.com)
Matthew K. Curtin (CT27765)
(mcurtin@littler.com)
LITTLER MENDELSON, P.C.
One Century Tower
265 Church Street, Suite 300
New Haven, CT 06510
(203) 974-8700

*Attorneys for Defendants*
*LVI Services Inc., LVI Parent Corp.,*
*and Scott E. State*

38

## CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2011, a copy of the foregoing was filed electronically

and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent

by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone

unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may

access this filing through the Court's CM/ECF system.

Michael D. Mann (phv02157)
(mdmann@sidley.com)
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300