# EXHIBIT BB

JUDGE RAKOFF

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

# 10 CV 9308

------------------------------------------------------------X

BURTON T. FRIED,

                            Plaintiff,

        v.

LVI SERVICES, INC.; LVI PARENT CORP.,
CODE HENNESSY SIMMONS LLC d/b/a CHS
PRIVATE EQUITY V LP; APOLLO
INVESTMENT CORP.; SCOTT E. STATE, in his
official and individual capacities; BRIAN
SIMMONS, in his official and individual capacities;
RAJAY BAGARIA, in his official and individual
capacities; GERALD J. GIRARDI, in his official
and individual capacities,

                          Defendants.

------------------------------------------------------------X

No. 10 Civ._____

**COMPLAINT**

**JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Burton T. Fried ("Plaintiff" or "Mr. Fried"), by and through his
undersigned counsel, Thompson Wigdor & Gilly LLP, as and for his Complaint in this
action against Defendants LVI Services, Inc. (the "Company"), LVI Parent Corp., Inc.
(the "Parent") (together "LVI Defendants"), Code Hennessy Simmons LLC d/b/a CHS
Private Equity V LP ("CHS"), Apollo Investment Corp. ("Apollo") (collectively with the
LVI Defendants, the "Corporate Defendants"), Scott E. State ("State"), Brian Simmons
("Simmons"), Rajay Bagaria ("Bagaria"), and Gerald J. Girardi ("Girardi"), all in their
official and individual capacities (collectively, the "Individual Defendants") (all together,
"Defendants"), hereby alleges as follows:

1

## NATURE OF THE CLAIMS

1.      This is an action for declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendants' unlawful employment practices and retaliation against Plaintiff, including discriminatory treatment of Plaintiff due to his Age, in violation of the New York City Human Rights Law, New York Administrative Code §§ 8-101 *et seq.* ("NYCHRL").

2.      In addition, this action seeks relief for Corporate Defendants' common law breach of contract and breach of the implied covenant of good faith and fair dealing, as well as tortious interference with Plaintiff's employment relationship by Defendants Parent, CHS, Apollo, and the Individual Defendants.

## PRELIMINARY STATEMENT

3.      At the age of 70 years old, Plaintiff Burton T. Fried fully expected to be working at LVI into his ninth decade of life.  Tireless and dedicated to the Company even after 24 years of service, Mr. Fried worked rigorously to ensure that the Company continued down the trail of success he blazed as a pioneer in his field.  It was this work ethic that allowed Mr. Fried, through his leadership as Company President and Chief Executive Officer ("CEO"), to transform the Company from a solely regional entity into the country's largest, and only, fully integrated national provider of self-performed diverse environmental remediation, demolition, and other facility management services.

4.      Throughout his tenure, Mr. Fried garnered the respect of clients and competitors alike, investors, lenders, sureties, vendors, and all who worked with him, including Company managers, many of whom had long worked side-by-side with him to build the Company into what it is today.

2

5.      In October 2010, a new President and CEO, Defendant Scott E. State, began his employment at the Company. This regime change ushered in a new era at the Company, in which Mr. Fried was viewed as "dead wood" and someone who, despite his history and commitment to the Company, should retire.

6.      On October 19, 2010, Defendant State told Mr. Fried that his duties would be transitioned to other Company managers because of his age and in breach of his employment contract. From that day forward, Defendants worked to isolate Mr. Fried from any substantive involvement in the Company, all while endeavoring to retain Mr. Fried as titular Chairman of the LVI Defendants to exploit long-standing business relationships that he had developed and cultivated, as well as to utilize Mr. Fried's knowledge of historical business matters being litigated with third parties.

7.      As Mr. Fried was reduced to the status of a mere figurehead on account of his age, he became increasingly disheartened by Defendants' discriminatory conduct that served only to demean and debase his years of valuable service to the Company.

8.      On November 16, 2010, the Company callously dealt its final blow by sending a letter informing Mr. Fried that, effective November 30, 2010, his almost quarter century of service to the Company would be coming abruptly to an end.

9.      Defendants' conduct was knowing, malicious, willful and wanton and/or showed a reckless disregard for Plaintiff's rights, warranting an award of punitive damages. Such conduct has caused, and continues to cause, Plaintiff to suffer substantial monetary damages, permanent harm to his professional and personal reputation, and severe mental anguish and emotional distress.

3

## JURISDICTION AND VENUE

10.     The Court has subject matter jurisdiction over this action pursuant to 28

U.S.C. § 1332, as there is complete diversity of citizenship between Plaintiff, a resident

of Connecticut, and all Defendants, and this action involves an amount in controversy in

excess of $75,000, exclusive of interest and costs.

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because

the LVI Defendants are corporations doing business in the State of New York and are

subject to personal jurisdiction in this district, and a substantial portion of the unlawful

conduct alleged herein occurred in this district.

## PROCEDURAL REQUIREMENTS

12.     Simultaneous with the filing of the Complaint, Plaintiff filed a charge of

discrimination against the Corporate Defendants with the Equal Employment

Opportunity Commission ("EEOC"), alleging violations of the Age Discrimination in

Employment Act ("ADEA").

13.     When the EEOC completes its investigation of the charge and issues

Plaintiff notice of his right to sue, Plaintiff will be seeking leave to amend this Complaint

to add claims that the Corporate Defendants violated the ADEA as well.

14.     Prior to the commencement of this action, a copy of the Complaint was

served on the New York City Commission on Human Rights and the Office of the

Corporation Counsel of the City of New York, thereby satisfying the notice requirements

of § 8-502 of the New York City Administrative Code.

15.     Any and all other prerequisites to the filing of this suit have been met.

4

**PARTIES**

16.    Plaintiff Burton T. Fried, a former employee of the Company, was born on February 26, 1940, and is a resident of the State of Connecticut, Fairfield County.  At all relevant times, Mr. Fried met the definition of an "employee" under all applicable statutes throughout his employment with the Company.

17.    LVI Services, Inc. is an environmental remediation company that offers a variety of services, such as asbestos abatement and complete demolition, to clients primarily in the continental United States, its territories and Hawaii, including in the City of New York.  At all relevant times, the Company met the definition of an "employer" under all applicable statutes, and has maintained a principal place of business located at 80 Broad Street, New York, New York 10004.

18.    Defendant Parent is a Delaware corporation and the sole shareholder of the Company.  Defendant Parent is a corporate entity with no active business operations or officers, existing only to sign documents.   At all relevant times, Defendant Parent met the definition of an "employer" and/or "agent thereof" under all applicable statutes, and has maintained a principal place of business located at 80 Broad Street, New York, New York 10004.

19.    Defendant CHS is a private equity firm headquartered in Illinois. Defendant CHS owns a minority equity interest in Parent and has two seats on the Board of Directors of Parent (the "Board"). At all relevant times, CHS met the definition of an "employer" and/or "agent thereof" under all applicable statutes, and has maintained a principal place of business located at 10 South Wacker Drive, Suite 3175, Chicago, Illinois, 60606.

5

20.    Defendant Apollo is a publicly traded investment management company that specializes in providing subordinated debt and equity capital to middle-market companies. Defendant Apollo is incorporated in Maryland and also owns a minority equity interest in Parent with two seats on the Board. At all relevant times, Apollo met the definition of an "employer" and/or "agent thereof" under all applicable statutes, and has maintained a principal place of business located at 9 West 57th Street, New York, New York 10019.

21.    Upon information and belief, Defendant State is a resident of the State of Colorado. At all relevant times, he is and has been a member of the Board, as well as employed as President and CEO for Defendant LVI, in which capacity he participated directly, and/or aided and abetted, in the unlawful discrimination against Plaintiff as alleged herein. Defendant State is approximately 47 years of age.

22.    Upon information and belief, Defendant Simmons is a resident of the State of Illinois. At all relevant times, he is and has been a member of the Board, as well as a managing partner of CHS, in which capacity he participated directly, and/or aided and abetted, in the unlawful discrimination against Plaintiff as alleged herein. Defendant Simmons is approximately 47 years of age.

23.    Upon information and belief, Defendant Bagaria is a resident of the State of New York. At all relevant times, he is and has been a member of the Board, in which capacity he participated directly, and/or aided and abetted, in the unlawful discrimination against Plaintiff as alleged herein. Defendant Bagaria is approximately 33 years of age.

24.    Upon information and belief, Defendant Girardi is a resident of the State of New York. At all relevant times, he is and has been a member of the Board, in which

capacity he participated directly, and/or aided and abetted, in the unlawful discrimination against Plaintiff as alleged herein.  Defendant Girardi is approximately 51 years of age.

## FACTUAL ALLEGATIONS

### Mr. Fried's Employment at LVI

25.     Mr. Fried, who is currently 70 years old, was the long tenured and highly respected Chairman of the LVI Defendants and former President and CEO of the Company.

26.     Mr. Fried had been employed by the Company for over 24 years.  He spent his first three years as an officer and General Counsel, the next 17 years as the Company's President and CEO, and his last four years as the Company's Chairman.

27.     Until his last seven years of employment with the Company, Mr. Fried performed his services while working out of the Company's New York City corporate office.  After that time, Mr. Fried worked from the Company's corporate Connecticut satellite office.

28.     During his period of employment, he grew the Company into one of the country's foremost, and only national, provider of environmental remediation and facilities management services.

29.     Under Mr. Fried's tireless leadership, the Company expanded to over 25 offices throughout the United States and has been relied on to do everything from accomplishing the safe demolition of buildings in Las Vegas and New York City to assisting in the emergency disaster response clean up of the Gulf Coast region after Hurricane Katrina.

30.     Throughout his tenure at the Company, Mr. Fried presided over the sale of the Company on multiple occasions – one taking place effective November 16, 2005, when CHS purchased a majority equity stake in the Company.  Mr. Fried had been actively looking for his successor as President and CEO prior to the equity stake purchase by CHS and, upon purchase by CHS, Defendant Simmons asked Mr. Fried to continue the search.  Mr. Fried agreed to remain as President and CEO and continue searching for a replacement until a suitable one could be found.

31.     Mr. Fried's agreement to remain as President and CEO was memorialized, along with other terms of employment, in a November 16, 2005 contract from the Company to Mr. Fried (the "Employment Contract").  Among the terms of Mr. Fried's Employment Contract was a promise that after he found a replacement President and CEO, Mr. Fried would serve as Chairman of the Company "with primary responsibility for strategic growth."

32.     In June 2006, Robert McNamara succeeded Mr. Fried as President and CEO of the Company.  In recognition of Mr. Fried's indispensability and tremendous worth to the Company, Mr. McNamara expressed his strong desire that Mr. Fried remain as Chairman of the Company.  As provided by Mr. Fried's Employment Contract, he indeed remained at the Company as its Chairman.

33.     After assuming the position of Chairman, Mr. Fried agreed to reduce his compensation by 20% and begin working four days per week.  This reduced work schedule did not suit Mr. Fried's assiduous nature as only a week later he returned to working full-time, albeit while continuing to honor his agreement to accept reduced compensation.

8

34.     As Chairman under Mr. McNamara, Mr. Fried continued to play a large and vital role in the Company's operation and development.  Indeed, although no longer involved in all of the day-to-day duties required of a President and CEO, Mr. Fried remained engaged in myriad different areas of the Company's operation, including:

    a.     Developing and implementing new business initiatives;

    b.     Overseeing all Company litigation and legal matters;

    c.     Participating in the negotiation of Company acquisitions;

    d.     Performing risk assessments of large Company projects which did not require surety bonds, as well as large projects requiring bid and/or payment and performance bonds; and

    e.     Preparing, reviewing, and/or approving from a legal perspective all Company contracts and/or terms of agreement not in the ordinary course of business.

35.     Additionally, Mr. Fried cultivated a relationship with Arch Surety (the "Surety") that resulted in a $200 million surety line being opened up to the Company. The relationship with the Surety was built on Mr. Fried's integrity, honesty and hard-work and is an immensely valuable resource to the Company.

36.     As part of his duties as Chairman, Mr. Fried had been responsible for daily management of the relationship with the Surety and ensuring that the $200 million line stayed open to the Company.

**Mr. Fried's Unlawful Termination Based on His Age and in Breach of His Contract**

37.     Mr. McNamara resigned from his position as President and CEO effective in April 2010.  Once again, CHS looked to Mr. Fried's experience and expertise to guide

the Company through a period of transition, and asked him to step in as interim President
and CEO and again conduct the search for his replacement.

38.    As he re-assumed the position, Mr. Fried's compensation returned to its
previous level, and Defendant Simmons complimented Mr. Fried that he "was earning
every penny of it." As interim President and CEO, Mr. Fried again spearheaded efforts to
find a permanent replacement, interviewing approximately ten different candidates for
the position.

39.    During Mr. Fried's search for a permanent replacement, Defendant State
asked Mr. Fried to have him considered for the position and provided Mr. Fried with his
resume. After a perfect candidate withdrew, Mr. Fried introduced Defendant State to
Russell Reynolds, the executive search firm hired by the Company, and Russell Reynolds
introduced Defendant State to CHS and two investment firms that were poised to become
new equity partners of the Company, Apollo and Falcon Strategic Partners III, LP
("Falcon").

40.    While Mr. Fried was engaged in the search for a permanent replacement,
he was simultaneously leading the Company through a period of renegotiation and
recapitalization during the worst economic climate in decades. During Mr. Fried's
leadership, the Company was able to eliminate approximately $100 million in debt and
put itself on firm financial ground. At a Board meeting held just prior to the closing of
the transaction, Defendant Simmons expressed to the Board that the restructuring of the
Company loan and recapitalization could not have taken place without Mr. Fried's
efforts.

41.     When the recapitalization and restructuring closed on or about October 8, 2010, Falcon and Apollo became minority equity shareholders in the Parent and gained, respectively, one and two seats on the Parent's Board.  Apollo's seats on the Board were subsequently filled by Defendants Bagaria and Girardi.

42.     After his introduction, Mr. Fried arranged for Defendant State to be interviewed by the Company's most senior managers and Defendant State became their top choice to fill the position of President and CEO.  Mr. Fried continued vouching for Defendant State and recommended to CHS, Apollo and Falcon (together, the "Equity Partners") that Defendant State indeed take on the role of President and CEO of the Company.  Thanks to the support of Mr. Fried, the Equity Partners agreed.

43.     On or about October 1, 2010, Defendant State commenced employment with the Company as President and CEO.  At that time, Mr. Fried returned to his role as Chairman of the Company.

44.     Although Mr. Fried previously had informed Defendant State of the continuing role he would play as Chairman, he met with Defendant State on or about October 19, 2010, at the Company's corporate office in New York City, to discuss the duties that he had been performing in his previous stint as Chairman.

45.     During this meeting, Mr. Fried presented Defendant State with a list of the duties that Mr. Fried had been performing for almost four years under Mr. McNamara. Defendant State ignored Mr. Fried's attempt to discuss his responsibilities and instead informed Mr. Fried that all his responsibilities would be transitioned to the Company's managers.  Further, Defendant State ordered Mr. Fried to cease working on numerous projects that he had been managing effectively prior to Defendant State's arrival.

11

46.     When prompted to explain the reason for stripping Mr. Fried of all his responsibilities, in a blatant ageist remark, Defendant State ridiculed Mr. Fried by asking him, "You are 71 years old.  How long do you expect to continue working?"

47.     Mr. Fried left the meeting shocked by the discriminatory animus harbored by Defendant State and the blatant manner in which Defendant State effectuated a breach in Mr. Fried's Employment Contract.

48.     Defendant State was not the only member of the Board who harbored such discriminatory beliefs about Mr. Fried due to his age.

49.     On or about November 2, 2010, Defendant Simmons informed Mr. Fried that, after consulting with other Board members, including those from Apollo, he would like to replace Mr. Fried's Employment Contract with a consulting agreement and transition all of Mr. Fried's day-to-day responsibilities to Defendant State and other members of the Company's management team.

50.     Both Defendants Simmons and State clearly expressed their desire to strip Mr. Fried of his substantive and executive responsibilities on account of his age and in violation of his Employment Contract.

51.     On or about November 4, 2010, the entire Board met in a closed session at Apollo's New York City offices to discuss Mr. Fried's employment status with the Company.  At this meeting, Mr. Fried expressed his opposition to the discriminatory treatment at the hands of Defendant State and even offered Defendant State a chance to repudiate his ageist comments in front of the Board.  Instead of accepting this olive branch, Defendant State affirmed his comments and, ratifying this clear discriminatory

12

intent, the Board members from CHS and Apollo informed Mr. Fried that they were stripping him of his duties.

52.     Prior to this Board meeting, Mr. Fried had reached out to the Board members from CHS and Apollo to tell them of Defendant State's discriminatory treatment, all of whom told Mr. Fried in no uncertain terms that they supported Defendant State and whatever decision he made regarding Mr. Fried's employment status.

**Mr. Fried's Isolation and Termination**

53.     From the time Mr. Fried left his meeting with Defendant State on or about October 19, 2010, he was isolated at the Company.

54.     In fact, after he met with Defendant State, Company managers told Mr. Fried that they had been instructed by Defendant State not to contact Mr. Fried, or to speak with him about new Company matters, and that all their needs should be conveyed to Defendant State.

55.     Defendant State actively worked to exclude Mr. Fried from multiple facets of the Company's operation, including:

    a.      Ordering Mr. Fried to turn over responsibility for securing new
            corporate office space, a project Mr. Fried had initially been working
            on for Defendant State;

    b.      Taking over responsibility for expanding the Company's business
            into the United Kingdom and banning Mr. Fried from future
            meetings that Mr. Fried was arranging;

13

      c.       Preventing Mr. Fried from working on a demolition project that was

                being bid that Mr. Fried had been informed of and was attempting to

                secure on behalf of the Company, even though Mr. Fried had

                routinely performed such work under Mr. McNamara; and

      d.       Causing LVI personnel to cease all communications and day-to-day

                involvement with Mr. Fried on business matters.

56.     On or about November 10, 2010, Mr. Fried was notified that it was the wishes of the Board, including Defendants Simmons, Bagaria and Girardi, that he have no day-to-day involvement in the Company and that Defendant State should have sole discretion to determine the level of Mr. Fried's involvement in the operation of the Company.

57.     On or about November 15, 2010, Mr. Fried sent, through his counsel by hand delivery, a letter to Defendant State opposing the discriminatory conduct to which he was being subjected.

58.     The following day, on November 16, 2010, Defendant Simmons, on behalf of the Board, notified Mr. Fried in a written letter that effective November 30, 2010, his employment with the Company would terminate. After more than 24 years of service, Mr. Fried was given two weeks of notice that his employment would terminate.

59.     Although Mr. Fried was notified of his termination, Defendants endeavored to exploit Mr. Fried's years of valuable experience and relationship with the Surety by keeping him as a consultant in a "non-executive" capacity. In exchange for this "new position," Mr. Fried would be required to release Defendants from his age discrimination, as well as other, claims.

60.     Mr. Fried's termination by the Company, including his positions as a director and officer of the LVI Defendants and all subsidiaries and affiliated companies, was effected on November 30, 2010.

61.     Defendants have expressed clearly that Mr. Fried's isolation at the Company, and his termination, related solely to his age.  It is equally clear that his termination was in retaliation for Mr. Fried's protected opposition to Defendants' discrimination toward him.

**A Single/Joint Employer Relationship Exists Between the Company and Parent**

62.     At all relevant times, the LVI Defendants operated as a single, integrated enterprise, a single employer, or as joint employers.

63.     Parent operates from the same offices as the Company.  All the corporate officers of Parent, except Robert G. Hogan who is Assistant Secretary for the purpose of signing documents, are employed by the Company.  Additionally, three of the four officers of Parent maintain offices at the New York corporate office of the LVI Defendants.

64.     Parent is a holding company that maintains no payroll and conducts no business outside of signing documents.

65.     Further, the Board exercises authority over the terms and conditions of employees of the Company.  In particular, the Board altered the terms of Mr. Fried's employment with the Company by stripping him of his job duties and unilaterally terminating his employment.

66.     Additionally, Parent is the sole shareholder and owner of the Company.

67.     The only assets of Parent are the shares it holds of the Company.

15

68.     Due to the foregoing, the LVI Defendants have an interrelation of operations, centralized control over labor relations, common management and common ownership.  As such, they are jointly and severably liable for the discrimination, retaliation and other unlawful treatment of Plaintiff.

**A Single/Joint Employer Relationship Exists Between the Company and CHS**

69.     At all relevant times, the Company and CHS operated as a single, integrated enterprise, a single employer, or as joint employers.

70.     CHS is a minority shareholder of Parent, the sole owner of the Company, and has two seats on the Board of Directors of Parent.

71.     With its seats on the Board, CHS participates in the hiring of officers of both the LVI Defendants and operates with the authority to change the terms of employment for employees of the Company, including terminating their employment.

72.     Defendant Simmons, managing partner of CHS, was involved with the hiring of Defendant State, the change in Mr. Fried's terms of employment with the Company, and finally, the termination of Mr. Fried's employment.  Defendant Simmons communicated to Mr. Fried how his employment relationship with the Company would be altered, spoke on behalf of the Board at a meeting of the Board, and ultimately wrote Mr. Fried's letter of termination, speaking on behalf of the Board.

73.     The votes of representatives of two minority shareholders, CHS and Apollo, along with the vote of Defendant State, control the decision-making process of the Board and all of its decisions, including the termination of employment of Mr. Fried.

74.     Due to the foregoing, the Company and CHS have an interrelation of operations, centralized control over labor relations, common management and common

16

ownership. As such, they are jointly and severably liable for the discrimination,

retaliation and other unlawful treatment of Plaintiff.

**A Single/Joint Employer Relationship Exists Between the Company and Apollo**

75.     At all relevant times, the Company and Apollo operated as a single,

integrated enterprise, a single employer, or as joint employers.

76.     Apollo is a minority shareholder of Parent, the sole owner of the

Company, and has two seats on the Board.

77.     With its seats on the Board, Apollo participates in the hiring of officers of

both the LVI Defendants and operates with the authority to change the terms of

employment for employees of the Company, including terminating their employment.

78.     The votes of representatives of two minority shareholders, CHS and

Apollo, along with the vote of Defendant State, control the decision-making process of

the Board and all of its decisions, including the termination of employment of Mr. Fried.

79.     Due to the foregoing, the Company and Apollo have an interrelation of

operations, centralized control over labor relations, common management and common

ownership. As such, they are jointly and severably liable for the discrimination,

retaliation and other unlawful treatment of Plaintiff.

**Damages as a Result of Defendants' Age Discrimination, Retaliation and Breach of Contract**

80.     As a direct and proximate result of Defendants' unlawful conduct, Mr.

Fried is left feeling humiliated, demoralized and demeaned at this complete disregard for

his years of exemplary service to the Company resulting from Defendants' discriminatory

and retaliatory motivations for terminating him.

17

81.     As a direct and proximate result of Defendants' unlawful conduct, Mr.
Fried has suffered, and will continue to suffer, substantial monetary and/or economic
damages, including, but not limited to, the loss of past and future income, compensation
and other benefits to which he would otherwise be entitled.

82.     As a further direct and proximate result of Defendants' unlawful conduct,
Mr. Fried has suffered, and will continue to suffer, severe mental anguish and emotional
distress, including, but not limited to, humiliation, demoralization, embarrassment, and
emotional pain and suffering.

83.     As a direct and proximate result of Defendants' unlawful conduct, Mr.
Fried has suffered damage to his reputation and his career.

84.     Defendants' discriminatory, retaliatory, and otherwise unlawful conduct
against Mr. Fried was intentional and malicious and/or showed a deliberate, willful,
wanton and reckless disregard for Mr. Fried's rights, including his rights under New
York City Human Rights Laws.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Discrimination in Violation of New York City Human Rights Law)

85.     Plaintiff hereby repeats and realleges each and every allegation in
paragraphs 1 through 84, inclusive, as if fully set forth herein.

86.     Defendants have discriminated against Plaintiff on the basis of his age in
violation of the New York City Human Rights Law by subjecting Plaintiff to disparate
treatment based upon his age, including, but not limited to, by stripping Plaintiff of his
responsibilities and terminating Plaintiff because of his age.

87.     As a direct and proximate result of Defendants' unlawful discriminatory
conduct in violation of the New York City Human Rights Law, Plaintiff has suffered, and

18

continues to suffer, monetary and/or economic harm for which he is entitled to an award of monetary damages and other relief.

88.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, demoralization, embarrassment, and emotional pain and suffering.

89.     Defendants' unlawful discriminatory conduct, including retaliation, constitutes a willful and wanton violation of the New York City Human Rights Law, was outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Retaliation in Violation of New York City Human Rights Law)

90.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 89, inclusive, as if fully set forth herein.

91.     Defendants have retaliated against Plaintiff in violation of the New York City Human Rights Law by terminating his employment with the Company after Plaintiff engaged in protected activity by opposing Defendants' discriminatory conduct.

92.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which he is entitled to an award of monetary damages and other relief.

93.     As a direct and proximate result of the Defendants' unlawful retaliatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not

limited to, humiliation, demoralization, embarrassment, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

94.     Defendants' unlawful discriminatory conduct, including retaliation, constitutes a willful and wanton violation of the New York City Human Rights Law, was outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

### AS AND FOR A THIRD CAUSE OF ACTION
**(Aiding and Abetting Violations of New York City Human Rights Law)**

95.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 94, inclusive, as if fully set forth herein.

96.     Defendants Parent, CHS, and Apollo, as well as the Individual Defendants, knowingly or recklessly aided and abetted the unlawful, discriminatory employment practices, including retaliation, against Plaintiff in violation of the New York City Human Rights Law.

97.     As a direct and proximate result of these aider and abettor Defendants' unlawful and discriminatory conduct, including retaliation, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which he is entitled to an award of monetary damages and other relief.

98.     As a direct and proximate result of these aider and abettor Defendants' unlawful discriminatory conduct, including retaliation, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, demoralization, embarrassment, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

20

99.     The aider and abettor Defendants' unlawful discriminatory conduct, including retaliation, constitutes a willful and wanton violation of the New York City Human Rights Law, was outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Breach of Contract)

100.    Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 99, inclusive, as set forth herein.

101.    Plaintiff and the LVI Defendants are parties to an enforceable Employment Contract that includes an obligation by the LVI Defendants to employ Plaintiff as Chairman with "primary responsibility for strategic growth."

102.    The LVI Defendants willfully and wantonly breached the Employment Contract by stripping Plaintiff of his substantive responsibilities and terminating his employment.

103.    As a direct and proximate result of the LVI Defendants' breach of contract, Plaintiff has suffered and continues to suffer, substantial monetary and/or economic damages, including but not limited to, loss of past and future income.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

104.    Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 103, inclusive, as set forth herein.

105.    Plaintiff and the LVI Defendants are parties to an enforceable Employment Contract.

21

106.    The Employment Contract between Plaintiff and the LVI Defendants contained an implied covenant of good faith and fair dealing.

107.    The LVI Defendants willfully and wantonly breached the implied covenant of good faith and fair dealing by, among other wrongful conduct, stripping Plaintiff of his substantive responsibilities, undermining his authority as Chairman of LVI, directing LVI employees to cease contacting Plaintiff, endeavoring to exploit Plaintiff's business relationships and industry experience, and terminating Plaintiff's employment in retaliation for engaging in protected activity.

108.    As a direct and proximate result of the LVI Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered and continues to suffer, substantial monetary and/or economic damages, including but not limited to, loss of past and future income.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Tortious Interference with Employment and/or Contractual Relations)

109.    Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 though 108, inclusive, as set forth herein.

110.    To the extent that it could be concluded that any of the Corporate Defendants were not single or joint employers with the Company, those entities, and the Individual Defendants acting on their behalf, tortiously interfered with Plaintiff's employment with the Company by conspiring to strip Plaintiff of his job duties, transition his duties to members of the Company management team, and terminate his employment.

111.    The tortiously interfering Defendants acted willfully, wrongfully, maliciously and/or violated a duty owed to Plaintiff by conspiring to strip Plaintiff of his

22

job duties, transition his duties to members of the Company management team, and terminate his employment.

112.    The tortiously interfering Defendants were motivated solely by malice and/or a desire to inflict injury on Plaintiff by unlawful means.

113.    As a direct and proximate result of these tortiously interfering Defendants' tortious interference with Plaintiff's employment and/or contractual relations at the Company, Plaintiff has suffered and continues to suffer substantial monetary and/or economic damages, including but not limited to, loss of past and future income.

114.    The tortiously interfering Defendants' unlawful conduct, including tortiously interfering with Plaintiff's employment and/or contractual relations, constitutes a willful and wanton violation of the New York common law, was outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against Defendants, containing the following relief:

A.    A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the City and State of New York;

B.    An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.    An order directing Defendants to place Plaintiff in the position he would have occupied but for Defendants' discriminatory and/or otherwise unlawful treatment of him, as well as to take such affirmative action, including but not limited to reinstatement,

23

as is necessary to ensure that the effects of these unlawful employment practices and other unlawful conduct are eliminated and do not continue to affect Plaintiff;

D.      An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment;

E.      An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damage, including, but not limited to, compensation for his severe mental anguish and emotional distress, including, but not limited to, humiliation, demoralization, embarrassment, and emotional pain and suffering and any other physical or mental injuries;

F.      An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to his professional and personal reputation and loss of career fulfillment;

G.      An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

H.      An award of punitive damages;

I.      An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

J.      Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated

herein.

Dated: New York, New York
      December 13, 2010      Respectfully submitted,


**THOMPSON WIGDOR & GILLY LLP**

By: _____
        Douglas H. Wigdor
        Scott B. Gilly

85 Fifth Avenue
New York, New York 10118
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
dwigdor@twglaw.com

*Attorneys for Plaintiff Burton T. Fried*

25

JS 44C/SDNY
REV. 1/2008

**CIVIL COVER SHEET**

**10 CV 9,308**

1, 3, 2010

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

| PLAINTIFFS | DEFENDANTS |
|---|---|
| Burton T. Fried | LVI SERVICES, INC.; LVI PARENT CORP.; CODE HENNESSY SIMMONS LLC d/b/a CHS PRIVATE EQUITY V LP; APOLLO INVESTMENT CORP.; SCOTT E. STATE; BRIAN SIMMONS; RAJAY BAGARIA; GERALD J. GIRARDI |

| ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| **Douglas H. Wigdor, Esq., Thompson Wigdor & Gilly LLP** **85 Fifth Avenue, New York, NY 10003 (212) 257-6800** | |

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)
(DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

**28 U.S.C.§1332: Breach of contract and age discrimination in violation of NYC Human Rights Law, NYC Administration Code §§8-101 et seq.**

Has this or a similar case been previously filed in SDNY at any time? No? [x] Yes? [ ]   Judge Previously Assigned _____

If yes, was this case Vol. [ ] Invol. [ ]  Dismissed. No [ ] Yes [ ]  If yes, give date _____ & Case No. _____

*(PLACE AN [x] IN ONE BOX ONLY)*                    **NATURE OF SUIT**

**TORTS**                                   **ACTIONS UNDER STATUTES**

| CONTRACT | PERSONAL INJURY | PERSONAL INJURY | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 INSURANCE | [ ] 310 AIRPLANE | [ ] 362 PERSONAL INJURY - MED MALPRACTICE | [ ] 610 AGRICULTURE | [ ] 422 APPEAL 28 USC 158 | [ ] 400 STATE REAPPORTIONMENT |
| [ ] 120 MARINE | [ ] 315 AIRPLANE PRODUCT LIABILITY | [ ] 365 PERSONAL INJURY PRODUCT LIABILITY | [ ] 620 OTHER FOOD & DRUG | [ ] 423 WITHDRAWAL 28 USC 157 | [ ] 410 ANTITRUST |
| [ ] 130 MILLER ACT | [ ] 320 ASSAULT, LIBEL & SLANDER | [ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY | [ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881 | | [ ] 430 BANKS & BANKING |
| [ ] 140 NEGOTIABLE INSTRUMENT | [ ] 330 FEDERAL EMPLOYERS' LIABILITY | | | **PROPERTY RIGHTS** | [ ] 450 COMMERCE |
| [ ] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT | [ ] 340 MARINE | **PERSONAL PROPERTY** | [ ] 630 LIQUOR LAWS | [ ] 820 COPYRIGHTS | [ ] 460 DEPORTATION |
| [ ] 151 MEDICARE ACT | [ ] 345 MARINE PRODUCT LIABILITY | [ ] 370 OTHER FRAUD | [ ] 640 RR & TRUCK | [ ] 830 PATENT | [ ] 470 RACKETEER INFLU-ENCED & CORRUPT ORGANIZATION ACT (RICO) |
| [ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (EXCL VETERANS) | [ ] 350 MOTOR VEHICLE | [ ] 371 TRUTH IN LENDING | [ ] 650 AIRLINE REGS | [ ] 840 TRADEMARK | |
| | [ ] 355 MOTOR VEHICLE PRODUCT LIABILITY | [ ] 380 OTHER PERSONAL PROPERTY DAMAGE | [ ] 660 OCCUPATIONAL SAFETY/HEALTH | | [ ] 480 CONSUMER CREDIT |
| [ ] 153 RECOVERY OF OVERPAYMENT OF VETERAN'S BENEFITS | [ ] 360 OTHER PERSONAL INJURY | [ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY | [ ] 690 OTHER | **SOCIAL SECURITY** | [ ] 490 CABLE/SATELLITE TV |
| [ ] 160 STOCKHOLDERS SUITS | | | **LABOR** | [ ] 861 HIA (1395ff) | [ ] 810 SELECTIVE SERVICE |
| [ ] 190 OTHER CONTRACT | | | [ ] 710 FAIR LABOR STANDARDS ACT | [ ] 862 BLACK LUNG (923) | [ ] 850 SECURITIES/ COMMODITIES/ EXCHANGE |
| [ ] 195 CONTRACT PRODUCT LIABILITY | | | [ ] 720 LABOR/MGMT RELATIONS | [ ] 863 DIWC/DIWW (405(g)) | [ ] 875 CUSTOMER CHALLENGE 12 USC 3410 |
| [ ] 196 FRANCHISE | | | [ ] 730 LABOR/MGMT REPORTING & DISCLOSURE ACT | [ ] 864 SSID TITLE XVI | [ ] 890 OTHER STATUTORY ACTIONS |
| | **ACTIONS UNDER STATUTES** | | [ ] 740 RAILWAY LABOR ACT | [ ] 865 RSI (405(g)) | [ ] 881 AGRICULTURAL ACTS |
| | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 OTHER LABOR LITIGATION | **FEDERAL TAX SUITS** | [ ] 892 ECONOMIC STABILIZATION ACT |
| **REAL PROPERTY** | [ ] 441 VOTING | [ ] 510 MOTIONS TO VACATE SENTENCE 28 USC 2255 | [ ] 791 EMPL RET INC SECURITY ACT | [ ] 870 TAXES (U.S. Plaintiff or Defendant) | [ ] 893 ENVIRONMENTAL MATTERS |
| | [x] 442 EMPLOYMENT | | | [ ] 871 IRS-THIRD PARTY 26 USC 7609 | [ ] 894 ENERGY ALLOCATION ACT |
| | [ ] 443 HOUSING/ ACCOMMODATIONS | | | | [ ] 895 FREEDOM OF INFORMATION ACT |
| [ ] 210 LAND CONDEMNATION | [ ] 444 WELFARE | [ ] 530 HABEAS CORPUS | **IMMIGRATION** | | [ ] 900 APPEAL OF FEE DETERMINATION UNDER EQUAL ACCESS TO JUSTICE |
| [ ] 220 FORECLOSURE | [ ] 445 AMERICANS WITH DISABILITIES - EMPLOYMENT | [ ] 535 DEATH PENALTY | [ ] 462 NATURALIZATION APPLICATION | | |
| [ ] 230 RENT LEASE & EJECTMENT | | [ ] 540 MANDAMUS & OTHER | [ ] 463 HABEAS CORPUS-ALIEN DETAINEE | | [ ] 950 CONSTITUTIONALITY OF STATE STATUTES |
| [ ] 240 TORTS TO LAND | [ ] 446 AMERICANS WITH DISABILITIES -OTHER | [ ] 550 CIVIL RIGHTS | [ ] 465 OTHER IMMIGRATION ACTIONS | | |
| [ ] 245 TORT PRODUCT LIABILITY | [ ] 440 OTHER CIVIL RIGHTS | [ ] 555 PRISON CONDITION | | | |
| [ ] 290 ALL OTHER REAL PROPERTY | | | | | |

923487

*Check if demanded in complaint:*

[ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $_____ OTHER _____

*Check YES only if demanded in complaint*
JURY DEMAND: [ ] YES [ ] NO

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y.? IF SO, STATE:

JUDGE _____ DOCKET NUMBER _____

NOTE:  Please submit at the time of filing an explanation of why cases are deemed related.

(PLACE AN  x  IN ONE BOX ONLY)            ORIGIN

[X] 1 Original Proceeding    [ ] 2a. Removed from State Court    [ ] 3 Remanded from Appellate Court    [ ] 4 Reinstated or Reopened    [ ] 5 Transferred from (Specify District)    [ ] 6 Multidistrict Litigation    [ ] 7 Appeal to District Judge from Magistrate Judge Judgment

[ ] 2b. Removed from State Court AND at least one party is pro se.

(PLACE AN  x  IN ONE BOX ONLY)      BASIS OF JURISDICTION      *IF DIVERSITY, INDICATE CITIZENSHIP BELOW. (28 USC 1322, 1441)*

[ ] 1 U.S. PLAINTIFF    [ ] 2 U.S. DEFENDANT    [ ] 3 FEDERAL QUESTION (U.S. NOT A PARTY)    [X] 4 DIVERSITY

CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)

(Place an [X] in one box for Plaintiff and one box for Defendant)

| | PTF | DEF | | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [ ] 1 | [ ] 1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ] 3 | [ ] 3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ] 5 | [ ] 5 |
| CITIZEN OF ANOTHER STATE | [X] 2 | [ ] 2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ] 4 | [X] 4 | FOREIGN NATION | [ ] 6 | [ ] 6 |

PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)

Mr. Burton T. Fried
149 Roseville Road
Westport , CT 06880
c/o Thompson Wigdor Gilly LLP
85 Fifth Ave
New York, NY 10003 (New York County)

DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)

LVI Services Inc., 80 Broad Street, New York, NY, 10004 (New York County);

LVI Parent Corp, 80 Broad Street, New York, NY, 10004 (New York County);

Apollo Investment Corporation, 9 West 57th Street, New York, NY, 10019 (New York County);

Code Hennessy Simmons LLC, 10 South Wacker Drive, Suite 3175, Chicago, IL 60606 (Cook County)

DEFENDANT(S) ADDRESS UNKNOWN
REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN THE RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

Scott E. State;

Rajay Bagaria;

Gerald J. Girardi; and

Brian Simmons

Check one:   THIS ACTION SHOULD BE ASSIGNED TO:   [ ] WHITE PLAINS   [X] MANHATTAN
(DO NOT check either box if this a PRISONER PETITION.)

DATE      SIGNATURE OF ATTORNEY OF RECORD          ADMITTED TO PRACTICE IN THIS DISTRICT
RECEIPT #                                    [ ] NO
                                               [X] YES (DATE ADMITTED Mo. _01_ Yr. _2000_ )
                                               Attorney Bar Code # SG-6861

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge _____ is so Designated.

J. Michael McMahon, Clerk of Court by _____ Deputy Clerk, DATED _____ MAG. JUDGE FRANCIS

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)