# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **SHARI L. DEMBIN and BURTON T. FRIED** | : | |
| | : | |
| **Plaintiffs,** | : | **Civil Action No. 3:11-CV-01855 (JBA)** |
| | : | |
| **v.** | : | **May 31, 2012** |
| | : | |
| **LVI SERVICES INC., LVI PARENT CORP.,** | : | |
| **and SCOTT E. STATE,** | : | |
| | : | |
| **Defendants.** | : | |

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Douglas H. Wigdor (*Pro Hac Vice*)
Shaffin A. Datoo (*Pro Hac Vice*)
THOMPSON WIGDOR LLP
85 Fifth Avenue
New York, NY 10003
Telephone:    (212) 257-6800
Facsimile:    (212) 257-6845
dwigdor@thompsonwigdor.com
sdatoo@thompsonwigdor.com

William Madsen (ct 09853)
Todd Steigman (ct 26875)
MADSEN, PRESTLEY & PARENTEAU, LLC
44 Capitol Avenue, Suite 201
Hartford, CT 06106
Telephone:    (860) 246-2466
Facsimile:    (860) 246-1794
wmadsen@mppjustice.com
tsteigman@mppjustice.com

*Counsel for Plaintiff Burton T. Fried*

***ORAL ARGUMENT REQUESTED***

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. iii

STATEMENT OF FACTS .................................................................................. 1

ARGUMENT ...................................................................................................... 6

I.   STANDARD FOR GRANTING SUMMARY JUDGMENT IN EMPLOYMENT
     DISCRIMINATION CASES ..................................................................... 6

II.  VIEWING THE RECORD EVIDENCE AS A WHOLE, SUMMARY JUDGMENT
     SHOULD BE DENIED WITH RESPECT TO MR. FRIED'S RETALIATION
     CLAIM BECAUSE ISSUES OF FACT EXIST AS TO WHETHER HE WAS
     TERMINATED FOR COMPLAINING ABOUT AGE DISCRIMINATION .................. 7

III. VIEWING THE RECORD EVIDENCE AS A WHOLE, SUMMARY
     JUDGMENT SHOULD BE DENIED WITH RESPECT TO MR. FRIED'S AGE
     DISCRIMINATION CLAIM BECAUSE ISSUES OF FACT EXIST AS TO
     WHETHER HE WAS TERMINATED BECAUSE OF HIS AGE ................................. 11

     A.  The Supreme Court's Holding In Gross Regarding A Plaintiff's Ultimate
         Burden In An ADEA Case Is Not Applicable To A CFEPA Case ...................... 11

     B.  Genuine Issues Of Material Fact Exist As To: (1) Whether Mr. Fried's Age
         Was A Motivating Factor In Defendants' Decision To Terminate; (2)
         Whether Defendants Would Have Terminated Mr. Fried Regardless Of His
         Age; And (3) Whether Defendants' Proffered Reason For Terminating Mr.
         Fried Was True .............................................................................. 14

IV.  MR. FRIED WAS NOT REQUIRED TO NAME STATE IN HIS CHRO
     COMPLAINT UNDER THE IDENTITY OF INTEREST EXCEPTION ...................... 24

V.   MR. FRIED'S CFEPA CLAIMS ARE NOT BARRED BY THE DOCTRINE OF
     RES JUDICATA BECAUSE HE DID NOT HAVE AN ADEQUATE
     OPPORTUNITY TO FULLY AND FAIRLY LITIGATE THOSE CLAIMS IN
     THE NEW YORK ACTION .............................................................. 27

VI.  MR. FRIED IS NOT COLLATERALLY ESTOPPED BECAUSE THE DISTRICT
     COURT IN THE NEW YORK ACTION DID NOT DETERMINE WHETHER MR.
     FRIED'S AGE AND/OR COMPLAINTS OF DISCRIMINATION WAS A
     MOTIVATING FACTOR IN THE DECISION TO TERMINATE ............................... 37

     A.  Mr. Fried Is Not Collaterally Estopped From Pursuing His CFEPA Age
         Discrimination Claim Because The District Court Did Not Determine
         Whether His Age Was A Motivating Factor In The Decision To Terminate ....... 38

i

B.  Mr. Fried Is Also Not Collaterally Estopped From Pursing His CFEPA
Retaliation Claim Because The District Court Did Not Determine Whether
His Complaints Of Age Discrimination Were A Motivating Factor In The
Decision To Terminate ........................................................................................40

CONCLUSION.........................................................................................................................41

## <u>TABLE OF AUTHORITIES</u>

**FEDERAL CASES**

*Abdu-Brisson v. Delta Air Lines, Inc.*,
    239 F.3d 456 (2d Cir. 2001).......................................................................................23

*Aiello v. Stamford Hosp.*,
    3:09 CV 1161 (VLB), 2011 WL 3439459 (D. Conn Aug. 8, 2011).....................18, 19, 39

*Barnes v. Royal Health Care*,
    357 Fed.Appx. 375 (2d Cir. 2009)...........................................................................32

*Berkowitz v. County of Orange*,
    120 F.Supp.2d 286 (S.D.N.Y. 2000)........................................................................39

*Bickerstaff v. Vassar Coll.*,
    196 F.3d 435 (2d Cir. 1999).......................................................................................6

*Blandon v. Teamsters Local Union No. 443*,
    3:10 CV 463 (VLB), 2011 WL 4915197 (D. Conn. Oct. 17, 2011)...........................11, 13

*Byrnie v. Town of Cromwell*,
    243 F.3d 93 (2d Cir. 2001).........................................................................................9

*Collins v. Connecticut Jobs Corps*,
    684 F.Supp.2d 232 (D. Conn. 2010).................................................................6, 7, 9, 13

*Crews v. Trustees of Columbia Univ. in City of New York*,
    452 F.Supp.2d 504 (S.D.N.Y. 2006)........................................................................39

*Cronin v. Aetna Life Ins. Co.*,
    46 F.3d 196 (2d Cir. 1995).................................................................................9, 17, 23

*Desert Palace, Inc. v. Costa*,
    539 U.S. 90, 123 S.Ct. 2148 (2003)........................................................................39

*Devlin v. Transportation Communications Int'l Union*,
    175 F.3d 121 (2d Cir. 1999)................................................................................31, 32

*Dister v. Cont'l Group, Inc.*,
    859 F.2d 1108 (2d Cir. 1988).....................................................................................7

*Fitzgerald v. Alleghany Corp.*,
    904 F. Supp. 223 (S.D.N.Y. 1995)..........................................................................39

*Gallagher v. Delaney*,
139 F.3d 338 (2d Cir. 1998)..........................................................................7

*Gallo v. Prudential Res. Serv.*,
22 F.3d 1219 (2d Cir. 1994)..........................................................................6

*Giarratano v. Edison Hotel*,
No. 08-CV-1849 (SAS), 2009 WL 464441 (S.D.N.Y. Feb. 24, 2009)............................21

*Gipson v. Wells Fargo N.A.*,
460 F.Supp.2d 15 (D.D.C. 2006) ..................................................................20

*Gorzynski v. JetBlue Airways Corp.*,
596 F.3d 93 (2d Cir. 2010)......................................................................12, 15

*Graham v. Long Island R.R.*,
230 F.3d 34 (2d Cir.2000)..........................................................................6

*Gross v. FBL Financial Services, Inc.*,
557 U.S. 167, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009)...............................11, 12

*Harris v. Beth Israel Medical Center*,
367 Fed.Appx. 184 (2d Cir. 2010) ................................................................32

*Henry v. Wyeth Pharmaceuticals, Inc.*,
616 F.3d 134 (2d Cir. 2010)....................................................................19, 20

*Herbert v. National Amusements, Inc.*,
3:08 CV 1945 (VLB), 2011 WL 2457552 (D. Conn. June 16, 2011) ........................13

*Hicks v. Baines*,
593 F.3d 159 (2d Cir. 2010)..........................................................................7

*Hofmann v. Dist. Council 37*,
No. 99-CV-8636 (KMW), 2004 WL 1936242 (S.D.N.Y. Aug. 31, 2004) *report and
recommendation adopted as modified*, No. 99-CV-8636 (GEL), 2006 WL 3476747
(S.D.N.Y. Nov. 30, 2006) ..........................................................................22

*Holtz v. Rockefeller & Co., Inc.*,
258 F.3d 62 (2d Cir. 2001)......................................................................14, 24

*Jalal v. Columbia Univ. in City of New York*,
4 F.Supp.2d 224 (S.D.N.Y. 1998)................................................................39

*James v. New York Racing Ass'n*,
233 F.3d 149 (2d Cir. 2000)..........................................................................9

*Johnson v. Palma*,
  931 F.2d 203 (2d Cir. 1991)............................................................................25

*Jorgensen v. Sony BMG Music Entertainment*,
  310 Fed.Appx. 419 (2d Cir. 2008)..................................................................32

*Kearney v. City of Bridgeport Police Dep't*,
  573 F.Supp.2d 562 (D. Conn. 2008)................................................................7

*Kirsch v. Fleet Street, Ltd.*,
  148 F.3d 149 (2d Cir. 1998)............................................................................20

*Koestner v. Derby Cellular Products*,
  518 F.Supp.2d 397 (D. Conn. 2007)...............................................................18

*Kucharski v. Cort Furniture Rental*,
  594 F.Supp.2d 207 (D. Conn. 2008)................................................................39

*Ludwig v. Quebecor Dailies, Inc.*,
  483 F.Supp. 594 (E.D. Pa. 1980) ........................................................33, 34, 35

*Mandell v. County of Suffolk*,
  316 F.3d 368 (2d Cir. 2003)..............................................................................6

*Maturo v. National Graphics*,
  722 F.Supp.2d 916 (D. Conn 1989)............................................................24, 25

*Mitchell v. Board of Trustees of Pickens County School Dist.*,
  380 F.Supp. 197 (D.S.C. 1973)...................................................................34, 35

*Morris v. New York City Dept. of Sanitation*,
  No. 99-CV-4376 (WK), 2003 WL 1739009 (S.D.N.Y. Apr. 2, 2003) .............22

*Mulero v. Hartford Board of Educ.*,
  3:05 CV 630 (PCD), 2006 WL 752852 (D. Conn. March 20, 2006)................32

*O'Reilly v. Marina Dodge, Inc.*,
  No. 10-CV-2977, 2011 WL 1897489 (2d Cir. May 19, 2011) ..............18, 21, 23

*Owens v. New York City Hous. Auth.*,
  934 F.2d 405 (2d Cir. 1991)............................................................................23

*Padilla v. Metro-North Commuter R.R.*,
  92 F.3d 117 (2d Cir. 1996)............................................................................7, 9

*Paul v. Bank of America*,
    3:08-CV-1066, 2010 WL 419405 (D. Conn. Jan. 29, 2010) ...............................6

*Price Waterhouse v. Hopkins*,
    490 U.S. 228 (1989)...........................................................................................9

*Raskin v. The Wyatt Co.*,
    125 F.3d 55 (2d Cir. 1997)................................................................................19

*Reeves v. Sanderson Plumbing Products, Inc.*,
    530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).....................................14

*Rodriguez v. City of New York*,
    644 F.Supp.2d 168 (E.D.N.Y. 2008) ..................................................................8

*Roge v. NYP Holdings, Inc.*,
    257 F.3d 164 (2d Cir. 2001)..............................................................................16

*Schreiber v. Worldco, LLC*,
    324 F.Supp.2d 512 (S.D.N.Y. 2004)..................................................................18

*Sciola v. Quattro Piu, Inc.*,
    361 F.Supp.2d 61 (E.D.N.Y. 2005) ...............................................................21, 22

*Shah v. Consolidated Edison Corp. of N.Y.*,
    04 Civ. 2880, 2005 WL 612713 (S.D.N.Y. Mar. 15, 2005) ...............................35

*Terry v. Ashcroft*,
    336 F.3d 128 (2d Cir. 2003)...........................................................................7, 10

*Tomassi v. Insignia Fin. Grp., Inc.*,
    478 F.3d 111 (2d Cir. 2007)...........................................................................20, 21

*Tyler v. Bethlehem Steel Corp.*,
    958 F.2d 1176 (2d Cir. 1992)............................................................................39

*Tyszka v. Edward McMahon Agency*,
    188 F.Supp.2d 186 (D. Conn. 2001)..................................................................33

*Weber v. FujiFilm Medical Systems U.S.A., Inc.*,
    3:10 CV 401 (JBA), 2012 WL 681681 (D. Conn. Feb. 28, 2012)...............11, 13

*Weichman v. Chubb & Son*,
    552 F.Supp.2d 271 (D. Conn. 2008)..................................................................18

*White v. Connecticut, Dep't of Corrections*,
    3:08 CV 1168 (CFD), 2010 WL 3447505 (D. Conn. Aug. 24, 2010) ...............................8

*Wilkes v. Wyoming Dep't. of Employment Div. of Lab. Standards*,
    314 F.3d 501 (10th Cir. 2003) .........................................32

*Wood v. Pittsford Cent. Sch. Dist.*,
    03 CV 6541T, 2005 WL 43773 (W.D.N.Y. Jan. 10, 2005)...............................26

*Woods v. Dunlop Tire Corp.*,
    972 F.2d 36 (2d Cir. 1992)...................................................30, 31, 32

**STATE CASES**

*Birnie v. Electric Boat Corp.*,
    288 Conn. 392, 953 A.2d 28 (2008) ...............................37

*Board of Educ. v. Commission on Human Rights & Opportunities*,
    266 Conn. 492, 832 A.2d 660 (2003) ........................................14, 15

*Bogdahn v. Hamilton Standard Space Sys. Intern., Inc.*,
    CV 97569864S, 1998 WL 756722 (Conn. Super. Ct. Oct. 7, 1998) ...............33

*Cherniak v. Connecticut Post Newspaper*,
    CV000412889S, 2008 WL 589494 (Conn. Sup. Ct. Feb. 13, 2008) ...............25

*Craine v. Trinity Coll.*,
    259 Conn. 625 (2002) .........................................................13

*Delahunty v. Mass. Mutual Life Ins. Co.*,
    236 Conn. 582, 674 A.2d 1290 (1996) ..........................................28

*Egri v. Foisie*,
    83 Conn.App. 243, 848 A.2d 1266, *cert. denied*,
    271 Conn. 931, 895 A.2d 930 (2004) ..........................................27

*Jacobs v. General Electric Co.*,
    275 Conn. 395, 880 A.2d 151 (2005) ........................................11, 14

*Levy v. Commission on Human Rights & Opportunities*,
    236 Conn. 96, 671 A.2d 349 (1996) .........................................11, 24

*Lyon v. Jones*,
    291 Conn. 384, 968 A.2d 416 (2009) ..........................................37

*Malasky v. Metal Products Corp.*,
    44 Conn.App. 446, 689 A.2d 1145, *cert. denied*,
    241 Conn. 906, 605 A.2d 539 (1997) ........................................................24, 25

*Marks v. Cogswell*,
    CV085022000S, 2011 WL 522786 (Conn. Sup. Ct. Jan. 11, 2011)..................................26

*Shenking v. Antonio*,
    CV 075003432, 2009 WL 6499424 (Conn. Sup. Ct. Oct. 23, 2009)................................16

*State v. Ellis*,
    197 Conn. 436, 497 A.2d 974 (1985) ...............................................28

*Tirozzi v. Shelby Ins. Co.*,
    50 Conn.App. 680, 719 A.2d 62, *cert. denied*,
    247 Conn. 945, 723 A.2d 323 (1998) ...............................................28

*Wagner v. Board of Trustees for Connecticut State Univ.*,
    HHDCV085023775S, 2012 WL 669544 (Conn. Sup. Ct. Jan. 30, 2012) .........................13

## OTHER AUTHORITIES

29 U.S.C. §623(a)(1)..............................................................12

42 U.S.C. §2000e-2(a)(1).........................................................12

Conn. Gen.Stat. §46a-60(a)(1)..................................................13, 27, 29, 31

Fed. R. Civ. P. 1 ................................................................36

**STATEMENT OF FACTS**

LVI Services, Inc. ("LVI") is an environmental remediation company that maintains its principal place of business in New York. (Def. 56(a)1, ¶1).  LVI Parent Corp. ("Parent") maintains its principal place of business in New York and is the parent and sole shareholder of LVI. (Def. 56(a)1, ¶2).  During all relevant times, the Board of Directors of Parent (the "Board") was comprised of: Rajay Bagaria ("Bagaria"), Gerald Girardi ("Girardi"), Brian Simmons ("Simmons"), Robert Hogan ("Hogan"), John Schnabel ("Schnabel"), Scott State ("State"), Richard Ferruci, Robert Buck, and Plaintiff Burton T. Fried ("Mr. Fried"), who served as Chairman of the Board. (Ex. 4 pp. 18-19; Ex. 6, p. 14).

Mr. Fried was born on February 26, 1940. (Ex. 9; Ex. 10; Ex. 11, pp. 362, 364-65).  Hired in 1986, he was the General Counsel of LVI until he became its President and Chief Executive Officer in 1989. (Ex. 12, pp. 63-64).  While Mr. Fried was President and CEO, LVI became the dominant leader in its industry. (Ex. 12, pp. 75-76).  As a result of LVI's success, in 2005 Mr. Fried recommended that LVI find a new President and CEO for LVI who had experience managing a billion-dollar company. (Ex. 12; pp. 75-76).  However, Mr. Fried had no intention of retiring once a new President and CEO was hired. (Ex. 12, pp. 77-79, 132; Ex. 13; Ex. 14). Rather, he intended to continue working for LVI as an employee with the job title of Chairman and continue serving as Chairman of the Board.  (Ex. 12, pp. 77-79, 132; Ex. 13).

In or around July 2006, Robert McNamara ("McNamara") was hired by LVI as its President and CEO, and Mr. Fried assumed his new role as Chairman of LVI. (Ex. 4, pp. 38-39, 41; Ex. 14).  As Chairman, Mr. Fried did a good job. (Ex. 7, p. 37; Ex. 6, pp. 25-26).

In early 2010, McNamara resigned, and Mr. Fried was asked by Simmons to serve as interim President and CEO of LVI until McNamara's replacement could be found. (Ex. 5, p. 31;

1

Ex. 8, pp. 28-30; Ex. 12, pp.108-09).  Not only did Mr. Fried agree to serve in this capacity, but he also continued to serve as Chairman and intended to continue as Chairman after a new President and CEO was hired. (Ex. 4, p. 64; Ex. 7, pp. 38, 48-50).  While interim President and CEO, Mr. Fried did a good job. (Ex. 4, pp. 64-65; Ex. 6, p. 28; Ex. 8, pp. 35-36).  In fact, just six months prior to his termination, he was specifically told by Simmons that he was "earning every penny" of his salary, and five months prior to his termination, Bagaria and Girardi also commended Mr. Fried's performance by writing that "we are fortunate to have Burt Fried as interim CEO who had done a good job stabilizing the situation." (Ex. 16; Ex. 17, p. 13).

In August 2010, State, who was 47 years old, was introduced to Mr. Fried as a candidate for President and CEO of LVI. (Ex. 12, pp. 117-18).  On September 14, 2010, before State was even hired, he asked how Mr. Fried could be removed as Chairman of the Board. (Ex. 18).

Before he was hired, State asked John Leonard ("Leonard"), the Chief Operating Officer of LVI, if Mr. Fried, who was 70 years old at the time, was going to retire. (Ex. 7, pp. 59-60, 64-65; Ex. 11, pp. 115-17).  Leonard said no. (Ex. 7, pp. 59-60, 64-65; Ex. 11, pp. 130-31; Ex. 19). In fact, Mr. Fried often told Leonard that he intended to die in his chair. (Ex. 7, p. 49).

On September 19, 2010, before being hired, and despite already being told by Leonard that Mr. Fried had no intention of retiring, State wrote in the body of a lengthier email to Hogan:

- In the best-case scenario Burt will decide to retire at some date certain from LVI upon a new CEO being named and offer to support the business under a consulting agreement in any way the new CEO sees fit.  Several members of the senior team have told me that Burt will never retire because he has no other interests and nothing else to do. That is not a healthy situation for Burt or LVI.  (Ex. 19).

On or around September 23, 2010, State was hired by LVI as its President and CEO and Mr. Fried assumed his prior title and job duties of Chairman of LVI. (Def. 56(a)1 ¶20; Ex. 3, p. 47; Ex. 20).  As Chairman, Mr. Fried continued to do a good job. (Ex. 7, pp. 76-77).

On October 19, 2010, Mr. Fried met with State to discuss Mr. Fried's job duties as Chairman. (Ex. 12, p. 176; Ex. 21).  During the meeting, State told Mr. Fried that he was going to take away all of his duties and give them to others (who were younger than Mr. Fried by decades). (Def. 56(a)1, ¶24; Ex. 4, p. 101; Ex. 7, pp. 77, 114-16; Ex. 10; Ex. 12, p. 182, 194; Ex. 36).  When Mr. Fried asked State why he was doing this, Mr. State responded as follows:

- "Burt, you're 71 years of age, how much longer do you expect to work?" (Ex. 7, p. 117; Ex. 12, p. 194).

State made this comment despite knowing that Mr. Fried wanted to "remain active forever" and had no intention of retiring. (Ex. 7, pp. 49, 58-60; Ex. 11, pp. 130-132; Ex. 19; Ex. 34).  In response to State's ageist remark, Mr. Fried told State that he was 70 years old, and that he intended to work for LVI for many years to come. (Ex. 12, pp. 182-83).  Despite Mr. Fried's response, State reassigned Mr. Fried's duties. (Ex. 4, p. 101; Ex. 12, p. 183).

After he met with Mr. Fried, State emailed Simmons that same day and wrote the following sentence in reference to Mr. Fried:

- I was clear with him that it was my objective to have him truly retire and be just an on call resource. (Ex. 21).

After his meeting but prior to the end of October 2010, Mr. Fried spoke to Bagaria, Simmons and Schnabel, and told them that State wanted to reassign his duties and complained about State's ageist comment. (Ex. 3, pp. 54-57; Ex. 8, pp. 44-45, 48; Ex. 12, pp. 194-200).

On November 4, 2010, the Board held a quarterly meeting to discuss, among other things, Mr. Fried's continuing role at LVI. (Ex. 22).  During this meeting, Mr. Fried calmly told the Board that State reassigned all of his duties to others, and he also told them about State's ageist comment. (Ex. 3, pp. 90-91, Ex. 5, pp. 43-44; Ex. 8, pp. 69-73; Ex. 23, pp. 41, 43-44).  Mr. Fried also told the Board that State's actions constituted age discrimination. (Ex. 3, p. 91; Ex. 6, pp.

51-52; Ex. 23, pp. 43-44).   At the conclusion of the meeting, no decision regarding Mr. Fried's continued employment was made. (Ex. 3, pp. 93, 95; Ex. 5, p. 73).   Further, the Board decided not to investigate Mr. Fried's complaint of age discrimination, even though Jeffrey Smith, Esq., a partner at Sidley Austin (Defendants' former outside counsel in this matter), was present at the Board meeting. (Ex. 4, p. 23; Ex. 5, p. 75; Ex. 23, pp. 10, 12, 25, 81-82; Ex. 33, pp. 21, 76-77).

On November 5, 2010, State emailed his personal friend, who he was communicating with about LVI business, and wrote the following sentence in reference to Mr. Fried:

- In a battle with founder about his need to retire but Board gets it and is working to exit him with some respect. (Ex. 9; Ex. 11, p. 362).

Because no remedial action was taken in response to Mr. Fried's complaints of discrimination, on November 15, 2010, Mr. Fried's attorneys hand delivered a letter to State's attention to address the discriminatory conduct. (Ex. 4, pp. 138-39; Ex. 24).   On November 16, 2010, a majority of the Board members (Girardi, Simmons, Hogan, Schnabel and State) discussed the November 15 letter. (Ex. 5, pp. 82-84, 87-92; Ex. 8, pp. 138-39; Ex. 25).   The Board members decided to ignore the November 15 letter, and decided instead to send a letter in response that day to Mr. Fried. (Ex. 5, pp. 87-92; Ex. 25; Ex. 26).   The November 16, 2010 letter terminated Mr. Fried's employment with LVI. (Ex. 26).   The decision to terminate Mr. Fried was made by State. (Ex. 27, No. 4; Ex. 28, No. 6; Ex. 29, No. 5; Ex. 30, No. 5).   Prior to State's hire, the Board never considered firing Mr. Fried. (Ex. 3, pp. 53-54, 95; Ex. 5, pp. 39-40).

The November 16 letter also advised Mr. Fried that he could continue as Chairman of the Board and offered him the opportunity to work for LVI as a consultant on an hourly basis. (Ex. 26).   However, this arrangement was contingent upon Mr. Fried agreeing not to sue LVI for age discrimination and retaliation. (Ex. 26).   Moreover, Mr. Fried was not guaranteed a minimum

number of hours, could have been terminated at any time upon 30-days notice, and was only guaranteed $37,500.  (Ex. 26).  Mr. Fried declined the "offer." (Ex. 33, p. 131).

After his termination, Mr. Fried's job duties were mostly reassigned to Tom Cullen who was 35, Gregory DiCarlo who was 44, David Pearson who was 44, Frank Aiello who was 45, John Leonard who was 46, State who was 47, Mark Canessa who was 48, Kamal Sookram who was 53, and Joseph Annarumma who was 57. (Def. 56(a)1, ¶3; Ex. 7, pp. 93-116, Ex. 10; Ex. 36).

On December 13, 2010, Mr. Fried filed an action entitled *Burton T. Fried v. LVI Services, Inc., et al.*, Civil Action No. 10 CV 9308, in the United States District Court for the Southern District of New York (the "New York Action") alleging, among other things, age discrimination and retaliation in violation of the Age Discrimination in Employment Act ("ADEA") and the New York City Human Rights Law ("NYCHRL"). (Def. 56(a)1, ¶32).  On May 16, 2011, Mr. Fried filed a complaint (the "CHRO Complaint") with the Connecticut Commission on Human Rights and Opportunities (the "CHRO") alleging age discrimination and retaliation in violation of the Connecticut Fair Employment Practices Act (the "CFEPA"). (Ex. 41).

On June 10, 2011, the district court in the New York Action was notified in writing of Mr. Fried filing with the CHRO. (Ex. 43).  Nevertheless, on September 2, 2011, the district court granted partial summary judgment to Defendants on Mr. Fried's ADEA and NYCHRL claims without an opinion. (Ex. 32).  On October 4, 2011, the district court issued an Opinion and Order which, among other things, dismissed the NYCHRL claims on jurisdictional grounds. (Ex. 35).

On October 11, 2011, the district court scheduled a trial for the sole claim that survived summary judgment for the week of December 5, 2011.  On October 17, 2011, the CHRO released jurisdiction over Mr. Fried's CHRO Complaint. (Ex. 42).  On October 19, 2011, the

parties resolved the sole remaining claim in the New York Action and stipulated to its dismissal with prejudice and without costs to either party. (Ex. 40).

On November 14, 2011, Mr. Fried filed a Notice of Appeal. (Ex. 44).  On November 30, 2011, Mr. Fried filed the instant action. (Ex. 1).  On March 5, 2012, the Equal Employment Opportunity Commission filed a brief as *amicus curiae* in support of Mr. Fried. (Ex. 45).

## ARGUMENT

## I.    STANDARD FOR GRANTING SUMMARY JUDGMENT IN EMPLOYMENT DISCRIMINATION CASES

The standard for summary judgment is well known to this Court. See Collins v. Connecticut Jobs Corps, 684 F.Supp.2d 232, 237, n.2 (D. Conn. 2010); Paul v. Bank of America, 3:08-CV-1066, 2010 WL 419405, at *6 (D. Conn. Jan. 29, 2010).  Additionally, in employment discrimination cases where state of mind is at issue, courts "affirm a grant of summary judgment in favor of an employer sparingly because 'careful scrutiny of the factual allegations may reveal circumstantial evidence to support the required inference of discrimination.'" Mandell v. County of Suffolk, 316 F.3d 368, 377 (2d Cir. 2003) (quoting Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir.2000)).  "Because writings directly supporting a claim of intentional discrimination are rarely, if ever, found among an employer's corporate papers, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." Gallo v. Prudential Res. Serv., 22 F.3d 1219, 1224 (2d Cir. 1994); see Bickerstaff v. Vassar Coll., 196 F.3d 435, 448 (2d Cir. 1999) ("as discrimination will seldom manifest itself overtly, courts must be alert to the fact that [e]mployers are rarely so cooperative as to include a notation in the personnel file that the firing is for a reason expressly forbidden by law.") (internal quotation omitted)).

## II.   VIEWING THE RECORD EVIDENCE AS A WHOLE, SUMMARY JUDGMENT SHOULD BE DENIED WITH RESPECT TO MR. FRIED'S RETALIATION CLAIM BECAUSE ISSUES OF FACT EXIST AS TO WHETHER HE WAS TERMINATED FOR COMPLAINING ABOUT AGE DISCRIMINATION

Defendants retaliated against Mr. Fried in violation of Conn. Gen.Stat. §46a-60 by terminating his employment because he complained of age discrimination.  CFEPA retaliation claims are governed by the McDonnell Douglas three-part burden-shifting framework. See Terry v. Ashcroft, 336 F.3d 128, 141 (2d Cir. 2003); Collins, 684 F.Supp.2d at 254; Kearney v. City of Bridgeport Police Dep't, 573 F.Supp.2d 562, 573 (D. Conn. 2008) ("Claims under CFEPA are analyzed in the same manner as those under Title VII," including retaliation claims).  Under this three-part analysis: (1) the plaintiff must demonstrate a *prima facie* case of retaliation; (2) the defendant then has the burden of articulating a legitimate, non-retaliatory reason for the adverse action; and (3) the plaintiff can then show that the defendant's reason was not the only reason and that a prohibited factor was at least one of the motivating factors for the adverse action. See Gallagher v. Delaney, 139 F.3d 338, 349 (2d Cir. 1998); Padilla v. Metro-North Commuter R.R., 92 F.3d 117, 122 (2d Cir. 1996).

In order to establish a *prima facie* case of retaliation, a plaintiff must show: (1) that he engaged in a protected activity; (2) that the defendant was aware of the protected activity; (3) that the defendant took adverse action against him; and (4) there was a causal connection between his protected activity and the adverse action. See Terry, 336 F.3d at 141.  Proof of causation can be shown either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment . . . or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Hicks v. Baines, 593 F.3d 159, 170 (2d Cir. 2010); Collins, 684 F.Supp.2d at 254.  The plaintiff's burden at the *prima facie* stage is "de minimus." Dister v. Cont'l Group, Inc., 859 F.2d 1108, 1114 (2d Cir. 1988).

In this case, although the district court in the New York Action already held that Mr. Fried established a *prima facie* case of retaliation, it is worth noting that the district court based its decision upon the fact that Mr. Fried: (1) complained of age discrimination as early as October 19, 2010 to certain members of the Board; (2) complained of age discrimination again on November 4, 2010 during a Board meeting; (3) complained of age discrimination one final time on November 15, 2010 in a letter which was addressed to State and discussed by certain members of the Board; and (4) was terminated less than a month after he first complained of age discrimination, and the day after he last complained. (Ex. 35, pp. 28-29).

Despite the district court's holding on this point and Defendants' own collateral estoppel argument, Defendants attempt to re-litigate this issue by apparently arguing that the decision to terminate Mr. Fried pre-dated his October 19, 2010 complaint. This argument, which was already rejected by the district court, is off the mark because even in light of State's September 19, 2010 email and Simmons' November 2, 2010 email, neither of which even discuss terminating Mr. Fried, it is undisputed that prior to November 4, 2010 the Board never contemplated terminating Mr. Fried. (Ex. 3, pp. 52-53, 92-93, 95; Ex. 5, pp. 73-74). Nevertheless, to the extent that State considered terminating Mr. Fried prior to his first complaint of discrimination, but did not do so, is not fatal to Mr. Fried's claim. See White v. Connecticut, Dep't of Corrections, 3:08 CV 1168 (CFD), 2010 WL 3447505, *10 (D. Conn. Aug. 24, 2010) (causal connection established where final decision to terminate was made after protected activity); Rodriguez v. City of New York, 644 F.Supp.2d 168, 193 (E.D.N.Y. 2008) (causal connection established where recommendation to terminate was made three weeks before the protected activity because final decision was not made until after the protected activity).

In any event, the district court also held that Defendants articulated a legitimate non-retaliatory reason for terminating Mr. Fried, namely, "the need to ensure that the new CEO and President, defendant Scott E. State, would have the freedom to manage the Company as he saw fit." (Ex. 35, p. 20).

Now that the burden shifts back to Mr. Fried, he need not prove that Defendants' "proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors." Padilla, 92 F.3d at 122 (quoting Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 203 (2d Cir. 1995) (quoting Price Waterhouse v. Hopkins, 490 U.S. 228, 247, 249 (1989))); see Collins, 684 F.Supp.2d at 256 ("At the third stage of the *McDonnell Douglas* test, 'the governing standards is simply whether the evidence, taken as a whole, is sufficient to support a reasonable inference that prohibited [retaliation] occurred.'" (quoting James v. New York Racing Ass'n, 233 F.3d 149, 156 (2d Cir. 2000). When reviewing the totality of the circumstances, issues of fact exist as to whether Mr. Fried's age was a motivating factor in the decision to terminate and/or whether Defendants' articulated reason for terminating Mr. Fried was false.

A fair conclusion can be drawn "from the perspective of the entire record" that Defendants terminated Mr. Fried in retaliation for his complaints. Id. (quoting Byrnie v. Town of Cromwell, 243 F.3d 93, 105 (2d Cir. 2001). In this case, in addition to the fact that after 24 years of loyal service, Mr. Fried was terminated less than one month after he first complained of age discrimination, Girardi testified at deposition that in response to Mr. Fried's November 15 written complaint of age discrimination, the Board sent him a letter the next day terminating his employment. (Ex. 5, pp. 90-91; Ex. 26).

This retaliatory act was documented by Girardi who wrote, in his contemporaneous notes, the following: "Burt – sent pre-emptive letter; ignore and send good faith letter offer to Burt Fried." (Ex. 25).   The "good faith letter offer" referenced by Girardi was the letter that terminated Mr. Fried's employment. (Ex. 26).  A reasonable jury relying on Girardi's notes alone could easily infer that Mr. Fried's complaint was a motivating factor in the decision to terminate.

Terry v. Ashcroft, 336 F.3d 128 (2d Cir. 2003) is instructive on this point.  In that case, the Second Circuit reversed the lower court's grant of summary judgment on the plaintiff's retaliation claim based on his non-promotion.  In Terry, prior to his application to fill Vacancy 93-01, the plaintiff filed a complaint with the EEO regarding his unsuccessful application to fill Vacancy 92-59. Id. at 141.  Candidates for Vacancy 93-01 were listed on a memorandum that contained a note beside the plaintiff's name that read "Pending Complaint," and a note beside another applicant's name that read "EEO Activity." The Second Circuit found that:

> [t]he presence of such notations is evidence from which a reasonable trier-of-fact could infer that [the plaintiff's] "Pending Complaint" was a motivating factor in the promotion decision, particularly when coupled with evidence that other INS employees who reported problems experienced retaliation. Id. at 142.

The Court went on to hold that:

> the wholly unexplained presence of the notations "EEO action" and "pending complaint" on the list of candidates is sufficient – especially given the evidence of a pattern of retaliatory action in the agency – to create a genuine issue of material fact regarding the pretextual nature of defendants' rationale. Id.

Accordingly, viewing the facts in a light most favorable to Mr. Fried, material issues of fact exist as to the veracity of Defendants' reason for terminating Mr. Fried, and whether Mr. Fried's complaints of discrimination, including the November 15 letter complaining of age

discrimination, were a motivating factor in the decision to terminate and whether Defendants would have terminated Mr. Fried for legitimate reasons absent his complaints.

**III.    VIEWING THE RECORD EVIDENCE AS A WHOLE, SUMMARY JUDGMENT SHOULD BE DENIED WITH RESPECT TO MR. FRIED'S AGE DISCRIMINATION CLAIM BECAUSE ISSUES OF FACT EXIST AS TO WHETHER HE WAS TERMINATED BECAUSE OF HIS AGE**

Defendants discriminated against Mr. Fried in violation of Conn. Gen.Stat. §46-a-60 by stripping him of his job duties and by terminating his employment because of his age.

**A.    The Supreme Court's Holding In Gross Regarding A Plaintiff's Ultimate Burden In An ADEA Case Is Not Applicable To A CFEPA Case**

Prior to Gross v. FBL Financial Services, Inc., 557 U.S. 167, 129 S.Ct. 2343, 174 L.Ed.2d 119, 128 (2009), Connecticut courts applied the "motivating factor" standard to employment discrimination claims under the CFEPA, and continue to apply that standard post-Gross. See Jacobs v. General Electric Co., 275 Conn. 395, 401, 880 A.2d 151 (2005); Levy v. Commission on Human Rights & Opportunities, 236 Conn. 96, 105, 671 A.2d 349 (1996); Blandon v. Teamsters Local Union No. 443, 3:10 CV 463 (VLB), 2011 WL 4915197, at *12 (D. Conn. Oct. 17, 2011).  As such, this Court should apply the "motivating factor" standard to Mr. Fried's CFEPA age discrimination claim as Your Honor has done in the past. See Weber v. FujiFilm Medical Systems U.S.A., Inc., 3:10 CV 401 (JBA), 2012 WL 681681, at *16, n.7 (D. Conn. Feb. 28, 2012).

In Gross, the Supreme Court noted that "the ordinary meaning of the ADEA's requirement that [the employee must show] that an employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act." 174 L.Ed.2d at 128. Therefore, the Court held that "a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the

challenged adverse action." Id. at 131.   Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 105 (2d Cir. 2010), explained that in Gross, the Supreme Court "clarified the standard for prevailing on an ADEA claim."   The Gorzynski court explained:

> Prior to *Gross*, claims under the ADEA were analyzed under the burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp v. Green*, pursuant to which the plaintiff had the burden of demonstrating that his or her age was a motivating factor in the adverse employment action. . . .   *Gross* changes the latter part of this formulation by eliminating the mixed-motive analysis that circuit courts had brought into the ADEA from Title VII cases.   *Gross* makes clear that "a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action" and not just a contributing or motivating factor.   *Gross* did not, however, reject the *McDonnell Douglas* burden-shifting framework for ADEA cases altogether.   Instead, it left that issue open, noting only that the Supreme Court "has not definitively decided whether the evidentiary framework of *McDonnell Douglas* . . . is appropriate in the ADEA context." . . .   Accordingly, we remain bound by, and indeed see no reason to jettison, the burden-shifting framework for ADEA cases that has been consistently employed in our Circuit.

Id. at 106. (Internal citations omitted).

The Gross standard is not applicable to age discrimination claims under the CFEPA.   As a starting point, a review of the text of Title VII and the ADEA reveals that both statutes prohibit discrimination in employment "because of" an individual's membership in a protected class. See 42 U.S.C. §2000e-2(a)(1) and 29 U.S.C. §623(a)(1).   In Gross, the Supreme Court's conclusion that ADEA claims are governed solely by a "but for" standard, and not by the "motivating factor" standard, was premised primarily on the fact that Congress "amended Title VII by explicitly authorizing discrimination claims in which an improper consideration was a 'motivating factor' for an adverse employment decision.  . . . Unlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor." Gross, 129 S.Ct. at 2349 (internal citations omitted).

Connecticut General Statute §46a-60 also prohibits discrimination in employment "because of" an individual's membership in a protected class such race, color, religious creed, age, sex, marital status and national origin.  The Connecticut legislature's decision to include protection against age discrimination in the same statute that includes protections against other forms of discrimination, without otherwise distinguishing such claims (as under federal law), indicates that it intended that all of these claims would be subject to the same standard. See Wagner v. Board of Trustees for Connecticut State Univ., HHDCV085023775S, 2012 WL 669544, at *11 (Conn. Sup. Ct. Jan. 30, 2012).  Moreover, although the Connecticut legislature amended §46a-60 several times over the years, no amendment addressed the standard of proof under that section. Id. Given the legislature's decision to include multiple types of unlawful employment discrimination within a single statutory provision without setting out distinctive standards for the different types, the logical conclusion is that it intended that the same standard of proof be applied to all the types of discrimination set forth in §46a-60. Id.

For the foregoing reasons, and consistent with Your Honor's decision in Weber, 2012 WL 681681, at *16, n.7 ("neither Connecticut courts nor the Second Circuit have yet addressed the impact of Gross on CFEPA claims. . . . The Court will therefore apply the mixed motive analysis to [the plaintiff's] CFEPA claims."), this Court should decline to apply Gross to claims brought under §46a-60. See  Blandon, 2011 WL 4915197, at *12 ("Until such time as the Connecticut courts adopt the Gross standard in connection with age discrimination claims, it will follow existing Connecticut court pronouncements on the appropriate standard to employ in applying Connecticut law."); Herbert v. National Amusements, Inc., 3:08 CV 1945 (VLB), 2011 WL 2457552, at *10 (D. Conn. June 16, 2011) ("The Court notes that no Connecticut state court nor any Federal courts applying Connecticut state law have yet addressed if and how Gross

impacts the CFEPA analysis at this stage in the proceedings.  However this Court would not assume slavish deference to a new standard adopted by another court.  Until such time as the Connecticut courts adopt the new standard, it will follow existing Connecticut pronouncements on the appropriate standard to employ in applying Connecticut law . . .").

**B.**   **Genuine Issues Of Material Fact Exist As To: (1) Whether Mr. Fried's Age Was A Motivating Factor In Defendants' Decision To Terminate; (2) Whether Defendants Would Have Terminated Mr. Fried Regardless Of His Age; And (3) Whether Defendants' Proffered Reason For Terminating Mr. Fried Was True**

CFEPA age discrimination claims are "governed by the McDonnell Douglas three-part burden-shifting framework." Collins, 684 F.Supp.2d at 249 (citing cases); see Craine v. Trinity Coll., 259 Conn. 625, 637, n.6 (2002) (CFEPA claims proceed under the same analysis as ADEA and Title VII claims).  Under this three-part analysis: (1) the plaintiff must first demonstrate a *prima facie* case of discrimination; (2) the defendant then has the burden of pointing to evidence that there was a legitimate, non-discriminatory reason for the adverse action; and (3) if the defendant meets its burden, the plaintiff must demonstrate either that a discriminatory motive, more likely than not, motivated the defendant's decision or that the reasons given by the defendant for the adverse action are not true. See Holtz v. Rockefeller & Co., Inc., 258 F.3d 62 (2d Cir. 2001); Jacobs, 275 Conn. at 395.  In Board of Educ. v. Commission on Human Rights & Opportunities, 266 Conn. 492, 511, 832 A.2d 660 (2003), the Connecticut Supreme Court adopted "the explicit holding in *Reeves* that evidence establishing the falsity of the legitimate, nondiscriminatory reasons advanced by the employer may be, in and of itself, enough to support the trier of fact's ultimate finding of intentional discrimination." See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

In order to establish a *prima facie* case of age discrimination under the CFEPA, a plaintiff "must show (1) that she was within the protected age group, (2) that she was qualified for the

position, (3) that she experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." Gorzynski, 596 F.3d at 106-07; Board of Educ. v. Commission on Human Rights & Opportunities, 266 Conn. at 505-06.  In the New York Action, the district court correctly noted that Defendants did not contest that Mr. Fried established a *prima facie* case of age discrimination. (Ex. 35, p.20).  Even without the benefit of Defendants' concession, the evidence demonstrates that Mr. Fried established a *prima facie* case.  It is undisputed that at all relevant times, Mr. Fried was 70 years old. (Ex. 10).  It is also undisputed that Mr. Fried, as a 24 year employee of LVI, including 20 as its President and CEO and/or Chairman, was qualified to hold the Chairman position at the time he was stripped of his job duties on October 19, 2010 and when given notice of his termination on November 16, 2010. (Ex. 4, pp. 63-65; Ex. 6, pp. 25-26, 28; Ex. 7, pp. 37, 77; Ex. 8, pp. 34-37; Ex. 12, pp. 63-64; Ex. 15, ¶¶ 1-8; Ex. 16; Ex. 17, p. 13; Ex. 26).

With respect to the fourth prong, it is also undisputed that:

- Mr. Fried worked at LVI for 24 years before State was hired. (Ex. 15, ¶2).  At all times, Mr. Fried's work performance was good. (Ex. 6, pp. 25-26; Ex. 7, pp. 37, 77; Ex. 8, pp. 34-37; Ex. 16; Ex. 17, p.13). In fact, a few months before State was hired, Mr. Fried was told by Simmons, he was "earning every penny" of his salary (Ex. 16), and Bagaria and Girardi said that Apollo was "fortunate to have Burt Fried as interim CEO." (Ex. 17, p. 13);

- On September 19, 2010, before State was hired, State emailed Hogan and wrote that "[i]n the best-case scenario Burt will decide to retire at some date certain from LVI upon a new CEO being named and offer to support the business under a consulting agreement in any way the new CEO sees fit.  Several members of the senior team have told me that Burt will never retire because he has no other interests and nothing else to do.  That is not a healthy situation for Burt or LVI." (Ex. 19);

- On October 19, 2010, when Mr. Fried asked State why he was reassigning Mr. Fried's job duties to other employees, State said, "Burt, you're 71 years of age, how much longer do you expect to work?" (Ex. 12, p. 194);

- After meeting with Mr. Fried on October 19, 2010, State wrote to Simmons that, "I was clear with [Mr. Fried] that it was my objective to have him truly retire and be just an on call resource." (Ex. 21);

- On November 5, 2010, State emailed his friend and told him that he was "[i]n a battle with [Mr. Fried] about his need to retire but Board gets it and is working to exit him with some respect." (Ex. 9; Ex. 11, p. 362);

- State, who is 23 years younger than Mr. Fried, made the decision to terminate him on November 16, 2010, less than a month after State's October 19, 2010 age-related comment to Mr. Fried. (Ex. 10; Ex. 27, No. 4; Ex. 28, No. 6; Ex. 29, No. 5; Ex. 30, No. 5); and

- Mr. Fried's job duties were reassigned to employees that ranged from 13 to 35 years younger than him. (Ex. 5, p. 105; Ex. 7, pp. 93-116; Ex. 10; Ex. 36).

Considering all the evidence in the light most favorable to Mr. Fried, an issue of fact exists as to whether Mr. Fried's termination occurred under circumstances giving rise to an inference of discrimination. See Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001) (the fact that the plaintiff was replaced by someone substantially younger gives rise to an inference of discrimination); Shenking v. Antonio, CV 075003432, 2009 WL 6499424, at *2 (Conn. Sup. Ct. Oct. 23, 2009) ("the circumstances surrounding [the plaintiff's] termination give rise to an inference of age discrimination in that comments were made regarding his age by his superiors and he was replaced by a significantly younger man.").

Additionally, the district could also held that Defendants articulated a legitimate non-discriminatory reason for terminating Mr. Fried, namely, "the need to ensure that the new CEO and President, defendant  Scott E. State, would have the freedom to manage the Company as he saw fit." (Ex. 35, p. 20).  Mr. Fried need only now demonstrate that issues of fact exist as to whether his age was a motivating factor in the decision to terminate him or whether issues of fact exist as to the veracity of Defendants' proffered explanation for his termination. See Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 203 (2d Cir. 1995) (the plaintiff's burden in this regard "may

often be carried by reliance on the evidence comprising the prima facie case, without more."). Issues of fact exist with respect to both of these points.

For example, even before Mr. Fried could have possibly interfered with State's ability to manage LVI, State was hell-bent on terminating him because of his age.  Prior to working at LVI, State emailed Hogan inquiring about how to remove Mr. Fried as Chairman of the Board, a position that would not infringe on State's day-to-day management of LVI. (Ex. 18).  In another email to Hogan before State started working at LVI, despite admitting that he knew Mr. Fried had no intention of retiring, State wrote that "in the best case scenario, Burt will decide to retire at some date certain from LVI upon a new CEO being named . . . ." (Ex. 19).  Moreover, before he started working at LVI, State received assurances from Mr. Fried that he would not interfere with State's management of LVI. (Ex. 4, p. 129; Ex. 6, pp. 39, 74; Ex. 7, pp. 74-76; Ex. 33, pp. 62-63; Ex. 37; Ex. 38).  In fact, other than conclusory contentions, Defendants do not allege even one specific instance of Mr. Fried actually interfering with State's management of LVI.[1]

Furthermore, while McNamara was President and CEO of LVI, Mr. Fried worked under him as Chairman without issue.  In fact, as Chairman, his work performance was good and there was no reason for State to believe that Mr. Fried could not have similarly worked as Chairman.

Most importantly, on October 19, 2010, when Mr. Fried met face-to-face with State, State told Mr. Fried that he was going to be reassigning Mr. Fried's job duties to other employees. When Mr. Fried asked State why he was reassigning his job duties, State unabashedly said, "Burt, you are 71 years of age, how much longer do you expect to work?" (Ex. 12, p. 194).  This admission by State is a rare instance of direct evidence of discrimination. See <u>Koestner v. Derby Cellular Products</u>, 518 F.Supp.2d 397, 402 (D. Conn. 2007) ("Verbal comments constitute

---

[1]     Defendants contend that "during the transition period, Fried demanded that State confer with him prior to making decisions, . . . ."  Contrary to Defendants' contention, Mr. Fried did not <u>demand</u> that State confer with him prior to making any decisions.

evidence of discriminatory motivation when a plaintiff demonstrates that a nexus exists between the allegedly discriminatory statements and a defendant's decision to discharge the plaintiff.") (quoting Schreiber v. Worldco, LLC, 324 F.Supp.2d 512, 518 (S.D.N.Y. 2004).

Defendants' attempt to explain away State's comment and put it in context fails. Defendants contend that State's comment was "nothing more than a request for clarification of how long Fried intended to retain his operational responsibilities at LVI."  This contention is incredible because State admittedly knew prior to making the discriminatory comment that Mr. Fried had no intention of retiring from LVI.  (Ex. 19; Ex. 34).  Furthermore, at no point in time did State and Mr. Fried ever discuss Mr. Fried's retirement plans. (Ex. 11, pp. 118-20).  Since there is a dispute regarding State's intentions behind and meaning of his ageist comment, the issue should be submitted to a jury for resolution. See O'Reilly v. Marina Dodge, Inc., No. 10-CV-2977, 2011 WL 1897489, at *2 (2d Cir. May 19, 2011) ("Where, as here, the asserted nondiscriminatory explanations relate to and purport to justify allegedly age-related comments, a jury may consider the pretextual nature of the explanations in determining whether the comments are ageist and whether the adverse action would not have occurred but for the plaintiff's age.").

Defendants cite Weichman v. Chubb & Son, 552 F.Supp.2d 271 (D. Conn. 2008) and Aiello v. Stamford Hosp., 3:09 CV 1161 (VLB), 2011 WL 3439459 (D. Conn Aug. 8, 2011), in support of their position that "remarks relating to retirement or transition planning alone, even when made by a decision maker, are insufficient to defeat a motion for summary judgment in a CFEPA case."  Weichman is inapposite because the comment that "older people" "slow down" and "should retire" was not probative of discrimination because the plaintiff could not recall when the comment was made in relation to her termination and there was no evidence that this comment was even directed towards the plaintiff.  Aiello is also infirm because the court held

that a comment inquiring about when the plaintiff was going to retire was unsubstantiated and conclusory. 2011 WL 3439459, at *19.

Defendants' reliance on Raskin v. The Wyatt Co., 125 F.3d 55 (2d Cir. 1997), is also misplaced.  The comment made to Mr. Raskin, while he was seeking a new position, was a simple question as to whether he had an "interest in a career change notwithstanding the possibility that [he] would have the option of taking early retirement." Id. at 64.  Following this question, the conversation turned to issues regarding his performance and poor relationship with other employees. Id. at 63.  The court granted summary judgment because it not only found inconsistencies with the plaintiff's evidence but there was a break in time from when the comment was made and the adverse action.

Unable to credibly explain away State's comment as innocuous, Defendants' attempt to characterize State's discriminatory comment as a "stray remark" also fails.  In connection with Mr. Fried's appeal of the New York Action, the EEOC filed an *amicus* brief in support of Mr. Fried on this point and concurred with Mr. Fried's position that State's comment was anything but a "stray remark." (Ex. 45).[2]

In Henry v. Wyeth Pharmaceuticals, Inc., 616 F.3d 134 (2d Cir. 2010), the Second Circuit described the proper approach for applying the "stray remarks" analysis.  "In determining whether a remark is probative, they have considered four factors: (1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the

---

[2]     In its brief, the EEOC argued that "State's remark to Fried simply cannot be fairly characterized as 'stray.' The remark was made directly to Fried by State, the president/CEO of LVI and the decisionmaker in his termination less than a month later, and it explicitly referenced his age.  Moreover, it came in the context of a months-long 'battle' – to use State's description – to force Fried out of the workplace at LVI and into 'retirement.'" (Internal citations omitted). (Ex 45, p. 25).

remark was made (i.e., whether it was related to the decision-making process)." Id. at 149. Examining these four factors, it is clear that State's remark was probative of age discrimination.

State made the comment (not to mention that he used the word "retire" on at least 3 separate occasions in reference to Mr. Fried) less than one month before he admittedly decided to terminate Mr. Fried. See Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 162-63 (2d Cir. 1998) (rejecting the label "stray" where decision-makers uttered age-related remarks near the time of plaintiff's discharge). A reasonable juror could view State's comment as discriminatory since it directly tied Mr. Fried's age to his desire to work, and was made in response to Mr. Fried's inquiry about why his duties were being reassigned. See Gipson v. Wells Fargo N.A., 460 F.Supp.2d 15, 27 (D.D.C. 2006) ("Since there is a genuine issue as to any meaning in [the Area Manager's] comment, and since the meaning in that comment is material to the outcome of the case, the question must be presented to the jury for final resolution."); see also See Tomassi v. Insignia Fin. Grp., Inc., 478 F.3d 111, 113 (2d Cir. 2007) (reversing a grant of summary judgment where a sixty-three year old employee testified that the employer had said when discharging her that "I figure[d] . . . you probably didn't want to work long hours any more and you would be happier doing something part-time"). Finally, the context in which the remark was made shows that it was clearly related to the decision-making process. That context includes, for example, that despite being aware that Mr. Fried had no intention of retiring:

- On September 19, 2010, before State was even hired, State emailed Hogan and wrote that "[i]n the best-case scenario Burt will decide to retire at some date certain from LVI upon a new CEO being named and offer to support the business under a consulting agreement in any way the new CEO sees fit. Several members of the senior team have told me that Burt will never retire because he has no other interests and nothing else to do. That is not a healthy situation for Burt or LVI." (Ex. 19);

- On October 19, 2010, directly after the meeting with Mr. Fried where State stripped Mr. Fried of his job duties because of his age, State wrote to Simmons that during the

meeting with Mr. Fried, he was clear that it was his "objective to have [Mr. Fried] truly retire." (Ex. 21);

● On November 5, 2010, State emailed his friend and told him that he was "[i]n a battle with [Mr. Fried] about his need to retire but Board gets it and is working to exit him with some respect." (Ex. 9; Ex. 11, p. 362).

State insisted on pushing the concept of Mr. Fried's retirement upon Mr. Fried and others, although State was fully aware that Mr. Fried had no intention of retiring.  Whether State's choice of words evinces a desire to terminate Mr. Fried because of his age, especially when coupled with all of the evidence of discrimination, is a classic question for a jury to resolve.  See Tomassi, 478 F.3d at 112, 116 (holding that age-related comments, including that the plaintiff might enjoy retiring and taking time off to rest, constituted evidence of age discrimination); Giarratano v. Edison Hotel, No. 08-CV-1849 (SAS), 2009 WL 464441, at *6 (S.D.N.Y. Feb. 24, 2009) (finding that the question of whether the use of the word "retirement" referred to the plaintiff's age was a question to be resolved by the jury); see also O'Reilly, 2011 WL 1897489, at *2 ("Where, as here, the asserted nondiscriminatory explanations relate to and purport to justify allegedly age-related comments, a jury may consider the pretextual nature of the explanations in determining whether the comments are ageist and whether the adverse action would not have occurred but for the plaintiff's age.").

This case closely mirrors Sciola v. Quattro Piu, Inc., 361 F.Supp.2d 61 (E.D.N.Y. 2005), where the court denied summary judgment on the plaintiff's age discrimination claim.  In Sciola, although the plaintiff's general manager was aware he had no intention of retiring, the general manager made the following age-based comments to the plaintiff: (1) "why are you still working?" (2) "I would retire if I was you;" and (3) "Why don't you retire, you are sixty-three years old?" Id. at 63-64.  The court held that given the timing of the comments – within two years of the adverse action – a reasonable person could view the circumstances "as

discriminatory as the speaker's opinion is that once an arbitrary age is reached, an individual should retire." Id. at 68; see also Hofmann v. Dist. Council 37, No. 99-CV-8636 (KMW), 2004 WL 1936242, at *10 (S.D.N.Y. Aug. 31, 2004) *report and recommendation adopted as modified*, No. 99-CV-8636 (GEL), 2006 WL 3476747 (S.D.N.Y. Nov. 30, 2006) (denying summary judgment where decision-makers told the plaintiffs that they should retire and that it would be a good idea to consider retirement); Morris v. New York City Dept. of Sanitation, No. 99-CV-4376 (WK), 2003 WL 1739009 (S.D.N.Y. Apr. 2, 2003) (denying summary judgment where the plaintiff was repeatedly told that he should retire and that he was not in defendant's future plans).

In addition to the aforementioned age-related comments, as set forth above, further evidence of age discrimination exists, such as:

- Mr. Fried worked at LVI for 24 years before State was hired (Ex. 15, ¶2).  During his time as Chairman under McNamara, his work performance was exceptional. (Ex. 6, pp. 25-26; Ex. 7, p. 37). A few months before State was hired, Mr. Fried was told by Simmons, he was "earning every penny" of his salary (Ex. 16), and Bagaria and Girardi said that Apollo was "fortunate to have Burt Fried as interim CEO."  (Ex. 17, p. 13);

- On September 14, 2010, before he was even hired, State was trying to determine how to remove Mr. Fried as Chairman of the Board; a role which did not impact State's ability to manage LVI.  (Ex. 18);

- State, who is 23 years younger than Mr. Fried, made the decision to terminate him on November 16, 2010, less than a month after State's October 19, 2010 age-related comment to Mr. Fried. (Ex. 10; Ex. 27, No. 4; Ex. 28, No. 6; Ex. 29, No. 5; Ex. 30, No. 5); and

- Mr. Fried's job duties were reassigned to employees who ranged from 13 to 35 years younger than him. (Ex. 5, p. 105; Ex. 7, pp. 93-116; Ex. 10; Ex. 36).

Defendants also claim that they are entitled to the same actor inference because the Board made the decision to appoint Mr. Fried interim President and CEO at the age of 70 and made the decision to terminate six months later.  However, State was not on the Board at the time it made the decision to appoint Mr. Fried interim President and CEO, and State, Girardi, Simmons and

Bagaria swore under oath that State (not the Board) made the decision to terminate Mr. Fried. (Ex. 27, No. 4; Ex. 28, No. 6).  Thus, Defendants cannot benefit of the same actor inference.

When considered within the totality of all the evidence, State's comment clearly bears a more ominous significance. See Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 468 (2d Cir. 2001) ("While it is true that the stray remarks of a decision-maker, without more, cannot prove a claim of employment discrimination, we have held that when other indicia of discrimination are properly presented . . . the jury has a right to conclude that they bear a more ominous significance").   Therefore, taken as a whole, issues of fact exist as to whether Mr. Fried's age was a motivating factor in the decision to terminate and/or whether Defendants' reason for terminating Mr. Fried was false. See Cronin, 46 F.3d at 203 (to defeat summary judgment within the McDonnell Douglas framework, "the plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors."); O'Reilly, 2011 WL 1897489, at *4 (finding that where the plaintiff was subjected to ageist jokes, replaced by a younger employee, and demonstrated that an issue of fact existed as to whether the defendant's justification for his termination was pretextual, a reasonable jury could conclude that age was the but for cause of the plaintiff's termination); Owens v. New York City Hous. Auth., 934 F.2d 405, 410 (2d Cir. 1991) (holding that evidence of remarks by employer reflecting discriminatory motive was sufficient to "raise[] a triable issue as to whether the articulated reasons for [the employer's conduct] were pretextual.").

For the same reasons, issues of fact exist as to whether Defendants would have terminated Mr. Fried even if they did not take his age into account. See Holtz, 258 F.3d at 79 ("the validity of this defense is ordinarily for the jury to decide at the trial rather than for the

court to determine on a motion for summary judgment."). However, if this Court finds that Defendants would have terminated Mr. Fried regardless of his age, Defendants can only limit Mr. Fried's remedy to declaratory relief, injunctive relief, and/or attorneys' fees. See Tyler v. Bethlehem Steel Corp., 958 F.2d 1176, 1181 (2d Cir. 1992); Levy, 236 Conn. at 106-07, n.19.

## IV. MR. FRIED WAS NOT REQUIRED TO NAME STATE IN HIS CHRO COMPLAINT UNDER THE IDENTITY OF INTEREST EXCEPTION

Defendants contend that this Court lacks subject matter jurisdiction over State because Mr. Fried did not individually name State in his CHRO Complaint and did not obtain a release of jurisdiction to file suit against State. The analysis in Malasky v. Metal Products Corp., 44 Conn.App. 446, 689 A.2d 1145, *cert. denied*, 241 Conn. 906, 605 A.2d 539 (1997), governs.

The plaintiff in Malasky filed a CHRO complaint alleging sexual harassment against two corporations that were owned and operated by the same individual, and the individual was not a named party in the CHRO complaint. The plaintiff secured a release of jurisdiction from the CHRO and then filed a complaint against both corporations, as well as the individual in his capacity as owner and president of the two corporations. The individual defendant then moved to dismiss the case for failure to exhaust administrative remedies and the trial court granted the motion. The Appellate Court reversed, finding that the plaintiff had in fact exhausted because she had satisfied the exception to the exhaustion requirement, and thus, the trial court had subject matter jurisdiction over the plaintiff's complaint.

The Malasky court based its conclusion on the reasoning of Maturo v. National Graphics, 722 F.Supp.2d 916 (D. Conn 1989), and cited the applicable standard from that case:

> Generally, an action under Title VII can proceed only against those individuals named as respondents in the complaint filed with the EEOC. The purpose of this exhaustion requirement is to provide notice to those alleged to have committed the violations and to provide an opportunity for the parties to comply voluntarily with the requirements of Title VII … A limited exception to the exhaustion

requirement permits an action against a party not named as a respondent in the EEOC complaint if the underlying dual purposes of the exhaustion requirement are otherwise satisfied … Specifically, the factors to be considered are: 1) whether the role of the unnamed party through reasonable effort by the complainant could be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party …"

Malasky, 44 Conn.App. at 453-54. (Internal citations and quotation marks omitted).  "Although

the court in *Maturo* was concerned primarily with EEOC filing requirements, the same rationale

applies to the requirements of the CHRO." Id. at 454.   The exception to the exhaustion

requirement, as described above, is commonly known as the "identity of interest" exception. See

Johnson v. Palma, 931 F.2d 203, 209 (2d Cir. 1991).

In Cherniak v. Connecticut Post Newspaper, CV000412889S, 2008 WL 589494 (Conn.

Sup. Ct. Feb. 13, 2008), the court held that the plaintiff did exhaust his administrative remedies

where he did not individually name Michael Fay in his CHRO complaint, despite the fact that the

plaintiff was represented by counsel at the time he filed his CHRO complaint.  In Cherniak, each

of the four Malasky factors and the underlying purposes of the exhaustion requirement supported

the plaintiff.  The first element was met because Mr. Fay was named in the text of the CHRO

complaint.  In Malasky, the court found that the first element of the test was met where the

unnamed party was referred to by name in the text of the complaint. 44 Conn.App. at 445.  The

second element was met because Mr. Fay's interest, as a manager to whom the plaintiff reported,

was virtually identical to the interests of the respondent (the plaintiff's employer) in securing

voluntary conciliation and compliance.  The third element was met because Mr. Fay suffered no

ascertainable prejudice as a result of not being named in the CHRO complaint, he received actual

notice of the claim and any investigation by the CHRO would have included Mr. Fay.  The final element was met because Mr. Fay, as supervisor, exercised control over the plaintiff.

Similarly, in this case, because the underlying purpose of providing notice to State was satisfied in Mr. Fried's filing with the CHRO and Mr. Fried satisfied all four Malasky factors, the "identity of interest" exception applies.  For example, the first element was met because Mr. Fried named State in the text of his CHRO complaint. (Ex. 41).  The second element was met because State's interest, as the President and CEO of LVI to whom Mr. Fried reported, was identical to the interests of LVI and LVI Parent in securing voluntary conciliation and compliance.  The third element was met because State did not suffer any prejudice as a result of not being named in the CHRO Complaint since he received actual notice of the CHRO Complaint.  The fourth element was met because State, as President and CEO of LVI, exercised control over Mr. Fried.  The fact that Mr. Fried was represented by counsel at the time he filed his CHRO Complaint does not negate the applicability of the exception. See Marks v. Cogswell, CV085022000S, 2011 WL 522786, at *3 (Conn. Sup. Ct. Jan. 11, 2011) (applying the identity of interest exception where the plaintiff was represented by counsel when she filed her CHRO claim); Wood v. Pittsford Cent. Sch. Dist., 03 CV 6541T, 2005 WL 43773, at *4 (W.D.N.Y. Jan. 10, 2005) (Second Circuit has declined to limit the identity of interest exception to situations in which the plaintiff appeared *pro se* in administrative proceedings).

Defendants also contend that because there is no individual liability for age discrimination under the CFEPA, all of Mr. Fried's claims against him should be dismissed.  Mr. Fried does not dispute that Conn. Gen.Stat. §46a-60(a)(1) does not provide for individual liability for age discrimination, which is why Mr. Fried did not assert a claim against State individually for age discrimination.  However, Conn. Gen.Stat. §46a-60(a)(4) does provide for

individual liability for retaliation, which is why Mr. Fried asserted a claim against State individually for retaliation in his Second Claim for Relief in the Complaint. (Ex. 1).

Accordingly, because Mr. Fried did exhaust his administrative remedies as to State, Defendants' motion for summary judgment on this point should be denied.

## V.   MR. FRIED'S CFEPA CLAIMS ARE NOT BARRED BY THE DOCTRINE OF *RES JUDICATA* BECAUSE HE DID NOT HAVE AN ADEQUATE OPPORTUNITY TO FULLY AND FAIRLY LITIGATE THOSE CLAIMS IN THE NEW YORK ACTION

Mr. Fried, who lives and works in Westport, Connecticut, is simply asking this Connecticut Court to resolve his claims under Connecticut law on the merits.  Fearful of the merits, Defendants seek to deny Mr. Fried his day in court by advancing a specious procedural argument as a means to avoid having this Court address the substance of his CFEPA claims. Defendants' attempt to sidestep the merits is at odds with the policy of this State, which was described in Egri v. Foisie as follows:

> Connecticut law repeatedly has expressed a policy preference to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his or her day in court. . . . Our practice does not favor the termination of proceedings without a determination of the merits of the controversy where that can be brought about with due regard to necessary rules of procedure. . . . For that reason, [a] trial court should make every effort to adjudicate the substantive controversy before it, and, where practicable, should decide a procedural issue so as not to preclude hearing the merits of an appeal.

83 Conn.App. 243, 249-50, 848 A.2d 1266, *cert. denied*, 271 Conn. 931, 895 A.2d 930 (2004) (citations and quotation marks omitted).  The aforementioned preference represents "a fundamental policy consideration in this state." Id. at 249.  With this principle in mind, and in light of the remedial purpose of the CFEPA, Defendants' argument that Mr. Fried's claims are barred by the doctrine of *res judicata* should be rejected because the doctrine is inapplicable.

Connecticut "recognize[s] that a decision whether to apply the doctrine of res judicata to claims that have not actually been litigated should be made based upon a consideration of the doctrine's underlying policies, namely, the interests of the defendant and of the courts in bringing litigation to a close . . . and the competing interest of [a party] in the vindication of a just claim." Delahunty v. Mass. Mutual Life Ins. Co., 236 Conn. 582, 591, 674 A.2d 1290 (1996) (citation omitted).   "[T]he internal needs of the judicial system do not outweigh its essential function in providing litigants a legal forum to redress their grievances. Courts exist for the purpose of trying lawsuits. If the courts are too busy to decide cases fairly and on the merits, something is wrong. . . . The doctrines of preclusion, however, should be flexible and must give way when their mechanical application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies." State v. Ellis, 197 Conn. 436, 466, 497 A.2d 974 (1985) (citations and quotation marks omitted).

In order for *res judicata* to apply, Defendants must establish each and every one of the following elements: (1) the identity of the parties is the same as in the prior action; (2) the same claim or cause of action is at issue; (3) the judgment in the prior action was rendered on the merits by a court of competent jurisdiction; and (4) the parties had the opportunity to fully and fairly litigate the matter. See Tirozzi v. Shelby Ins. Co., 50 Conn.App. 680, 686, 719 A.2d 62, *cert. denied*, 247 Conn. 945, 723 A.2d 323 (1998).   For the purposes of this motion only, Mr. Fried concedes that Defendants have established the first, second and third elements.[3]   However, Defendants cannot establish the fourth element because Mr. Fried did not have an adequate opportunity to fully and fairly litigate his CFEPA claims in the New York Action.

---

[3]      Mr. Fried only concedes that the third element is satisfied with respect to his ADEA discrimination and retaliation claims.   He does not concede that the third element is satisfied with respect to his NYCHRL discrimination and retaliation claims because a judgment was not rendered on the merits.  (Ex. 35, p. 31).

On December 13, 2010, Mr. Fried filed the New York Action alleging claims under, among other statutes, the NYCHRL because Defendants' discriminatory and retaliatory actions towards Mr. Fried had an impact on New York City. (Def. 56(a)1, ¶32).  Mr. Fried chose not to initially pursue CFEPA claims because they would have been duplicative of his NYCHRL claims, and would have opened the door for Defendants to argue – which they eventually did in their summary judgment papers – that by pursuing CFEPA claims, Mr. Fried tacitly undercut the applicability of the NYCHRL to his claims.[4]  However, out of an abundance of caution, in order to preserve his rights under the CFEPA, Mr. Fried filed a CHRO Complaint with the CHRO on May 16, 2011, alleging discrimination and retaliation in violation of the CFEPA. (Ex. 41). Pursuant to Con. Gen.Stat. §46a-101, Mr. Fried could request a release of jurisdiction from the CHRO if his administrative complaint was pending for more than 180 days.

Approximately three weeks later, on June 10, 2011, at the same time Defendants moved for summary judgment in the New York Action, Defendants notified the district court in writing of Mr. Fried's filing with the CHRO. (Ex. 35, p. 2; Ex. 43).  Despite being aware of the CHRO Complaint, on September 2, 2011, the district court granted partial summary judgment in favor of Defendants on Mr. Fried's ADEA and NYCHRL claims without an opinion.[5] (Ex. 32).  One month later, on October 4, 2011, the district court issued an Opinion and Order which dismissed Mr. Fried's NYCHRL claims on jurisdictional grounds. (Ex. 35, p. 31).  Because his NYCHRL claims were not dismissed on the merits, only then did it become necessary for Mr. Fried to pursue his CFEPA claims in court once the CHRO released jurisdiction.

---

[4]     The legal standards for establishing liability under the NYCHRL and the CFEPA are almost identical. Moreover, if Mr. Fried did not prevail on the merits of his NYCHRL claims, he would have, admittedly, been collaterally estopped from prevailing on the merits of his CFEPA claims.

[5]     The only claim to survive summary judgment was that portion Mr. Fried's ADEA retaliation claim based upon the termination of his daughter. (Ex. 32).

On October 11, 2011, the district court scheduled a trial for the week of December 5, 2011 for the sole remaining claim in the New York Action.  Approximately two weeks after the district court issued its opinion on Defendants' summary judgment motion, and one week after a trial was scheduled, the CHRO released jurisdiction on October 17, 2011 – 154 days after Mr. Fried filed the CHRO Complaint. (Ex. 42).  On October 19, 2011, the parties resolved the remaining claim in the New York Action and stipulated to its dismissal with prejudice and without costs to the parties. (Ex. 40).  On November 30, 2011, this action was filed. (Ex. 1).

Defendants contend that even though Mr. Fried's CFEPA claims remained unexhausted until two days before the New York Action was dismissed, he still had multiple opportunities to assert those claims.  Defendants cite Woods v. Dunlop Tire Corp., 972 F.2d 36 (2d Cir. 1992), for the proposition that Mr. Fried could have asserted his CFEPA claims by: (1) staying the New York Action and moving to amend his complaint to add CFEPA claims once the CHRO released jurisdiction; or (2) moving to amend his complaint to add CFEPA claims immediately after the CHRO released jurisdiction.  Defendants' reliance on Woods and its progeny is misplaced.

In Woods, on July 31, 1985, the plaintiff filed a charge of race and sex discrimination against the defendant with the EEOC. Id. at 37.  Four months later, on December 4, 1985, while her EEOC charge was still pending, the plaintiff filed an action against the defendant for violation of the Labor Management Relations Act. Id.  Two and one-half years later, in June 1988, the plaintiff's action was dismissed. Id.  Two years after that, in November 1990, the EEOC issued a right to sue letter, and in February 1991, the plaintiff filed a second action against the defendant alleging violations of Title VII. Id. at 37-38.  Thereafter, the defendant moved for summary judgment on *res judicata* grounds arguing that the plaintiff "'could have raised the race

and sex discrimination claims she is asserting in [the second action] during the pendency of [the first action].'" Id.  The lower court granted summary judgment and the Second Circuit affirmed.

Significantly, seven years after Woods was decided, the Second Circuit revisited its ruling and stated in Devlin v. Transportation Communications Int'l Union that "[a] key phrase in our resolution of Woods was the phrase '[u]nder the circumstances revealed.'" 175 F.3d 121, 192 (2d Cir. 1999) (citing Woods, 972 F.2d at 41).  The "circumstances revealed" in Woods can be distinguished from this case with great ease because unlike Mr. Fried, the plaintiff in Woods had more than an adequate opportunity to litigate her Title VII claims in her first action.  For example, she could have requested a right to sue letter from the EEOC after her charge was pending for 180 days and still would have had an abundance of time before her case was dismissed to move to amend her complaint to add her Title VII claims.  As described above, by the time she filed her first action, her EEOC charge was pending for approximately 125 days. All the plaintiff had to do was wait approximately 55 days at most before she could request a right to sue letter.  Instead, she chose to wait five years, and ultimately filed her second action two and one-half years after her first action was dismissed.

Unlike the plaintiff in Woods, Mr. Fried did not sit on his rights and wait years for the CHRO to release jurisdiction over his CFEPA claims.  The CHRO released jurisdiction after approximately 154 days; well within the minimum 180-day period Mr. Fried would have had to wait before he could request a release.  See Conn.Gen. Stat. §46a-101.  Unfortunately, the release was issued six weeks after partial summary judgment was granted to Defendants without opinion and two days before the New York Action was dismissed.  Furthermore, unlike the plaintiff in Woods, Mr. Fried did not wait years after the New York Action was dismissed to file this action;

he filed merely six weeks after receiving the release.  In the end, Mr. Fried did not have a similar opportunity to litigate his CFEPA claims as the plaintiff in Woods had in her first action.

Defendants also cite Harris v. Beth Israel Medical Center, 367 Fed.Appx. 184 (2d Cir. 2010), Barnes v. Royal Health Care, 357 Fed.Appx. 375 (2d Cir. 2009), Wilkes v. Wyoming Dep't. of Employment Div. of Lab. Standards, 314 F.3d 501 (10th Cir. 2003), and Mulero v. Hartford Board of Educ., 3:05 CV 630 (PCD), 2006 WL 752852 (D. Conn. March 20, 2006), which all rely on Woods, for the same proposition as Woods.[6]

Wilkes and Mulero are inapposite for the same reason as Woods.  Similar to Woods and unlike the case at bar, both plaintiffs in Wilkes and Mulero had an adequate opportunity to litigate their Title VII claims in their initial actions but chose otherwise.  For example, both plaintiffs could have requested a right to sue letter from the EEOC after the expiration of 180 days and still would have had plenty of time before their cases were concluded to move to amend their complaints to add their Title VII claims.  Moreover, similar to Woods, both plaintiffs waited several months after their initial lawsuits were concluded to file their second actions.

The Second Circuit's unpublished decisions in Harris and Barnes are also easily distinguishable.  Although it is not clear whether both plaintiffs in those cases could have requested a right to sue letter from the EEOC after the expiration of 180 days and still would have had ample time before their cases concluded to move to amend their complaints, in light of the Second Circuit's observation in Devlin about the limited reach of Woods, the circumstances in Harris and Barnes, were likely similar to that in Woods, and therefore, dissimilar to this case.

In this case, Mr. Fried did not have the same opportunity as the plaintiffs in the cases cited by Defendants to litigate his CFEPA claims in the New York Action.  It is undisputed that

---

[6]       Defendants also cite Jorgensen v. Sony BMG Music Entertainment, 310 Fed.Appx. 419 (2d Cir. 2008), an unpublished opinion, that neither relies on Woods nor stands for the same proposition as Woods.  Nevertheless, Jorgensen is infirm because it does not involve unexhausted claims.

Mr. Fried could not have asserted his CFEPA claims in the New York Action prior to October 17, 2011, the date the CHRO released jurisdiction over his CFEPA claims. Tyszka v. Edward McMahon Agency, 188 F.Supp.2d 186, 195 (D. Conn. 2001) ("CFEPA require[s] exhaustion of administrative remedies against the parties named in the complaint. To fail to do so is fatal under [the] statute[ ].").[7]   However, when he received a release of jurisdiction within the 180-day period, given the procedural posture of the New York Action at the time, it was not practical for Mr. Fried to move for leave to amend his Amended Complaint to add his CFEPA claims.

Ludwig v. Quebecor Dailies, Inc., 483 F.Supp. 594 (E.D. Pa. 1980), a strikingly similar case in which the court held that the plaintiff's second action was not barred by *res judicata*, validates Mr. Fried's approach.   In Ludwig, in February 1979, the plaintiff filed an action alleging sex discrimination in violation of 42 U.S.C. §§1981, 1983, 1985(3), and 1986. Id. at 594-95. Approximately four months later in June 1979, the plaintiff filed a Charge of Discrimination with the EEOC against the defendant alleging Title VII sex discrimination. Id. The plaintiff received a right to sue letter on July 26, 1979. Id.  Five days later, on July 31, 1979, the plaintiff's action was dismissed in its entirety. Id.  At no time during the pendency of her first action did the plaintiff apprise the court of her activities before the EEOC and no stay was requested pending EEOC action. Id.

The day after the plaintiff's first action was dismissed, she filed a second action alleging sex discrimination in violation of Title VII that was based on facts nearly identical to those alleged in her first action. Id.  The defendant moved to dismiss the second action on the theory that it was barred by the doctrine of *res judicata*. Id.  In holding that the plaintiff's second action was not barred by *res judicata*, the court stated:

---

[7]   In fact, prior to this date, no court in the United States had subject matter jurisdiction over Mr. Fried's CFEPA claims. See Bogdahn v. Hamilton Standard Space Sys. Intern., Inc., CV 97569864S, 1998 WL 756722, *5-6 (Conn. Super. Ct. Oct. 7, 1998).

> At the time she commenced her original action, plaintiff's Title VII claim was not "a ground of recovery . . . which might have been presented." It became so only after plaintiff received her right to sue letter, which was issued only five days before her first suit was dismissed. It makes no difference if plaintiff intended to pursue her Title VII remedies at the time she initiated her first suit or if she reached that decision only after apprehending that she was unlikely to prevail on the other grounds she advanced. This is not a case in which a plaintiff with a right to sue letter in hand chose not to advance her Title VII claim in federal court while advancing other theories; nor is this a case in which plaintiff is collaterally estopped from asserting that her discharge was the result of sex discrimination because that factual issue was previously determined against her. Rather, we are faced with a plaintiff who, until very shortly before her first suit was dismissed, could not have raised her Title VII claim before this court.

Id. at 596. Moreover, the court found that:

> since only five days at most elapsed between the date of issuance [of the right to sue letter] and the date of dismissal of the first action, we do not believe that plaintiff can be faulted for not having moved within that period to amend her complaint in the first action. Nor do we find it fatal to plaintiff's instant action, in view of our discussion concerning plaintiff's inability to plead Title VII when she filed her first action, that she commenced a new action that she designated as related to her former action rather than seeking relief under Federal Rule of Civil Procedure 60. Id. at 594, n.2.

Similarly, in Mitchell v. Board of Trustees of Pickens County School Dist., 380 F.Supp. 197 (D.S.C. 1973), the court also denied the defendants' motion to dismiss and held that the plaintiff's second action was not barred by *res judicata*. In Mitchell, the plaintiff filed an action alleging that the defendants' pregnancy policy was in violation of the Fourteenth Amendment and 42 U.S.C. §§ 1981 and 1983. Id. at 199. Thereafter, in August 1972, the plaintiff filed a Charge of Discrimination with the EEOC against the defendants seeking to have the defendants' maternity leave policies declared violative of Title VII. Id. at 198. The plaintiff received a right to sue letter on March 12, 1973. Id. Approximately three weeks later on April 3, 1973, summary

judgment was granted in favor of the defendants. Id. at 199.  After the adverse ruling, the plaintiff filed a second action alleging a violation of Title VII based upon the identical facts. Id.

The defendants moved to dismiss the second action on the theory that it was barred by the doctrine of *res judicata*. Id.  In holding that the plaintiff's Title VII claim in her second action was not barred by *res judicata*, the court stated:

> In order to avoid the result now sought by the defendants, the plaintiff would have had to amend her complaint in the former action almost immediately, and the Court feels that it would be inequitable to have required the plaintiff to amend to include her Title VII cause of action at a time when a ruling on the constitutional issue could be expected at any time. Id. at 199-200.

As demonstrated by Ludwig and Mitchell, because only two days elapsed between the time Mr. Fried received a release of jurisdiction and the time the New York Action was dismissed, it would have been inequitable to require him to move for leave to amend his complaint to add his CFEPA claims, especially since Defendants' motion for summary judgment was already decided.  And even if Mr. Fried moved for leave to amend within that two-day period, such a motion would have undoubtedly disrupted the court's calendar and would have likely resulted in an adjournment of the scheduled trial date.  Because Mr. Fried could not amend his complaint as of right at the time, there was a distinct likelihood that his motion would have been denied since it would have substantially delayed the resolution of the New York Action.[8]

Additionally, like the plaintiff in Ludwig, the fact that Mr. Fried did not seek to stay the New York Action pending a release of jurisdiction does not preclude him from maintaining this action.  Notably, Defendants could have also moved for a stay but chose not to delay the New

---

[8]      Judge Rakoff, who presided over the New York Action, has previously considered the impact that a motion for leave to amend would have on the court's calendar in connection with denying such a motion. See Shah v. Consolidated Edison Corp. of N.Y., 04 Civ. 2880, 2005 WL 612713, at *1 (S.D.N.Y. Mar. 15, 2005).

York Action as well.  A stay would have only delayed resolution of the New York Action, and would have been contrary to Fed. R. Civ. P. 1.[9]

Defendants' final contention that allowing Mr. Fried to pursue his CFEPA claims in this action "depletes precious party and judicial resources, fosters inconsistent decisions, and diminishes reliance on Judge Rakoff's sound decisions in Fried I" is without merit.  Litigating this case will not have a "significant impact" on Defendants' resources, especially since the parties have agreed to forgo discovery.[10]  Also, a decision in this case on the merits, no matter which party it favors, would not be inconsistent with the district court's decision in the New York Action because there was no prior decision on Mr. Fried's CFEPA claims which, as set forth above, has lower standards and burdens than his ADEA claims.  Finally, Mr. Fried is not asking this Court to expend any more resources than any other court would have to expend.  The parties are essentially asking this Court to rule on Defendants' summary judgment motion and to preside over the trial in this matter; the same things the parties would have asked of the district court in the New York Action.

In any event, Defendants' argument that Mr. Fried's CFEPA claims are barred by the doctrine of *res judicata* is premature.  Mr. Fried is currently appealing the district court's grant of summary judgment to the Second Circuit.  If the Second Circuit reverses and/or remands even one of Mr. Fried's ADEA claims, he will likely then have an opportunity to move for leave to amend his Amended Complaint to add his CFEPA claims.  At that point, despite the outcome of that motion, Defendants' instant argument would become moot.

---

[9]        Fed. R. Civ. P. 1 reads, in pertinent part, as follows: "[The Federal Rules of Civil Procedure] should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding."

[10]       According to its website, LVI is the largest remediation and facility services firm in the United States, with over 30 offices and more than $350 million in annual revenues. See http://www.lviservices.com/about-us/fact-sheet.

Accordingly, this Court should deny Defendants' motion for summary judgment on *res judicata* grounds because Mr. Fried did not have an adequate opportunity to fully and fairly litigate his CFEPA claims in the New York Action.

**VI.   MR. FRIED IS NOT COLLATERALLY ESTOPPED BECAUSE THE DISTRICT COURT IN THE NEW YORK ACTION DID NOT DETERMINE WHETHER MR. FRIED'S AGE AND/OR COMPLAINTS OF DISCRIMINATION WAS A MOTIVATING FACTOR IN THE DECISION TO TERMINATE**

Defendants erroneously contend that Mr. Fried is collaterally estopped from asserting his CFEPA claims because they were raised, litigated and adjudicated in the New York Action. Once again, Defendants' attempt to tiptoe around the merits of Mr. Fried's claims falls short because it is undisputed that the district court in the New York Action did not determine under the ADEA if an issue of fact existed as to whether Mr. Fried's age and/or his complaints of age discrimination was a motivating factor in Defendants' decision to terminate his employment.

"Collateral estoppel, or issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties upon a different claim.  For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action.  It also must have been actually decided and the decision must have been necessary to the judgment." Lyon v. Jones, 291 Conn. 384, 406, 968 A.2d 416 (2009) (Internal citations and quotation marks omitted.).  "The application of the collateral estoppel doctrine may not be proper when the burden of proof or legal standards differ between the first and subsequent actions." Birnie v. Electric Boat Corp., 288 Conn. 392, 406, 953 A.2d 28 (2008).

**A.      Mr. Fried Is Not Collaterally Estopped From Pursuing His CFEPA Age Discrimination Claim Because The District Court Did Not Determine Whether His Age Was A Motivating Factor In The Decision To Terminate**

As set forth above, the ADEA and the CFEPA have different legal standards governing claims of age discrimination.  Under the CFEPA, if the plaintiff establishes a *prima facie* case of age discrimination and the defendant then articulates a legitimate, non-discriminatory reason for the adverse employment action, the plaintiff can survive summary judgment if he/she can demonstrate that an issue of fact exists as to whether his/her age was a motivating factor in the employment decision.  It is undisputed that the district court in the New York Action held that Mr. Fried established a *prima facie* case of age discrimination under the ADEA, and that Defendants articulated a legitimate, non-discriminatory reason for the decision to terminate. (Ex. 35, pp. 18, 20).  However, the district court <u>did</u> <u>not</u> determine whether Mr. Fried's age was a motivating factor in the decision to terminate. (Ex. 35, pp. 21-22).  In fact, the district court held:

> As explained above, because the Supreme Court recently eliminated the mixed-motive analysis for ADEA claims, <u>see Gross v. FBL Fin. Servs.</u>, 129 S. Ct. 2343, 2351 (2009), Fried must prove not merely that age was one of the factors motivating defendants' decision, but rather that age was the "but-for" cause of that decision.  Fried must therefore "raise [] sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence that [his] age was a 'but for' cause of [defendants'] decision to fire [him]."

> The Court concludes that Fried has failed to sustain this burden as a matter of law. (Citations omitted) (Ex. 35, p.22).

Thus, the issue of whether Mr. Fried's age was a motivating factor in the decision to terminate was not litigated or adjudicated in the New York Action because it was not necessary to determine Mr. Fried's ADEA discrimination claim.

Despite acknowledging this gaping hole in their argument, Defendants nonetheless argue that "[i]f Fried cannot show pretext under the *McDonnell-Douglas* burden-shifting analysis, he

certainly cannot, as a matter of law, establish a *prima facie* case under a mixed-motive theory."
In support, Defendants cite Berkowitz v. County of Orange, 120 F.Supp.2d 286 (S.D.N.Y. 2000),
Crews v. Trustees of Columbia Univ. in City of New York, 452 F.Supp.2d 504 (S.D.N.Y. 2006)
and Fitzgerald v. Alleghany Corp., 904 F. Supp. 223 (S.D.N.Y. 1995).[11]   None of these cases
even remotely support Defendants' argument.  These cases stand for the proposition that because
the burden of establishing a *prima facie* case under a mixed-motive approach is higher than
establishing a *prima facie* case under the McDonnell Douglas framework, a mixed-motive
approach is of no avail if a plaintiff cannot satisfy the inference of discrimination element under
McDonnell Douglas.   These cases are inapposite because Mr. Fried established a *prima facie*
case of discrimination under McDonnell Douglas.[12] (Ex. 35, pp. 20, 26).

Defendants also cite Tyler v. Bethlehem Steel Corp., 958 F.2d 1176 (2d Cir. 1992).  In
Tyler, a pre-Desert Palace, Inc. v. Costa, 539 U.S. 90, 123 S.Ct. 2148 (2003) case, after
recognizing that a plaintiff could establish the final prong of the McDonnell Douglas analysis in
either of the following two ways: directly, "by persuading the court that a discriminatory reason
more likely motivated the employer," or indirectly, "by showing that the employer's proffered
explanation is unworthy of credence," the court held that "the direct method of proof
contemplated by the last step of *Burdine* is the same as the plaintiff's initial burden under *Price
Waterhouse*." Id. at 1185.  However, because the "direct method of proof contemplated by the
last step of *Burdine*," i.e., whether Mr. Fried's age "more likely motivated" Defendants' decision
to terminate, was not adjudicated in the New York Action, Tyler is also inapposite.

---

[11]      Kucharski v. Cort Furniture Rental, 594 F.Supp.2d 207 (D. Conn. 2008), Jalal v. Columbia Univ. in City of
New York, 4 F.Supp.2d 224 (S.D.N.Y. 1998) and Aiello v. Stamford Hosp., 3:09 CV 1161 (VLB), 2011 WL
3439459 (D. Conn. Aug. 8, 2011) are also distinguishable because the plaintiffs' evidence of discrimination in those
cases was found to be insufficient under both the McDonnell Douglas and the mixed-motive approach.

[12]      Defendants also cite Kucharski v. Cort Furniture Rental, 594 F.Supp.2d 207 (D. Conn. 2008) in support of
their argument.  For the same reasons, Kucharski, which relies on Berkowitz, is infirm.

Accordingly, because the district court did not determine, let alone even consider, whether Mr. Fried's age was a motivating factor in the decision to terminate, he is not collaterally estopped from pursuing his CFEPA age discrimination claim.

**B.      Mr. Fried Is Also Not Collaterally Estopped From Pursing His CFEPA Retaliation Claim Because The District Court Did Not Determine Whether His Complaints Of Age Discrimination Were A Motivating Factor In The Decision To Terminate**

As set forth above, the ADEA and the CFEPA have the same legal standards governing claims of retaliation.  Under the CFEPA, after the plaintiff establishes a *prima facie* case of retaliation and the defendant then articulates a legitimate, non-retaliatory reason for the adverse employment action, the plaintiff can survive summary judgment if he/she can demonstrate that an issue of fact exists as to whether the plaintiff's complaint of discrimination was a motivating factor in the employment decision.  The district court in the New York Action held that Mr. Fried established a *prima facie* case of retaliation under the ADEA and that Defendants articulated a legitimate, non-retaliatory reason for the decision to terminate. (Ex. 35, p.29).  However, the district court <u>did</u> <u>not</u> determine whether Mr. Fried's complaints of discrimination were a motivating factor in the decision to terminate. (Ex. 35, p. 29).  In fact, the district court specifically held that "[f]or the reasons limned above, plaintiff's claim of retaliation fails with respect to the  . . . decision to fire Fried." (Ex. 35, p. 29).  The only reasons "limned above" in the Opinion and Order concerned Mr. Fried's purported inability to demonstrate that "but-for" his age, Defendants would not have terminated him.  There was no discussion at all as to whether Mr. Fried's complaints of discrimination were a motivating factor in the decision to terminate.

Accordingly, because the district court did not determine, let alone even consider, whether Mr. Fried's complaints of discrimination were a motivating factor in the decision to terminate, he is not collaterally estopped from pursuing his CFEPA retaliation claim.

## CONCLUSION

For the reasons set forth herein, Plaintiff Burton T. Fried respectfully requests that this Court deny Defendants' motion for summary judgment in its entirety, and grant him such other and further relief that this Court deems just and proper.

Dated: May 31, 2012
         New York, New York

                                    Respectfully submitted,

                                    THOMPSON WIGDOR LLP


                        By:    /s/ Shaffin A. Datoo
                               Douglas H. Wigdor (*Pro Hac Vice*)
                               Shaffin A. Datoo (*Pro Hac Vice*)

                               85 Fifth Avenue
                               New York, NY 10003
                               Telephone:    (212) 257-6800
                               Facsimile:    (212) 257-6845
                               dwigdor@thompsonwigdor.com
                               sdatoo@thompsonwigdor.com


                               William Madsen (ct 09853)
                               Todd Steigman (ct 26875)
                               Madsen, Prestley & Parenteau, LLC
                               44 Capitol Avenue, Suite 201
                               Hartford, CT 06106
                               Telephone:    (860) 246-2466
                               Facsimile:    (860) 246-1794
                               wmadsen@mppjustice.com
                               tsteigman@mppjustice.com

                               *Counsel for Plaintiff Burton T. Fried*

41

## <u>CERTIFICATE OF SERVICE</u>

I, hereby certify that on May 31, 2012 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing was sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Courts CM/ECF system.

Dated:  May 31, 2012
        New York, New York

        /s/ Shaffin A. Datoo

        Shaffin A. Datoo (*Pro Hac Vice*)

        85 Fifth Avenue
        New York, NY 10003
        Telephone:    (212) 257-6800
        Facsimile:    (212) 257-6845
        sdatoo@thompsonwigdor.com