# Exhibit 23

Page 1

```
 1
 2   UNITED STATES DISTRICT COURT
 3   SOUTHERN DISTRICT OF NEW YORK
 4   No. 10 Civ. 9308(JSR)
 5   ------------------------------------x
 6   BURTON T. FRIED,
 7                           Plaintiff,
 8         - against -
 9   LVI SERVICES, INC., LVI PARENT CORP., CODE
10   HENNESSY SIMMONS, LLC d/b/a CHS PRIVATE
11   EQUITY V LP; APOLLO INVESTMENT CORP.,
12   SCOTT E. STATE, in his official and
13   individual capacities; BRIAN SIMMONS, in
14   his official and individual capacities;
15   RAJAY BAGARIA, in his official and
16   individual capacities; GERALD J. GIRARDI,
17   in his official and individual capacities,
18                           Defendants.
19   ------------------------------------x
20                           June 8, 2011
                             2:10  p.m.
21
22
23
24
25
```

Page 2

```
 1
 2
 3
 4         DEPOSITION of JEFFREY SMITH via
 5   teleconference, taken by the Plaintiff,
 6   pursuant to Order, held at the offices of
 7   Thompson Wigdor & Gilly, LLP, 85 Fifth
 8   Avenue, New York, New York, before Debbie
 9   Zaromatidis, a Shorthand Reporter and
10   Notary Public of the State of New York.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
 1
 2   A P P E A R A N C E S :
 3
 4       THOMPSON WIGDOR & GILLY, LLP
 5       Attorneys for Plaintiff
 6            85 Fifth Avenue
 7            New York, New York 10003
 8       BY:    SHAFFIN A. DATOO, ESQ.
 9
10
11       SIDLEY AUSTIN, LLP
12       Attorneys for Defendants
13            787 Seventh Avenue
14            New York, New York 10019
15       BY:    NICHOLAS DEBAUN, ESQ.
16
17
18   ALSO PRESENT:
19       BURTON FRIED
20
21
22
23
24
25
```

```
1                    SMITH
2    counsel for LVI.
3          Q.    How long have you known him?
4          A.    I first met Burt in I believe
5    November or December of 2005.  I believe
6    it was December actually it was.  It was
7    at the LVI holiday party in December of
8    2005.
9          Q.    And do you know how old Mr.
10   Fried is?
11         A.    I am not certain.
12         Q.    Okay.  How old do you think he
13   is?
14         A.    I understand from the various
15   pleadings, et cetera, that he is 71 or 72
16   years old.
17         Q.    Okay.  And are you currently
18   employed?
19         A.    Yes.
20         Q.    And where do you work?
21         A.    Sidley Austin.
22         Q.    And how long have you worked
23   there?
24         A.    Since April 1, 2008.
25         Q.    And where were you before Sidley
```

```
                                              Page 12
 1                    SMITH
 2       A.    I've served as counsel of LVI
 3  since the time that it was acquired by the
 4  Code Hennessy Simmons Capital Group.
 5       Q.    And do you also have a role on
 6  LVI's board?
 7       A.    Not an official role, no.
 8       Q.    Do you have a nonofficial role?
 9       A.    No.
10       Q.    Do you serve as
11  secretary -- secretary to the board?
12       A.    Generally I go to the board
13  meetings, and when I am at the board
14  meetings I -- I serve as secretary and
15  take the minutes.  Yes.
16       Q.    Okay.  Do you have any other
17  affiliation with LVI other than being its
18  counsel and its secretary when you go to
19  the board meetings?
20       A.    No.
21       Q.    How long have you is -- sorry.
22  When you are not present at the board
23  meetings, do you know who serves as
24  secretary?
25             MR. DEBAUN:    Objection.
```

```
 1                    SMITH
 2   in your opinion he did not do a good job
 3   advocating or discussing his point?
 4           MR. DEBAUN:   Objection.
 5       A.   I don't recall any incidents.
 6       Q.   Now, I think I already asked you
 7   a question that assumed this, but did you
 8   attend a board meeting on November 4,
 9   2010?
10       A.   I did.
11       Q.   And prior to the meeting and in
12   your capacity as secretary, did you have
13   any communications with other board
14   members leading up to the November 4
15   meeting?
16       A.   No.
17       Q.   And how about in your capacity
18   as counsel?
19       A.   Yes.
20       Q.   Okay.  How many communications
21   did you have?
22       A.   I have no idea.
23       Q.   Okay.  Was it more than five?
24       A.   I have no idea.  I mean
25   I -- the -- let me just understand.  You
```

SMITH

1
2   A.    I do not.
3   Q.    Okay. And do you recall during
4   this first segment what viewpoints any
5   board members expressed?
6           MR. DEBAUN:  Objection.
7   A.    During the first segment?
8   Q.    Yes.
9   A.    I don't recall during the first
10  segment what was expressed.
11  Q.    Okay. And during this first
12  segment -- sorry.
13  A.    No, I just don't recall, you
14  know, the -- during the first segment
15  specifically what was expressed.
16  Q.    Okay. During the first
17  segment, how would you describe Mr.
18  Fried's demeanor?
19          MR. DEBAUN:  Could you repeat
20  the question, please?
21          MR. DATOO:  Sure.
22  Q.    During the first segment, how
23  would you describe Mr. Fried's demeanor?
24  A.    Calm, maybe a little impassioned
25  at times but generally calm.

```
                                              Page 43
 1                  SMITH
 2   both.
 3        Q.    Okay.  And --
 4              MR. DEBAUN:  Mr. Smith, I
 5   caution you to let Mr. Datoo finish his
 6   questions before you respond to that.
 7              THE WITNESS:  Yes.
 8        Q.    During this first session, did
 9   Mr. Fried say anything about age
10   discrimination?
11              MR. DEBAUN:  Objection.
12        A.    I don't recall.
13        Q.    Do you recall during any segment
14   if Mr. Fried said anything about age
15   discrimination?
16        A.    Yes, he did.
17        Q.    Okay.  And do you recall what he
18   said about that?
19        A.    He described a conversation he
20   had with Mr. State at that meeting in
21   October and Mr. Fried at the end of that
22   description of the -- of a comment made
23   that he -- he said was made by Mr. State.
24   After describing that he said something
25   like that is -- that is age discrimination
```

```
                                              Page 44
 1                    SMITH
 2   or something like that.
 3        Q.    And did Mr. Fried tell you what
 4   comment he said Mr. State made?
 5        A.    Yes.  He told the board that
 6   he -- during the course of this
 7   conversation with Mr. State when Mr. State
 8   had advised that a number of
 9   responsibilities that Mr. Fried had said
10   that he had previously handled that Mr.
11   State thought were more appropriately
12   handled by other people within the
13   organization because their roles were more
14   appropriate to the particular task, that
15   when Mr. Fried objected to that Mr. -- he
16   said Mr. State made a comment something
17   like:  Burt, you're 72 years old.  How
18   long do you want do this stuff or
19   something like that.  How long do you want
20   do this? And that is when Mr. Fried said
21   that is age discrimination.
22        Q.    And was Mr. --
23        A.    Something like that.
24        Q.    Was Mr. State present when Mr.
25   Fried made that statement to the board?
```

```
 1                    SMITH
 2   lines.  I don't remember -- I just don't
 3   have a recollection, you know,
 4   specifically, but, you know, there was
 5   discussion around, you know, different
 6   things he could do, you know, I think
 7   generally with the view, you know, subject
 8   to being something that Mr. State wanted
 9   him to, you know, be doing and involved
10   in, but I don't remember specifics.
11        Q.    Okay.  Now, other than what you
12   just testified to, do you recall any other
13   comments that were made at the board
14   meeting about Mr. Fried?
15        A.    It is seven months ago.  No, I
16   don't have any specific recollections.
17        Q.    Okay.  Was there an
18   investigation conducted into Mr. Fried's
19   allegation or mention of age
20   discrimination?
21        A.    An investigation?
22        Q.    Yes.
23        A.    Could I ask counsel a question?
24        Q.    Probably you should answer my
25   question first.  I am sure he will cut you
```

Page 82

```
 1                    SMITH
 2   off --
 3          MR. DEBAUN:  Are you able to
 4   answer --
 5      Q.  I am sure he will cut you off if
 6   you start discussing any attorney-client
 7   information if that is a concern.
 8          MR. DEBAUN:  Well, it is a yes
 9   or no question.  Are you able to answer it
10   that way?
11      A.  Repeat the question.
12      Q.  Was an investigation conducted
13   into Mr. Fried's allegation or mention of
14   age discrimination?
15      A.  No.
16      Q.  Okay.  Why not?
17          MR. DEBAUN:  Objection.
18          THE WITNESS:  Should I answer
19   it?
20          MR. DEBAUN:  Are you able to
21   answer that question without revealing
22   attorney-client communications or work
23   product?
24      A.  I mean I don't think anyone felt
25   there was a basis for the claim for age
```

1              SMITH
2      C E R T I F I C A T I O N
3
4
5
6      I, DEBBIE ZAROMATIDIS, a Shorthand
7  Reporter and a Notary Public, do hereby
8  certify that the foregoing witness,
9  JEFFREY SMITH, was duly sworn on the date
10 indicated, and that the foregoing is a
11 true and accurate transcription of my
12 stenographic notes.
13     I further certify that I am not
14 employed by nor related to any party to
15 this action.
16
17
18
19
20
21
22
                    ------------------------------
23                       DEBBIE ZAROMATIDIS
24
25