# Exhibit 45

# 11-4791-cv

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

BURTON T. FRIED,

      Plaintiff/Appellant,

v.

LVI SERVICES, INC., AKA LVi SERVICES, INC.; LVI PARENT CORP.;
CODE HENNESSY SIMMONS LLC, DBA CHS PRIVATE EQUITY V LP;
APOLLO INVESTMENT CORP.; SCOTT E. STATE, IN HIS OFFICIAL
CAPACITY AND IN HIS INDIVIDUAL CAPACITY; BRIAN SIMMONS,
IN HIS OFFICIAL CAPACITY AND IN HIS INDIVIDUAL CAPACITY;
RAJAY BAGARIA, IN HIS OFFICIAL CAPACITY AND IN HIS
INDIVIDUAL CAPACITY; & GERALD J. GIRARDI, IN HIS OFFICIAL
CAPACITY AND IN HIS INDIVIDUAL CAPACITY,

      Defendants/Appellees.

On Appeal from the United States District Court
for the Southern District of New York

BRIEF OF THE EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION AS AMICUS CURIAE IN SUPPORT OF
PLAINTIFF/APPELLANT AND IN FAVOR OF REVERSAL

(Cover continues on reverse)

P. DAVID LOPEZ
General Counsel

LORRAINE C. DAVIS
Acting Associate General Counsel

ELIZABETH E. THERAN
Attorney

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St., N.E., 5th Floor
Washington, D.C.  20507
(202) 663-4720
elizabeth.theran@eeoc.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES........................................................................iii

STATEMENT OF INTEREST ...............................................................1

STATEMENT OF THE ISSUES ............................................................2

STATEMENT OF THE CASE................................................................2

   A.  Statement of the Facts.................................................................2

   B.  District Court's Decision..........................................................13

ARGUMENT..........................................................................................18

**I.**  **An Age-Related Remark Made by a Decisionmaker in Close Temporal Proximity to an Adverse Employment Action Is Not a "Stray Remark" and Should Be Considered as Evidence of Age Discrimination**........................................................................18

**II.**  **The District Court Misapplied Precedent of Both the Supreme Court and this Court in Failing to View the Record Evidence as a Whole and Concluding that the Plaintiff Had Not Adduced a Genuine Dispute of Material Fact as to Pretext.**..................................29

CONCLUSION .......................................................................................35

CERTIFICATE OF COMPLIANCE ....................................................36

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

## CASES

*Bunk v. Gen. Servs. Admin.*, 408 F. Supp. 2d 153 (W.D.N.Y. 2006) ..................16

*Danzer v. Norden Sys., Inc.*, 151 F.3d 50 (2d Cir. 1998) ...............................24, 25

*Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003) .............................................27, 28

*Diaz v. Jiten Hotel Mgmt.*, 762 F. Supp. 2d 319 (D. Mass. 2011) ................ 23-24

*Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358 (3d Cir. 2008) .....................23

*Fisher v. Pharmacia & Upjohn*, 225 F.3d 915 (8th Cir. 2000) .............................23

*Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93 (2d Cir. 2010) ....... 14, 19, 20-21

*Gross v. FBL Fin. Servs.*, 557 U.S. 167, 129 S. Ct. 2343 (2009) ..............13, 14, 20

*James v. N.Y. Racing Ass'n*, 233 F.3d 149 (2d Cir. 2000) ..............................30, 31

*Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149 (2d Cir. 1998) ......................................25

*Raskin v. The Wyatt Co.*, 125 F.3d 55 (2d Cir. 1997) ................................. passim

*Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133 (2000) ........................ passim

*Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500 (1957) .................................................28

*Schnabel v. Abramson*, 232 F.3d 83 (2d Cir. 2000) .................................... 30, 31-32

*Shager v. Upjohn Co.*, 913 F.2d 398 (7th Cir. 1990) .......................................22, 23

*Shapiro v. N.Y. City Dep't of Educ.*, 561 F. Supp. 2d 413 (S.D.N.Y. 2008) ........16

*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993) ......................................18, 19

*Tomassi v. Insignia Fin. Grp.*, 478 F.3d 111 (2d Cir. 2007) .....................21, 22, 31

## STATUTES, RULES, & OTHER AUTHORITIES

Age Discrimination in Employment Act of 1967 ("ADEA"),
  29 U.S.C. §§ 621 *et seq.*.............................................................................. passim

Fed. R. App. P. 29(a) .............................................................................................1

Fed. R. App. P. 29(d) ...........................................................................................36

Fed. R. App. P. 32(a)(5)........................................................................................36

Fed. R. App. P. 32(a)(6)........................................................................................36

Fed. R. App. P. 32(a)(7)(B)...................................................................................36

*Black's Law Dictionary*, *s.v.* Evidence: Direct Evidence (9th ed. 2009)............27

iv

## STATEMENT OF INTEREST

The Equal Employment Opportunity Commission ("EEOC") is the agency charged by Congress with interpreting, administering, and enforcing various federal laws against employment discrimination, including the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq.*   This case raises at least two important issues, one regarding the application of the "stray remarks" doctrine to evidence of employment discrimination, and another regarding the plaintiff's burden to demonstrate a genuine issue of material fact sufficient to survive summary judgment in an ADEA case.  Because resolution of these issues will affect the EEOC's enforcement of the ADEA as well as other federal antidiscrimination statutes, the Commission offers its views to the Court pursuant to Fed. R. App. P. 29(a).

STATEMENT OF THE ISSUES[1]

1.  Whether the district court erred in characterizing an explicitly age-biased remark, made by the decisionmaker within a month of the plaintiff's termination, as a "stray remark" that was not probative of age discrimination.

2.  Whether the district court erred in failing to view the evidence of age discrimination in the record as a whole in concluding that the plaintiff had not adduced sufficient evidence of pretext to survive summary judgment.

STATEMENT OF THE CASE

A.  Statement of the Facts

The plaintiff in this case, Burton T. Fried, was born on February 26, 1940.  A-315.[2]  The principal defendant, LVI Services, Inc. ("LVI"), is an environmental remediation and demolition company based in New York

---

[1] We take no position with respect to any other issue presented in this appeal.

[2] "A-[#]" refers to material in the Joint Appendix, cited by page number. "SPA-[#]" refers to material in the Special Appendix, cited by page number.

City.  A-121.  Fried began working for LVI in 1986 as its general counsel and then became the company's president and chief executive officer in 1989; he also served as chairman of LVI Parent's Board of Directors while employed at LVI.  A-496-97, 384.  Fried held the president/CEO position for seventeen years (A-497) until 2005, when he decided to transition into a new role as chairman of LVI and to seek out a new president/CEO for the company.  A-501, 503.  Fried testified that he made this decision because LVI had grown to a point where "the company had the capability of continuing its profitable growth and achieving revenues with profits of a billion [dollars]. . . . And I believed the company needed the management skill sets to take us to a billion and I didn't know that I had that capability." A-501.

Accordingly, Fried engaged a recruiting company and, in consultation with the board of directors, selected Robert McNamara as LVI's new president and CEO in June of 2006.  A-208, 535.  Fried then became chairman of LVI.  He testified that, as chairman, he wanted to remove himself from the day-to-day management of the company because

"the CEO role, by its title, as chief executive officer, should have the day-to-day and final decision in the operations of the business.  And the chairman should be a person who supports the actions of the CEO and in any way [sic] that the CEO seeks that advice and counsel."  A-506-07.

Pursuant to a letter agreement with the company, Fried retained "primary responsibility for strategic growth" in his new role.  A-531.  John Leonard, LVI's chief operating officer, also testified that Fried's duties involved "legal work," "some oversight of sales at different times," "review of contracts of bonds, overs[eeing] some of the marketing efforts coming out of Westport, the office he worked at, travel, general guidance of any issues contractually that I would have or Bob would have."  A-440. Leonard testified that Fried generally worked a full work week as chairman, but that he did step away from the day-to-day responsibilities of running the company and that he did a good job in the chairman's role under McNamara.  *Id.*

In approximately April 2010, McNamara resigned from his position as president/CEO of LVI.  A-440.  LVI's board of directors then asked Fried

4

to step in as temporary president/CEO until a new replacement could be found. A-391, 508.  Fried testified that this role "wasn't a position that I wanted, but was by necessity.  There was no one else that could handle the position, especially in the trying times of restructuring and the economy." A-509.  Paul Cutrone, LVI's chief financial officer, testified that Fried was "absolutely" a good choice for the interim position, explaining that "it was the role he held for some fifteen years prior to Bob [McNamara] coming aboard. . . .  I think there was no better choice on an interim basis than Burt if he was willing to do it."  A-391.  Cutrone also testified that Fried continued to perform his duties as chairman along with the duties of the president/CEO during this period.  *Id.*  When asked why LVI continued to search for a replacement if Fried was performing well as president/CEO, Cutrone answered, "I know Burt didn't want [the position].  Burt didn't want to be a permanent replacement.  Burt wanted to find another president and CEO." A-392.

The search continued, and in approximately August 2010 Scott State (age 47) was referred to Fried as a potential candidate for the

5

president/CEO position.  A-511.  LVI's board of directors, including Fried,

decided to offer State the position sometime in the first two weeks of

September 2010.  A-569-70.  By mid-September, without even having

accepted the job offer, State was e-mailing various individuals at LVI to

inquire how Fried could be removed as chairman of the board at LVI

Parent and voicing his preference that Fried "decide to retire at some date

certain from LVI upon a new CEO being named and offer to support the

business under a consulting agreement in any way the new CEO sees fit."

A-565-66, 568-69.  In one such e-mail, State also complained that "[s]everal

members of the senior team have told me that Burt will never retire

because he has no other interests and nothing else to do.  That is not a

healthy situation for Burt or LVI."   A-569.   Leonard testified that he

recalled a conversation with State around this time in which he told State

that "I don't believe Burt will retire," A-444, 445, and that Fried told him

(Leonard) several times that he "planned to die in his chair" at LVI.  A-443.

E-mails in the record reflect that, as of September 21, 2010, LVI's

board of directors had reached an agreement with State but that State

"want[ed] to speak with Burt one last time before accepting the offer." A-137.  In one of these e-mails, Brian Simmons, a member of the board, told Fried that "Scott wants to discuss your ongoing role at LVI.  I suspect he wants to be assured that he will have authority as CEO to align his team, manage the business, etc.  Obviously he will be accountable to the Board for a budget, performance, and various other corporate actions.  I think it will be very important for him to hear unambiguously from you that he is in charge and you will give him the room he needs." *Id.*  Fried responded that "I am prepared to remain at LVI until [State], the Board, or I decide it's time for me to leave . . . an offer he can't refuse.  Ask you to recall that one of the purposes of my working in Westport was to get out of the way of the CEO at the NY Corporate office.  Trust you have no problem with my planned reply. . . . He will be in charge and get all the room he wants from me." *Id.*  Simmons told Fried that his response was "perfect," and Fried reported back to Simmons via e-mail the next day that he had spoken with State and that State "now has no concern about my support in his role as CEO." A-139.

7

State ultimately accepted LVI's offer of employment on September 23, 2010, and began work as president and CEO on September 27, 2010. A-143, 572. At this time, Fried resumed his prior position of chairman of LVI. A-371, 572. Leonard testified that, from his perspective, Fried continued to perform well in his duties as chairman. A-446. Nonetheless, over the first few weeks of October 2010, e-mails in the record reflect that State and Fried disagreed over Fried's continuing role at LVI, with Fried expressing the belief that his input should be sought on various issues and State insisting to Fried or to other board members that Fried's input was unnecessary. *E.g.*, A-173-74, 176-82, 184-85.

In one e-mail, dated October 14, 2010, State indicated that he had told Fried that he "would like his support in dealing with legacy issues such as litigation and claims and that other support would be as needed and requested by me. I was clear to indicate that I expected no direct involvement in the day to day activities of LVI or business on ago [sic] forward basis. Like most of my discussions with Burt on his continuing role he agreed. We then slated a meeting to discuss this again next week in

8

person while I am in NYC."  A-195.  State also informed the board that

Fried had sent him a list of duties that he had performed as chairman

under McNamara and that "[m]y inclination is to go through this list with

him and tell him that there is no reason that the Chairman of a Company

would do any of these things. . . . It seems that Burt has a goal to remain

active forever and these tasks he has latched on to were apparently

supported by McNamera [sic].  I am OK making moves on a number of

senior people that don't pull their weight and not looking to involve the

investors in those decisions or actions.  With Burt I feel I must be more

careful and seek your thoughts and counsel."  *Id.*

On October 19, 2010, State and Fried met in LVI's New York office to

discuss Fried's duties at LVI.  A-515.  At that meeting, Fried testified, State

looked at the list of duties Fried had sent him previously and told Fried

that "I'm going to be reassigning all your responsibilities to other managers

and I'm going to do that in the next 60 to 90 days, and when that's

completed, I can let you know if there is anything else for you to do."  A-

516.  Fried testified that he "didn't immediately respond because I was in a

state of shock.   And my only response was, 'Scott, why would you do that?'"  *Id.*  According to Fried, State responded, "'Burt, you're 71 years of age, how long do you expect to work.   And what if you get hit by a truck'— a bus, rather—'what if you get hit by a bus, and we have to plan for the future.'"  *Id.*  Fried testified:

> My response to that, since this was the first time that there was
> any indication that—of what his—what he was going to do
> with my responsibilities—so I said, "Scott, number one, I'm 70
> years of age, not 71.  Number two, the things that I perform for
> the company is [sic] not—there is no one here that performs
> that, there is no duplicity, and based upon my experience, I
> think I am performing it in a manner in which I think can best
> serve the interests of LVI Services.  I don't plan to be hit by a
> bus; I'm in good health and I expect to work for a long period
> of time.  I am healthy, and by the way, there aren't many buses
> in Westport, Connecticut."  And his response was, "Well, that's
> the way I'm going to proceed."

A-516-17.   After the meeting, in response to an e-mail from Simmons asking how State would "like to use Burt," State responded to several members of the board, gave his account of the meeting with Fried that day, and stated that, although Fried had indicated that he would "like to work for LVI as long as he is able," "I was clear with [Fried] that it was my objective to have him truly retire and be just an on call resource."  A-575.

10

During the last two weeks of October 2010, Fried contacted various members of the board of directors and informed them about his conversation with State, including the comment he made about Fried's age. A-373, 463, 518-24.  The subject of Fried's complaint was then brought up, with Fried in attendance, among other subjects at the quarterly meeting of the board of directors on November 4, 2010.  A-579.  Various witnesses testified that Fried recounted what had happened at his October 19 meeting with State and informed the board that he believed it was age discrimination.  A-374, 414, 430, 589-90, 683.  As a result of the meeting, the board decided to have one of its members, John Schnabel, "engage [Fried] in discussions around an arrangement that could work for all sides."  A-374.  The next day, November 5, 2010, State sent an e-mail to a friend regarding the board meeting in which he wrote, "In a battle with founder about his need to retire but Board gets it and is working to exit him with some respect."  A-473, 487.

Ten days later, on November 15, 2010, Fried's counsel delivered a letter addressed to State at LVI Services indicating that Fried had retained

11

the firm in connection with his claims of age discrimination and breach of employment contract against LVI.  A-595-99.  The letter explained the basis for Fried's belief that LVI had discriminated against him on the basis of his age, indicated that he wished to discuss possible resolution of the matter, and requested a response prior to November 22, 2010.  *Id.*  The board met via phone conference to discuss Fried's letter the next day, November 16, 2010.  A-418-19, 601.  As a result of that meeting, the board decided to "ignore" Fried's letter, *id.*, and to send him a letter terminating his employment as executive chairman with LVI Services effective November 30, 2010.  A-604.  In no fewer than four different places in the summary judgment record, LVI indicated that State was the individual responsible for making the decision to terminate Fried.  A-614, 633, 647, 662.  In the letter, the board informed Fried that he would "continue your relationship with LVI as non-executive Chairman of the Board of LVI Parent Corp.  In addition, we are offering you the position of consultant to LVI Services on the terms set forth in the attached letter agreement."  *Id.*  The consultancy

12

agreement was conditioned on Fried's release of all claims against LVI, including age discrimination.  A-605-06.

Fried rejected the board's offer and resigned from LVI effective November 30, 2010.  A-672.  After he resigned, according to various witnesses, his duties were reassigned to a group of younger workers who ranged in age from thirty-five to fifty-seven, between thirteen and thirty-five years younger than Fried.  A-420, 447, 476-77, 695-96.  Fried filed suit in federal district court based on diversity jurisdiction in December 2010; the complaint was later amended on February 3, 2011, to add claims of age discrimination and retaliation under the ADEA.  A-7, 26-57.

B.  District Court's Decision

In relevant part, after reviewing the factual background of the case, the district court turned to Fried's age discrimination claim, observing that the Supreme Court in *Gross v. FBL Financial Services* held that "'a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the "but-for" cause of the challenged adverse employment action.'"    SPA-20 (Opinion & Order

13

("Opinion") at 18) (quoting *Gross*, 557 U.S. 167, ___, 129 S. Ct. 2343, 2352 (2009)). The court further noted that, although the *Gross* Court remarked that it had not definitively decided whether the *McDonnell Douglas* burden-shifting framework applied in Title VII cases was appropriate under the ADEA, this Court had continued to apply *McDonnell Douglas* to ADEA cases post-*Gross* absent authority to the contrary. *Id.* (citing *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93 (2d Cir. 2010)).

The court then noted that the defendants in this case "do not contest that plaintiff has satisfied his burden of establishing a *prima facie* case." SPA-22 (Opinion at 20). Accordingly, the court proceeded to the second stage of *McDonnell Douglas*, where it found that "defendants have clearly articulated a legitimate, nondiscriminatory reason for terminating Fried's employment with LVI: the need to ensure that the new CEO and president, defendant Scott E. State, would have the freedom to manage the Company as he saw fit." *Id.* The court also observed that the defendants' account was "amply support[ed]" by "abundant, undisputed evidence in the record." SPA-23 (*id.* at 21). Accordingly, the court explained, the burden

14

now shifted to Fried to demonstrate that the defendants' proffered reason
was pretextual—i.e., "that: (1) the proferred [sic] reason [ ][is] false; and (2)
the real reason was unlawful discrimination." *Id.* Under *Gross*, the court
stated, "Fried must prove not merely that age was one of the factors
motivating defendants' decision, but rather that age was the 'but-for' cause
of that decision. Fried must therefore 'raise [] sufficient evidence upon
which a reasonable jury could conclude by a preponderance of the
evidence that [his] age was a "but for" cause of [defendants'] decision to
fire [him].'" SPA-24 (*id.* at 22) (internal citations omitted).

The court then found that Fried had "failed to sustain his burden as a
matter of law." SPA-24 (Opinion at 22). It characterized Fried's case as
"hing[ing] almost exclusively on the October 19, 2010 conversation
between Fried and State, when State purportedly indicated that he would
be reassigning Fried's duties and stated: 'Burt, you're 71 years of age, how
long do you expect to work. . . . [W]hat if you get hit by a bus . . . we have
to plan for the future.'" *Id.* The court reasoned:

> However, "[s]tray remarks, even if they occurred as plaintiff
> claims, are not enough to satisfy the plaintiff's burden of

15

proving pretext.  Stray remarks alone do not create an issue of material fact to defeat summary judgment."  *Bunk v. General Services Admin.*, 408 F. Supp. 2d 153, 158 (W.D.N.Y. 2006).  *See also Shapiro v. N.Y. City Dep't of Educ.*, 561 F. Supp. 2d 413, 424 (S.D.N.Y. 2008) ("[t]he stray remarks of a decision-maker, without more, cannot prove a claim of employment discrimination").  In this case, the single, isolated mention of Fried's age, the only such mention in the entire record, cannot, standing alone, create an issue of material fact sufficient to defeat summary judgment.  This is especially true given that State, by Fried's own admission, qualified his remark by asking "what if you get hit by a bus."   Accordingly, unless other indicia of discrimination are properly presented, *see* [*Shapiro*, 561 F. Supp. 2d at 424], this comment alone is insufficient to sustain plaintiff's burden of proving pretext as a matter of law.

SPA-25 (*id.* at 23).

The court then went on to observe that "Fried's [other] purported indicia of discrimination also fall short."  SPA-25 (Opinion at 23).  The court rejected Fried's reliance on State's various e-mails referring to his desire to have Fried retire, remarking that "courts have consistently held that remarks relating to retirement or transition planning are insufficient to defeat a motion for summary judgment in an ADEA case."  SPA-25-26 (*id.* at 23-24) (citing various cases).  In particular, the court found the facts of this case to be similar to those in *Raskin v. The Wyatt Co.*, 125 F.3d 55 (2d

16

Cir. 1997), because, according to the court, "where Fried had previously given assurances that State '[would] be in charge and get all the room he want[ed]' from Fried, . . . it was natural, and hardly demonstrates pretext, for Fried's colleagues to inquire as to his future plans when disagreements arose concerning the scope of Fried's responsibilities." SPA-27-28 (*id.* at 25-26). Finally, the court stated that Fried's only other evidence of age discrimination was the fact that his job responsibilities were given to younger workers. SPA-28 (*id.* at 26). According to the court, "[w]hile this decision is sufficient to establish that the adverse employment action occurred under circumstances giving rise to an inference of discrimination for the purpose of establishing a prima facie case, it is insufficient to show that defendants' legitimate, non-discriminatory explanation is pretextual and that age constituted the 'but for' cause of the adverse employment action." *Id.* Thus, the court concluded, Fried's ADEA discrimination claim failed as a matter of law.

17

ARGUMENT

**I. An Age-Related Remark Made by a Decisionmaker in Close Temporal Proximity to an Adverse Employment Action Is Not a "Stray Remark" and Should Be Considered as Evidence of Age Discrimination.**

In no sense was State's October 19, 2010, remark to Fried—"Burt, you're 71 years of age, how long do you expect to work"—a "stray remark" within the meaning of the case law on discrimination. Rather, under the precedent of both the Supreme Court and this Court, it is probative evidence of age discrimination that a factfinder would be entitled to weigh in determining whether State, acting on behalf of LVI, terminated Fried because of his age.

As the Supreme Court observed in *Reeves v. Sanderson Plumbing Products*, "*McDonnell Douglas* and subsequent decisions have 'established an allocation of the burden of production and an order for the presentation of proof in . . . discriminatory-treatment cases.'" 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)). First, the plaintiff must establish a prima facie case of discrimination: *i.e.*, that he was a member of the class protected by the ADEA at the time he was fired, that

18

he was otherwise qualified for his position, that he was subjected to an adverse employment action, and that he was replaced by younger individuals (or that the adverse employment action otherwise occurred under circumstances giving rise to an inference of discrimination). *Reeves*, 530 U.S. at 142; *see also, e.g.*, *Gorzynski*, 596 F.3d at 107. In this case, the parties apparently do not dispute that the plaintiff has at least met his burden for summary judgment purposes with respect to his prima facie case of discrimination: a reasonable jury could find that he was seventy years old, he was more than adequately qualified for the chairman position, he was terminated from that position, and his duties were redistributed to significantly younger individuals.

As the *Reeves* Court observed, the burden then shifts to LVI to "produce evidence" that Fried was terminated "for a legitimate, nondiscriminatory reason." 530 U.S. at 142. "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Id.* (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 509). The parties also do not appear to dispute that the defendant has met its burden in this regard: it

19

has proffered admissible evidence from which a reasonable jury could conclude that State terminated Fried because State did not feel he could run the company effectively as its new president and CEO with Fried on board and because Fried did not wish to retire and play the fully "on-call" role that State wanted him to.

At this stage of the analysis, as the Supreme Court explained in *Reeves*, the presumptions of the *McDonnell Douglas* paradigm fall away, and the burden of proving intentional discrimination remains with the plaintiff. 530 U.S. at 143. The Supreme Court clarified in *Gross* that, in the ADEA context, this means that in order to establish liability "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the "but-for" cause of the challenged employer decision." 129 S. Ct. at 2351 (citing *Reeves*, 530 U.S. at 141-43). Accordingly, for summary judgment purposes, the question is whether the plaintiff "has raised sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence that [his] age was a 'but for'

cause of [the defendant's] decision to fire [him]."  *Gorzynski*, 596 F.3d at 107.

In conducting its analysis of the record evidence in this case, the district court gave short shrift to State's explicitly ageist remark to Fried of October 19, 2010, and erred as a matter of law in characterizing it as a "stray remark."  This Court has had numerous opportunities over the years to address and clarify the "stray remarks" doctrine in employment discrimination law, but its discussion in *Tomassi v. Insignia Financial Group*, 478 F.3d 111 (2d Cir. 2007), is particularly insightful and instructive.  As the *Tomassi* panel explained, the "stray remarks" doctrine originated as an attempt to reconcile the fact that there are some cases where courts "have found the evidence [of discrimination] legally insufficient notwithstanding the incidence of discriminatory remarks."  478 F.3d at 115.  The Court continued:

> That locution represented an attempt—perhaps by oversimplified generalization—to explain that the more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination. . . . For example, remarks made by someone other than the person who made the decision

21

adversely affecting the plaintiff may have little tendency to show that the decision-maker was motivated by the discriminatory sentiment expressed in the remark. . . . The more a remark evinces a discriminatory state of mind, and the closer the remark's relation to the allegedly discriminatory behavior, the more probative that remark will be. . . . Where we described remarks as "stray," the purpose of doing so was to recognize that all comments pertaining to a protected class are not equally probative of discrimination and to explain in generalized terms why the evidence in the particular case was not sufficient. We did not mean to suggest that remarks should first be categorized either as stray or not stray and then disregarded if they fall into the stray category.

*Id.* at 115-16 (internal citations omitted).

Other courts of appeals have made similar observations regarding the weight of biased remarks as evidence of discrimination. For example, in *Shager v. Upjohn Co.*, Judge Posner wrote:

[A]ll that these [stray remarks] cases really stand for is the common-sense proposition that a slur is not in and of itself proof of actionable discrimination, even if repeated. The remark . . . may have been innocent and misunderstood; or it may have had no consequence, either because it did not reflect the thinking of the people with decision-making authority or because it did not motivate even the person uttering it to act on it. . . . Even so, it may be relevant evidence, with greater or less probative value depending on the precise character of the remark.

22

913 F.2d 398, 402 (7th Cir. 1990). Along the same lines, the Eighth Circuit

has observed:

> [Defendant] argues that these statements cannot give rise to an
> inference of discrimination because they are merely "stray
> remarks," or statements that were made by non-decisionmakers
> and that are not causally related to [Plaintiff's] transfer to the
> pork sales unit. Although we agree that stray remarks,
> standing alone, may not give rise to an inference of
> discrimination, such remarks are not irrelevant. . . . Rather, such
> comments are "surely the kind of fact which could cause a
> reasonable trier of fact to raise an eyebrow, thus providing
> additional threads of evidence that are relevant to the jury." . . .
> Stray remarks therefore constitute circumstantial evidence that,
> when considered together with other evidence, may give rise to
> a reasonable inference of age discrimination.

*Fisher v. Pharmacia & Upjohn*, 225 F.3d 915, 922-23 (8th Cir. 2000) (internal

citations omitted). *See also, e.g.*, *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d

358, 368 (3d Cir. 2008) (observing that even biased remarks unrelated to the

decisionmaking process or temporally remote "could provide background

evidence that may be critical to a jury's determination of whether the

decision-maker was more likely than not acting out of a discriminatory

motive"); *Diaz v. Jiten Hotel Mgmt.*, 762 F. Supp. 2d 319, 336-37 (D. Mass.

2011) (observing that "the 'Stray Remarks Doctrine' originally came out of

23

the weakest discrimination cases, those in which some employee made a single remark that a judge deemed insufficient to show bias or pretext on the part of the employer," and noting that "in light of *Reeves*, the 'Stray Remarks Doctrine' may be seen as impermissibly asking a court to weigh every statement to determine its probative value in isolation").

In an age discrimination case, age-biased remarks are evidence like any other. They may be strong or weak evidence of age discrimination, depending on factors such as who made them, their content, their audience, and their temporal proximity to the employment decision, and they should be weighed by the factfinder accordingly. *See, e.g., Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998) (observing that, while a biased remark made by a decisionmaker does not warrant an "instantaneous jury case on discrimination" for any "disparaged worker[] who had the 'fortuity' of being in the class encompassed by the stray remark . . . , regardless of the ground for his dismissal," the same remark might bear "a more ominous significance" in the context of other indicia of discrimination).

24

Viewed in this light, State's remark to Fried simply cannot be fairly characterized as "stray."  The remark was made directly to Fried by State, the president/CEO of LVI and the decisionmaker in his termination less than a month later, and it explicitly referenced Fried's age.   A-516.  Moreover, it came in the context of a months-long "battle"—to use State's description—to force Fried out of the workplace at LVI and into "retirement."  A-473.  In addition, the one-month gap between the remark in question and Fried's termination is quite short in comparison to some of the larger gaps between discriminatory remarks in other cases that this Court has held to be not "stray," but probative evidence of discrimination.  *E.g.*, *Danzer*, 150 F.3d at 55 (observing that defendants "make too much of" over a year between ageist remark and termination); *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 163 (2d Cir. 1998) (remark within two years of termination).

At the summary judgment stage, it was also inappropriate on this record for the district court to conclude as a matter of law that State's remark to Fried was simply an age-neutral inquiry into his retirement

plans. State had already been told repeatedly by several people that Fried had no intention of retiring anytime soon (A-569); there is evidence in the record that he was well aware of Fried's views on the subject before October 19, 2010, and a reasonable jury could find that State was not conducting an "age-neutral inquiry" during that conversation (A-569, 698, 700).[3] Certainly, as this Court observed in *Raskin*, 125 F.3d at 63, the ADEA does not forbid any discussion of age or retirement in the workplace, and a jury could consider the evidence of State's interactions with Fried between September and November of 2010 and conclude that this was all that occurred on October 19, but this is not the only conclusion available on this record. A reasonable jury could also find that, far from making a neutral inquiry, State used Fried's age on October 19 to badger him about retiring against his will and to indicate that Fried was past his prime and no longer of any use to the company. This inference is particularly available to the

---

[3] At a minimum, there is a genuine dispute of material fact on this point in the record. *See* A-483-85 (State's deposition testimony that it was his "perception" that Fried intended to retire sometime in the near future, notwithstanding his e-mail of September 19, 2010 (A-569)).

jury here in light of the fact that State explicitly tied his question about retirement to Fried's age and in light of State's avowed mission—undertaken before he even accepted the job at LVI and before Fried could possibly have been in his way—to remove Fried not only from his job, but from his position as chairman of the board of LVI Parent.

In this respect, as the plaintiff observed in his opening brief (Appellant Br. 41-42), and contrary to the district court's suggestion, this case is thoroughly distinguishable from this Court's decision in *Raskin*. First, in *Raskin* the plaintiff was arguing that the decisionmaker's comment that he "presumed that [Raskin] didn't want to be the office manager so late in [his] career" was direct evidence of age discrimination—an argument not at issue here.[4]  125 F.3d at 62.  Second, and more significantly

---

[4] Fried has not argued that State's comment constitutes "direct evidence" of discrimination and has proceeded from the start under the *McDonnell Douglas* burden-shifting paradigm.  *See Black's Law Dictionary*, *s.v.* Evidence: Direct Evidence (9th ed. 2009) ("evidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption").  In any case, particularly after the Supreme Court's decisions in cases like *Reeves*, *Gross*, and *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003) (holding that direct evidence is not required to obtain a

for the present purposes, the factual context of the retirement planning conversation in *Raskin* was markedly different from the October 19, 2010, meeting between State and Fried in this case.  In *Raskin*, the plaintiff and the decisionmaker, Davis, were discussing Raskin's interest in a vacant managerial position.  *Id.*  According to Raskin's deposition testimony, Davis said that "'he presumed that I didn't want to be the office manager so late in my career and I told him that was not the case; that I had no intention to retire now . . . .'"  *Id.*  Raskin further testified that "once Davis ascertained Raskin's interest in the position, Davis turned the conversation to other issues," including various performance difficulties of Raskin's.  *Id.* at 62-63.   The *Raskin* Court concluded that, although Davis was the decisionmaker who did not offer Raskin the promotion, "he had a

---

mixed-motive instruction in Title VII cases), it is unclear what meaning or value there is in assigning distinctions like "direct" or "circumstantial" to evidence of discrimination in any case.  *See Desert Palace*, 539 U.S. at 100 ("The reason for treating circumstantial and direct evidence alike is both clear and deep rooted: 'Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.'") (quoting *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 508 n.17 (1957)).

28

legitimate reason to confirm Raskin's interest in a career change notwithstanding the possibility that Raskin would have the option of taking early retirement." *Id.* at 63. There was no suggestion at all in *Raskin*, as there is here, that Davis already knew that Raskin had no desire to retire when he asked the question or that Davis explicitly referred to Raskin's age and suggested that Raskin affirmatively should retire because of his age.

Accordingly, the district court erred in characterizing State's remark to Fried at the October 19, 2010, meeting as a "stray remark" that is not probative of discrimination as a matter of law, especially in light of the context in which it arose. The remark is evidence that should be considered by a jury along with the other evidence in the record in evaluating Fried's age discrimination claim.

## II. The District Court Misapplied Precedent of Both the Supreme Court and this Court in Failing to View the Record Evidence as a Whole and Concluding that the Plaintiff Had Not Adduced a Genuine Dispute of Material Fact as to Pretext.

In concluding that no genuine dispute of material fact existed in this case, the district court appears to have disregarded the Supreme Court's decision in *Reeves* in several respects. First, the district court appears to

29

have misapplied both *Reeves* and this Court's case law interpreting *Reeves* by stating that, in order to show pretext, Fried was required to demonstrate "that: (1) the proferred [sic] reason [ ][is] false; and (2) the real reason was unlawful discrimination."   SPA-23 (alterations in original).   As this Court has recognized, *Reeves* rejected this requirement as a matter of law, holding that demonstrating the falsity of the defendant's proffered reason may itself be sufficient to show pretext, depending on the circumstances of the case.   *See, e.g., Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000) ("In examining the impact of *Reeves* on our precedents, we conclude that *Reeves* prevents courts from imposing a per se rule requiring in all instances that an ADEA claimant offer more than a prima facie case and evidence of pretext."); *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 155-56 (2d Cir. 2000) (observing that "the Supreme Court explained in *Reeves* that in some circumstances, a prima facie case plus falsity of the employer's explanation can, without more, be enough to support a reasonable finding that prohibited discrimination has occurred, and thus that a plaintiff may,

under those circumstances, reach the jury on this evidence and without additional evidence").

Second, as the *Reeves* Court observed, on summary judgment the court is required to review the record evidence "taken as a whole," and indeed the Supreme Court faulted the Fifth Circuit in *Reeves* for disaggregating the additional evidence of pretext from the evidence adduced to establish the plaintiff's prima facie case. *Id.* at 149-50. This Court has repeatedly made the same observation. *See, e.g.*, *Tomassi*, 478 F.3d at 115 ("Instead of disregarding some of the evidence because of [a "stray remarks"] classification, the court should have considered all the evidence in the light most favorable to the plaintiff to determine whether it could support a reasonable finding in the plaintiff's favor."); *James*, 233 F.3d at 156 ("As we understand the Court's *Reeves* opinion, once a minimal prima facie case is proved and the employer's nondiscriminatory explanation has been given, . . . the governing standard is simply whether the evidence, taken as a whole, is sufficient to support a reasonable inference that prohibited discrimination occurred."); *Schnabel*, 232 F.3d at 90 ("[W]e hold

that the Supreme Court's decision in *Reeves* clearly mandates a case-by-case approach, with a court examining the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'") (quoting *Reeves*, 530 U.S. at 143).

In this case, the district court engaged in precisely this kind of disaggregation, separating out each category of evidence Fried proffered and citing some authority for the proposition that that type of evidence, standing alone, was not enough to create a genuine dispute of material fact as to discrimination.  *See* SPA-24 (holding that October 19, 2010 comment "alone" was insufficient to sustain plaintiff's burden to show pretext); SPA-25-27 (remarks about retirement not necessarily sufficient to demonstrate age animus or "direct evidence" of age discrimination); SPA-28 (younger replacement(s) "cannot alone" establish pretext).  As *Reeves* and this Court's law construing *Reeves* make clear, however, this was not the proper way to assess the evidence.

Rather, the appropriate question is whether all of the evidence in the record, taken together, is sufficient to allow a reasonable jury to conclude that Fried's age was the but-for cause of his termination from LVI, whether because LVI's proffered reason was false or because it was not the real reason why State terminated Fried.  That evidence, as discussed above, consists of: Fried's undisputed good performance before State's arrival on the scene; State's campaign to get rid of Fried, not only as executive chairman of LVI but also as chairman of the board, before State even arrived at LVI and before Fried could possibly have been interfering with him; State's own e-mail and deposition testimony that he had been told that Fried did not want to retire; other board members' testimony that they had told State that Fried had no intention of retiring; State's e-mail to the Board in which he said that he was "OK making moves on a number of senior people that don't pull their weight"; State's October 19, 2010, remark to Fried at their meeting, which directly referenced Fried's age and included a demand to know when he intended to retire; and the fact that Fried's duties were reassigned entirely to younger workers after he left.

33

While this evidence might not compel a jury to find in Fried's favor, it is sufficient to allow a reasonable jury to conclude that State terminated Fried because of his age.  A jury could conclude that State viewed Fried as good for nothing but retirement because of his age, despite evidence of Fried's more than competent continued performance and willingness to adapt to a new role in the company, and that State had already made the decision to get rid of Fried before Fried could possibly have been in his way or refused to comply with any of State's wishes.  State's other remark to the board about "senior people that don't pull their weight," while perhaps not explicitly age-biased in isolation, should be viewed in light of State's treatment of Fried and the totality of the circumstances, and a reasonable jury would be entitled to consider it and conclude that it contributed to a larger picture of State's views on older workers in general and Fried in particular.

CONCLUSION

For the foregoing reasons, the judgment of the district court should

be reversed and the case remanded for further proceedings.

Respectfully submitted,

P. DAVID LOPEZ
General Counsel

LORRAINE C. DAVIS
Acting Associate General Counsel

s/Elizabeth E. Theran
ELIZABETH E. THERAN
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M Street, N.E., 5th Floor
Washington, D.C. 20507
(202) 663-4720
elizabeth.theran@eeoc.gov

CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P.

29(d) and 32(a)(7)(B) because it contains 6,888 words, excluding the parts of

the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because

it has been prepared in a proportionally spaced typeface using Microsoft

Word 2003 in Palatino Linotype 14 point.


s/Elizabeth E. Theran
Elizabeth E. Theran
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M Street, N.E., 5th Floor
Washington, D.C. 20507

Dated:  March 5, 2012

CERTIFICATE OF SERVICE

I, Elizabeth E. Theran, hereby certify that I electronically filed the foregoing brief with the Court via the appellate CM/ECF system and filed six copies of the foregoing brief with the Court by next business day delivery, postage pre-paid, this 5th day of March, 2012. I also certify that the following counsel of record, who have consented to electronic service, will be served the foregoing brief via the appellate CM/ECF system:

Counsel for Plaintiff /Appellant:
Douglas Holden Wigdor
Thompson Wigdor LLP
85 Fifth Avenue
New York, NY 10003
(212) 257-6800
dwigdor@thompsonwigdor.com

Counsel for Defendants/Appellees:
Nicholas H. DeBaun
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5300
ndebaun@sidley.com

Andrew Ehrlich
Paul, Weiss, Rifkind, Wharton &
Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3166
aehrlich@paulweiss.com

s/Elizabeth E. Theran
Elizabeth E. Theran
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M Street, N.E., 5th Floor
Washington, D.C. 20507