**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **SHARI L. DEMBIN and BURTON T. FRIED** | : | |
| | : | |
| **Plaintiffs,** | : | **Civil Action No. 3:11-CV-01855 (JBA)** |
| | : | |
| **v.** | : | **May 31, 2012** |
| | : | |
| **LVI SERVICES INC., LVI PARENT CORP.,** | : | |
| **and SCOTT E. STATE,** | : | |
| | : | |
| **Defendants.** | : | |

**PLAINTIFF'S LOCAL RULE 56(a)2 STATEMENT**

Pursuant to Rule 56(a)2 of the Local Rules of Civil Procedure of the United States District Court for the District of Connecticut, Plaintiff Burton T. Fried hereby responds to Defendants' Local Rule 56(a)1 Statement as follows:

1.    Admit.[1]

2.    Admit.

3.    Admit.

4.    Admit.

5.    Admit.

6.    Deny in part.  From approximately September 2003 through approximately mid-November 2005, Mr. Fried worked out of LVI Services, Inc.'s ("LVI") office in New York City ("New York City Office") for two to three days a week. (Ex. 4, pp. 45-46; Ex. 12, pp.65-67). From approximately mid-November 2005 through mid-July 2006, Mr. Fried worked out of the New York City Office two days a week. (Ex. 13, p.3).

---

[1] All statements admitted herein are admitted solely for the purpose of responding to Defendants' Local Rule 56(a)1 Statement and responding to Defendants' motion for summary judgment.

7.      Deny in part.  The evidence cited by Defendants does not support the contention that Mr. Fried "wish[ed] to relinquish his day-to-day operational responsibilities."  Prior to the purchase of LVI by Code Hennessy Simmons LLC, Mr. Fried agreed with the prior owner that LVI should hire a new President and Chief Executive Officer ("CEO") who had the skill set to triple the company's earnings. (Ex. 4, pp. 35-36; Ex. 12, pp.75-77).  Mr. Fried also decided that when a new President and CEO was hired, he would remain at LVI with a Chairman title and focus on growth initiatives. (Ex. 12, pp.75-77; Ex. 13, p.1).  By virtue of Mr. Fried's job duties as Chairman, he would no longer have the same day-to-day responsibilities over LVI he had as President and CEO. (Ex. 12, pp.80-81).

8.      Deny in part.  The evidence cited by Defendants does not support the contention that agreement entered into between LVI and Mr. Fried stated that Mr. Fried's would have primary responsibility for strategic growth "at the direction of the new CEO." (Ex. 13, p.1).

9.      Deny.  This paragraph does not contain a statement of material fact.  Rather, it contains a legal argument/conclusion as to LVI's purported legal rights.

10.      Deny in part.  The evidence cited by Defendants does not support the contention that Mr. Fried "resigned from the position of President and CEO."  Mr. Fried agreed to serve as Chairman of LVI after a new President and CEO was hired. (Ex.13, p.1).

11.      Admit.  Mr. Fried avers that the reduction of his work schedule lasted for only one week. (Ex. 12, pp.109-10).

12.      Admit.

13.      Admit.

14.      Deny.  The evidence cited by Defendants does not support the contention that Mr. Fried "identified [State] as a candidate for the position and introduced State to LVI and the

Board."   Mr. Fried testified that Mr. State "was sort of introduced to be considered for the position by one or more managers of LVI." (Ex. 12, p.117).  Mr. Fried also testified that at the request of Mr. Leonard and Mr. Messisco, he suggested that Mr. State apply for the President and CEO position. (Ex. 12, pp.117-18).

15.     Deny in part.  The evidence cited by Defendants does not support the contention that Mr. State "ultimately became the choice of Fried."  Mr. Fried testified that he supported Mr. State's hiring because the senior managers of LVI recommended him for the position. (Ex. 12, p.121).

16.     Admit.

17.     Deny.  Mr. Fried testified that he supported Mr. State's hiring because the senior managers of LVI recommended him for the position. (Ex. 12, p.121).

18.     Deny in part.  The evidence cited by Defendants does not support the contention that Mr. State wanted to speak to Mr. Fried to ensure that Mr. State would have the authority as CEO to "manage the business without Fried's interference."

19.     Admit.

20.     Admit.

21.     Admit.

22.     Deny.  The evidence cited by Defendants does not support their entire contention.

23.     Deny.  The evidence cited by Defendants does not support the contention that Mr. Fried sent Mr. State "an unsolicited email" or that the email listed Mr. Fried's "purported" responsibilities as Chairman under Mr. McNamara.

24.     Deny.  The evidence cited by Defendants does not support the contention that Mr. Fried and Mr. State discussed "Fried's proper duties as Chairman and the transition of other duties to members of LVI's management."

25.     Deny.  The evidence cited by Defendants does not support the contention that Mr. Simmons requested that Mr. Fried send him a list of Plaintiff's job duties to distribute to the Board of Directors.

26.     Deny.  The evidence cited by Defendants does not support the contention that Mr. Simmons responded "on behalf of the Board" and that Mr. Simmons proposed to replace Mr. Fried's existing employment "agreement" with a consulting agreement.

27.     Admit.

28.     Admit.  Mr. Fried avers that the letter from Fried's counsel was hand delivered to LVI's New York office on November 15, 2010. (Ex. 4, pp.138-39; Ex. 24, p.1).

29.     Deny.  The letter sent by Mr. Simmons to Mr. Fried terminated his employment with LVI. (Ex. 26, pp.2-3).

30.     Deny.  Mr. Fried did not resign his position as Chairman of LVI. (Ex. 12, pp.270-71; Ex. 26, pp.2-3; Ex. 31).

31.     Admit.  Mr. Fried avers that the terms of the consultancy arrangement required him to waive his right to sue Defendants for age discrimination and retaliation, did not guarantee him a minimum number of hours, could have been terminated by LVI at any time upon 30-days notice, and only guaranteed Mr. Fried $37,500. (Ex. 26, pp.2-6).

32.     Admit.

33.     Admit.

34.     Admit.

35.     Deny in part.  The Connecticut Commission on Human Rights and Opportunities released jurisdiction prior to the time set forth in Conn. Gen.Stat. §46a-101. (Def. 56(a)1, ¶33; Ex. 42).

36.     Admit.

## DISPUTED ISSUES OF MATERIAL FACT

37.     Whether Mr. Fried transitioned to the position of Chairman of LVI in 2005 because he wanted to retire. (Ex. 12, pp. 75-79, 132; Ex. 13; Ex. 14).

38.     Whether Mr. Fried was planning to retire after a replacement for Mr. McNamara was found. (Ex. 4, p. 64; Ex. 7, pp. 38, 48-50).

39.     Whether Mr. State was trying to have Mr. Fried removed as Chairman of the Board of Directors of LVI Parent Corp. before he was hired. (Ex. 18).

40.     Whether Mr. State was aware, before he was hired, that Mr. Fried had no intention of retiring. (Ex. 7, pp. 49, 58-60, 64-65; Ex. 11 pp. 115-17, 130-32; Ex. 19).

41.     Whether Mr. State and Mr. Fried discussed the possibility of Mr. Fried retiring. (Ex. 11, pp. 118-20).

42.     Whether Mr. Fried represented to Mr. State and the Board of Directors of LVI Parent Corp. "that he fully intended to relinquish his responsibilities for running LVI." (Ex. 4, p. 64; Ex. 7, pp. 38, 48-50, 58-60, 64-65; Ex. 11 pp. 115-17, 130-32; Ex. 12, pp. 75-79, 132; Ex. 13; Ex. 14; Ex. 19).

43.     Whether Mr. Fried had day-to-date duties as Chairman after Mr. State was hired. (Def. 56(a)1, ¶20; Ex. 3, p. 47; Ex. 13; Ex. 20; Ex. 36, p. 3).

44.     Whether Mr. State stripped Mr. Fried of all his duties on October 19, 2010. (Def. 56(a)1, ¶24; Ex. 4, p. 101; Ex. 7, pp. 77, 114-17; Ex. 10; Ex. 12, p. 182-83, 194; Ex. 36).

5

45.     Whether Mr. State's age-based remark during his October 19, 2010 meeting with Mr. Fried evinced a desire to terminate Mr. Fried because of his age. (Ex. 7, p. 117; Ex. 12, p.194).

46.     Whether Mr. State's age-based remark during his October 19, 2010 meeting with Mr. Fried was "nothing more than a request for clarification of how long Fried intended to retain his operational responsibilities at LVI." (Def. 56(a)1, ¶24; Ex. 4, p. 101; Ex. 7, pp. 77, 114-17; Ex. 12, pp. 182-83, 194; Ex. 36).

47.     Whether Mr. State's Whether Mr. State's age-based remark during his October 19, 2010 meeting with Mr. Fried related to retirement or transitioning planning. (Def. 56(a)1, ¶24; Ex. 4, p. 101; Ex. 7, pp. 77, 114-17; Ex. 12, pp. 182-83, 194; Ex. 36).

48.     Whether Mr. Fried interfered with Mr. State's management of LVI.  (Ex. 4, p. 129; Ex. 6, pp. 39, 74; Ex. 7, pp. 74-76; Ex. 18; Ex. 33, pp. 62-63; Ex. 37; Ex. 38).

49.     Whether Mr. Fried's age was a motivating factor in the decision to terminate his employment. (Ex. 4, p. 129; Ex. 5, p. 105; Ex. 6, pp. 25-26, 39, 74; Ex. 7, pp. 37, 74-77, 93-117; Ex. 8, pp. 34-37; Ex. 9; Ex. 11, pp. 118-20, 362; Ex. 12, p. 194; Ex. 15, ¶2; Ex. 16, Ex. 17, p. 13; Ex. 18; Ex. 19; Ex. 21; Ex. 33, pp. 62-63; Ex. 34; Ex. 36; Ex. 37; Ex. 38).

50.     Whether Mr. State would have terminated Mr. Fried's employment regardless of his age. (Ex. 4, p. 129; Ex. 5, p. 105; Ex. 6, pp. 25-26, 39, 74; Ex. 7, pp. 37, 74-77, 93-117; Ex. 8, pp. 34-37; Ex. 9; Ex. 11, pp. 118-20, 362; Ex. 12, p. 194; Ex. 15, ¶2; Ex. 16, Ex. 17, p. 13; Ex. 18; Ex. 19; Ex. 21; Ex. 33, pp. 62-63; Ex. 34; Ex. 36; Ex. 37; Ex. 38).

51.     When Mr. Fried first complained of age discrimination. (Ex. 3, pp. 54-57; Ex. 8, pp. 44-45, 48; Ex. 12, pp. 194-200).

52.     Whether Mr. Fried complained about age discrimination prior to Brian Simmons' November 2, 2010 email. (Ex. 3, pp. 54-57; Ex. 8, pp. 44-45, 48; Ex. 12, pp. 194-200).

53.     Whether Mr. Fried complained about age discrimination prior to the November 4, 2010 meeting of the Board of Directors of LVI Parent Corp. (Ex. 3, pp. 54-57; Ex. 8, pp. 44-45, 48; Ex. 12, pp. 194-200).

54.     When the Board of Directors first contemplated terminating Mr. Fried's employment (Ex. 3, p. 95; Ex. 25; Ex. 26).

55.     Whether Mr. State made the decision to terminate. (Ex. 27, No. 4; Ex. 28, No. 6; Ex. 29, No. 5; Ex. 30, No. 5).

56.     When Mr. State first contemplated terminating Mr. Fried's employment (Ex. 3, p. 93, 95; Ex. 5, p. 73; Ex. 25; Ex. 26).

57.     When Mr. State made the decision to terminate Mr. Fried's employment. (Ex. 3, p. 95; Ex. 25; Ex. 26).

58.     Whether Mr. State made the decision to terminate Mr. Fried prior to receiving the November 15, 2010 letter from Mr. Fried's counsel alleging age discrimination. (Ex. 3, p. 95).

59.     Whether Mr. Fried's complaints of age discrimination was a motivating factor in the decision to terminate his employment. (Ex. 3, pp. 54-57, 95; Ex. 5, pp.82-84, 87-92; Ex. 8, pp. 44-45, 48, 138-39; Ex. 12, pp.194-200; Ex. 25).

60.     Whether Mr. State would have terminated Mr. Fried's employment regardless of his complaints of age discrimination. (Ex. 3, pp. 54-57, 95; Ex. 5, pp.82-84, 87-92; Ex. 8, pp. 44-45, 48, 138-39; Ex. 12, pp.194-200; Ex. 25).

61.     Whether Mr. Fried had an adequate opportunity to fully and fairly litigate his CFEPA claims in the New York Action when the CHRO released jurisdiction over his CHRO Complaint two days before the New York Action was dismissed. (Ex. 41; Ex. 42).

62.     Whether Mr. Fried had an adequate opportunity to fully and fairly litigate his CFEPA claims in the New York Action when the CHRO released jurisdiction over his CHRO Complaint approximately six weeks after the district court in the New York Action granted partial summary judgment without an opinion. (Ex. 32; Ex. 42).

63.     Whether Mr. Fried had an adequate opportunity to fully and fairly litigate his CFEPA claims in the New York Action when the CHRO released jurisdiction over his CHRO Complaint approximately two weeks after the district court in the New York Action issued its opinion in connection with the grant of partial summary judgment. (Ex. 35; Ex. 42).

64.     Whether the district court in the New York Action determined if Mr. Fried's age was a motivating in the decision to terminate. (Ex. 35, pp. 18-27).

65.     Whether the district court in the New York Action determined that Defendants would have terminated Mr. Fried regardless of his age. (Ex. 35, pp. 18-27).

66.     Whether the district court in the New York Action determined if Mr. Fried's complaints of age discrimination were a motivating factor in the decision to terminate. (Ex. 35, p. 27-30).

67.     Whether the district court in the New York Action determined that Defendants would have terminated Mr. Fried regardless of his complaints of discrimination. (Ex. 35, pp. 27-30)

Dated: May 31, 2012
       New York, New York

                              Respectfully submitted,

                              THOMPSON WIGDOR LLP


                   By:   /s/ Shaffin A. Datoo_____
                         Douglas H. Wigdor (*Pro Hac Vice*)
                         Shaffin A. Datoo (*Pro Hac Vice*)


                         85 Fifth Avenue
                         New York, NY 10003
                         Telephone:     (212) 257-6800
                         Facsimile:     (212) 257-6845
                         dwigdor@thompsonwigdor.com
                         sdatoo@thompsonwigdor.com


                         William Madsen (ct 09853)
                         Todd Steigman (ct 26875)
                         Madsen, Prestley & Parenteau, LLC
                         44 Capitol Avenue, Suite 201
                         Hartford, CT 06106
                         Telephone:     (860) 246-2466
                         Facsimile:     (860) 246-1794
                         wmadsen@mppjustice.com
                         tsteigman@mppjustice.com

                         *Counsel for Plaintiff Burton T. Fried*