UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Shari L. Dembin and Burton T. Fried, <br>     *Plaintiffs*, <br>       *v.* <br> LVI Services, Inc., LVI Parent Corp., and Scott E. State, <br>     *Defendants*. | Civil No. 3:11CV1855 (JBA) <br><br><br> March 18, 2013 |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

On November 30, 2011, Plaintiff Burton T. Fried[1] filed this action [Doc. # 1] against his former employer, Defendant LVI Services, Inc. and Defendant LVI Parent Corp. (collectively "LVI"), and his employer's CEO, Defendant Scott E. State, claiming age discrimination under the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60(a)(1). Defendants move [Doc. # 47] for summary judgment on Plaintiff's claims. Defendants argue that Plaintiff's suit is barred by the doctrines of res judicata and collateral estoppel, and that his claims also fail on the merits because he has failed to establish a prima facie case or pretext. For the following reasons, Defendants' motion for summary judgment is granted.

I.      **Background**

    **A.      Factual Background**

Plaintiff, who is seventy–two, began his employment with Defendants in 1986, and held several positions with LVI, including General Counsel, President and CEO, interim President and CEO, and Chairman during his tenure there. Shortly before LVI was sold to another company in 2005, LVI, in consultation with Fried, began looking for

---

[1] Plaintiff Fried's daughter, Shari L. Dembin, was originally a plaintiff in this action, but the parties stipulated [Doc. # 15] to the dismissal of her claims before the pending motion was filed.

Fried's successor as President and CEO.  (*See* Ex. 4 to Datoo Decl. [Doc. # 57] at 36–37; Pl.'s Dep. at 74–77; Ex. D to Mann. Aff. [Doc. # 50] at CHS 000003.)  This search began when Fried expressed his desire to find a manager with the skill set to help LVI triple its earnings as it grew to be the leader in its industry.  (*See* Pl.'s Dep. at 76.)  LVI planned to have the new CEO take over the day–to–day operation of the business while Fried transferred to the role of active Chairman and focused on growth initiatives.  (*See* Ex. D. to Mann Aff. at CHS 000003.)  LVI and Fried memorialized these plans in a November 16, 2005 agreement, which stated that Fried would "serve as the Chairman . . . with primary responsibility for strategic growth," and that a replacement President and CEO would be hired "to oversee and conduct the day to day business of [LVI]."  (Ex. 13 to Datoo Decl. at BF_01.)[2]

In June 2006, Robert McNamara was hired as Defendants' President and CEO, and Plaintiff moved into his new role as Chairman.  (*See* Pl.'s Dep. at 81–82.)  Upon assuming the role of Chairman, Plaintiff agreed to a twenty–percent reduction in salary along with a commensurate twenty–percent reduction in his work schedule.  (*See* Pl.'s Dep. at 109.)[3]  In May 2010, McNamara resigned as President and CEO and Defendants' Board of Directors appointed Plaintiff as interim President and CEO until LVI found a permanent replacement.  (*See id.* at 110–12.)  While serving as interim President and CEO, Plaintiff's compensation returned to its previous level and he directed the search for a new President and CEO.  (*See id.* at 111, 113.)    During this time, Plaintiff also

---

[2] The parties also agreed that when the new President and CEO was hired, Plaintiff would begin working out of the Westport, Connecticut office full time, rather than splitting his time between Connecticut and LVI headquarters in New York City. (*See* Ex. 13 to Datoo Decl. at BF_02.)

[3] Plaintiff claims that he went back to a full–time schedule on his own initiative within one week of the reduction. (*See* Pl.'s Dep. at 110.)

participated in negotiations relating to the restructuring and recapitalization of LVI. Brian Simmons, a member of the LVI Board, recognized Plaintiff for his contribution to these negotiations. (*Id.*)

During the search, one or more LVI managers introduced Defendant State as a potential candidate for the President and CEO position. (Pl.'s Dep. at 117.) Plaintiff, who had known Defendant State for several years, recommended that State apply for the position. (*Id.* at 116–18.) Plaintiff proposed Defendant State to the LVI Board as the management choice for the President and CEO position. (*Id.*) During negotiations between Defendant State and LVI's Board, Defendant State asked to speak with Plaintiff. (*See* Ex. A to Mann Aff. at LVI 002465.) On September 21, 2010, Simmons indicated to Plaintiff that Defendant State might have concerns regarding Plaintiff's "ongoing role at LVI." (*Id.*) In response to these concerns, Plaintiff stated: "I am prepared to remain at LVI until he, the Board or I decide its [sic] time for me to leave . . . an offer he can't refuse. Ask you [to] recall that one of the purposes of my working in Westport was to get out of the way of the new CEO at the NY Corporate office. . . . [State] will be in charge and get all the room he wants from me." (*Id.*) On September 23, 2010, Defendant State accepted the position of President and CEO, and assumed his duties in that role shortly thereafter. (*See* Ex. H to Mann Aff.)

On October 5, 2010, Plaintiff and Defendant State scheduled an in–person meeting for later that week. (*See* Ex. O to Mann Aff.) In preparation for this meeting, Plaintiff sent Defendant State a list of the responsibilities he planned to undertake in his role as Chairman. (*See* Ex. P to Mann Aff.) This list included duties such as "monitor all employee air travel," "review and approve of all LVI Offers of Employment," and "select all outside counsel to represent LVI on legal matters." (*Id.*) On October 19, 2010,

Plaintiff met with Defendant State in LVI's New York office to discuss Plaintiff's responsibilities as Chairman. (*See* Pl.'s Dep. at 176–82.) During the meeting, Defendant State informed Plaintiff that he would be reassigning all of Plaintiff's responsibilities to other managers within the next three months, and after that, he would let Plaintiff know "if there [wa]s anything else for [Plaintiff] to do." (*Id.* at 182.) When Plaintiff asked Defendant State why he was eliminating all of Plaintiff's responsibilities as Chairman, Defendant State replied: "Burt, you're 71 years of age, how long do you expect to work?" (*Id.*)

On October 28, 2010, Plaintiff sent the list he had prepared for his meeting with Defendant State to Simmons. (*See* Ex. S to Mann Aff.) On November 2, 2010, Simmons responded to Plaintiff and informed him that the list was "more expansive" than what had been envisioned for the Chairman role. (*See* Ex. T to Mann Aff. at BSIMMONS 000027.) Simmons also stated that he would like to replace Plaintiff's existing employment contract with a consulting agreement, and that the Board was willing to discuss Plaintiff's future role in closed session at the upcoming Board meeting. (*See id.*) At the end of the regularly scheduled November 4, 2010 Board meeting, the Board, Defendant State, and Plaintiff discussed the nature of Plaintiff's role as Chairman. (*See* Pl.'s Dep. at 226–32, 242–51.) During the meeting, members of the Board informed Plaintiff that they supported Defendant State in his decision to reassign Plaintiff's responsibilities. (*See id.* at 242–51.)

On November 15, 2010, Plaintiff's counsel sent a letter to Defendant State informing State that Plaintiff intended to pursue his legal rights and requesting that Defendants' contact counsel regarding settlement of the issue. (*See* Ex. Z to Mann Aff. at BSIMMONS 000048.) The next day, Simmons, on behalf of Defendants sent Plaintiff a

4

letter informing Plaintiff that "[e]ffective November 30, 2010, your employment with LVI will terminate and you will be offered the opportunity to continue your relationship with LVI as a consultant." (Ex. Y to Mann Aff. at BSIMMONS 000038.) The letter also laid out the terms of a proposed consultancy agreement between Plaintiff and Defendants, which included a waiver of Plaintiff's age discrimination claims. (*See id.* at BSIMMONS 000038–41.) On November 30, 2010, Plaintiff submitted a resignation letter stating: "Effective immediately, because of the termination of my employment as Chairman of LVI Services Inc., I hereby resign all of my positions as Director and/or Officer of LVI Parent Corp., LVI Services Inc. and all of it's [sic] subsidiaries and affiliated companies." (Ex. AA to Mann Aff. at LVI 001030.) Plaintiff's employment with Defendants ended on November 30, 2010, but Defendants continued to offer Plaintiff a consultancy contract via communications with his counsel.

### B.    Procedural History

On December 13, 2010, Plaintiff filed suit against Defendants in the United States District Court for the Southern District of New York, alleging, *inter alia*, age discrimination and retaliation in violation of the New York City Human Rights Law. (*See* Ex. BB to Mann Aff. (Compl. in *Fried v. LVI Services, Inc.*, No. 10 Civ. 9308 (JSR)).) On February 3, 2011, Plaintiff amended that complaint to include causes of action for discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA"). (*See* Ex. CC to Mann Aff.) On May 16, 2011, Plaintiff filed a complaint with the State of Connecticut's Commission on Human Rights and Opportunities ("CHRO"). (*See* Ex. DD to Mann Aff.) Defendants moved for summary judgment in the New York action on June 10, 2011 (*see* Ex. FF to Mann Aff. at 12) and oral argument was held on July 6, 2011 (*see id.* at 13). Judge Rakoff granted summary judgment in favor of

Defendants' via text order on September 9, 2011, and issued an opinion outlining his reasoning on October 4, 2011 (*see id.* at 14).[4]  On October 17, 2011, the CHRO granted Plaintiff's request for a release of jurisdiction on his CFEPA claims (*see* Ex. DD to Mann Aff.), on November 14, 2011, Plaintiff appealed Judge Rakoff's ruling in *Fried v. LVI Services, Inc.* (*see* Ex. FF to Mann Aff. at 15), and two weeks later, on November 30, 2011, Plaintiff filed this action (*see* Compl. [Doc. # 1]).  On October 15, 2012, the Second Circuit affirmed the ruling granting summary judgment on Plaintiff's age discrimination claims.  *See Fried v. LVI Services, Inc.*, No. 11-4791-CV, 2012 WL 4856403 (2d Cir. Oct. 15, 2012).

## II.    Discussion[5]

Defendants argue that they are entitled to summary judgment on all claims because this suit is barred by the doctrines of res judicata and collateral estoppel. Furthermore, arguing in the alternative, Defendants assert that Plaintiff's claims fail on

---

[4] One prong of Sheri Dembin's claims survived this motion for summary judgment, but the parties stipulated to the dismissal of her claims in order to pursue an immediate appeal of Judge Rakoff's decision on Plaintiff's claims.

[5] "Summary judgment is appropriate where, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of the party against whom summary judgment is sought," *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When considering a motion for summary judgment, the Court may consider depositions, documents, affidavits, interrogatory answers, and other exhibits in the record. Fed. R. Civ. P. 56(c).

the merits because he has failed to establish a prima facie case of age discrimination and cannot show that Defendants' proffered reason for Plaintiff's termination is pretextual. Because the Court concludes that this action is barred by the doctrine of res judicata, this opinion does not address Defendants' other arguments.

Defendants argue that the decision[6] in *Fried v. LVI Services, Inc.* operates to bar the instant action under the doctrine of res judicata. "The doctrine of res judicata, or claim preclusion, applies in later litigation if an earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action."[7] *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 221–22 (2d Cir. 2012). "The preclusive effective of a

---

[6] When the parties' briefing on this motion was filed, the Second Circuit had not yet ruled on Plaintiff's appeal. Plaintiff argues that "the [Second Circuit's] decision is not relevant to and/or binding in this matter because it was a ruling by Summary Order." (Pl.'s Oct. 19, 2012 Ltr. at 1 (citing Loc. R. 32.1.1(a) of the Local Rules of the Court of Appeals for the Second Circuit).) In the context of Defendants' preclusion arguments, this summary order is not cited for its precedential value, but rather for its preclusive effect on the instant action. "Although preclusion is not affected by the fact that an appeal has been taken, the nature of the ultimate final judgment in a case ordinarily is controlled by the actual appellate disposition." Charles A. Wright & Arthur R. Miller et al., 18A *Federal Practice and Procedure* § 4432. Thus, Plaintiff's reliance on the Local Rule is misplaced, and the Court will consider the preclusive effect of the Second Circuit's ruling in this opinion.

[7] Under both federal law and Connecticut law, courts apply the transactional test to determine whether the present case involves the same claim or cause of action at issue in the first suit. *See Tibbetts v. Stempel*, 354 F. Supp. 2d 137, 149–50 (D. Conn. 2005) (finding that the under federal law "[r]es judicata or claim preclusion prevents a party from litigating any issue or defense that could have been raised or decided in a previous suit, even if the issue or defense was not actually raised or decided," and that under Connecticut law "[t]he claim that is extinguished by the judgment in the first action includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction . . . out of which the action arose" (internal citations and quotations omitted)). Both Plaintiffs' ADEA and CFEPA claims arose out of his termination, and thus the New York action involved the same "cause of action" as the instant matter.

federal court's judgment issued pursuant to its federal–question jurisdiction is governed by the federal common law of preclusion," *Wyly v. Weiss*, 697 F.3d 131, 140 (2d Cir. 2012), and thus the Court must look to federal law to determine whether the ruling in the New York action has preclusive effect.  In his opposition Plaintiff acknowledges that "the identity of the parties is the same as in the prior action,"  "the same claim or cause of action is at issue," and "the judgment in the prior action was rendered on the merits by a court of competent jurisdiction."[8]

Plaintiff argues, however, that because he did not have an adequate opportunity to fully and fairly litigate his CFEPA claims in the New York action, the Court should not apply res judicata to bar this action.  While this has been recognized as a relevant consideration under Connecticut law, *see State v. Osuch*, 124 Conn. App. 572, 581 (2010), *cert. denied*, 299 Conn. 918 (2010) ("The appropriate inquiry with respect to claim preclusion is whether the party had an adequate opportunity to litigate the matter in the earlier proceeding."), it is not a necessary element to res judicata under federal law.  *See Overview Books, LLC v. United States*, 438 F. App'x 31 (2d Cir. 2011) (listing the elements for res judicata and collateral estoppel and stating that "a full and fair opportunity to litigate the issue" is an element of collateral estoppel, rather than res judicata).  *But see*

---

[8] At oral argument, counsel for Plaintiff appeared to back away from this concession, arguing that there was no decision "on the merits" on Plaintiff's CFEPA claims because the Second Circuit did not decide whether age was a motivating factor in Plaintiff's termination and therefore the decision should not have preclusive effect. However, this contention conflates issue preclusion, or collateral estoppel, with claim preclusion, or res judicata.  A decision is "on the merits" for res judicata purposes if it "reaches and determines the real or substantial grounds of action or defense as distinguished from matters of practice, procedure, jurisdiction, or form." *Saylor v. Lindsley*, 391 F.2d 965, 968 (2d Cir. 1968).  The Second Circuit reached the substance of Plaintiff's federal age discrimination claims in the New York action, and thus the decision in *Fried v. LVI Services, Inc.* was "on the merits" for purposes of res judicata.

*NML Capital, Ltd. v. Banco Central de la Republica Argentina*, 652 F.3d 172, 185 (2d Cir. 2011) ("[Res judicata] is intended to proscribe every matter that was offered and received to sustain or defeat a cause of action as well as to any other matter that the parties had a full and fair opportunity to offer for that purpose." (internal quotations and citations omitted)).

The gravamen of Plaintiff's argument appears to be that he could not have brought his CFEPA claims in the New York action, because the CHRO only released jurisdiction over those claims after the district court had granted summary judgment in the case. Because res judicata bars only those claims that "could have been raised in that action," *Legnani v. Alitalia Linee Aeree Italiane, S.p.A.*, 400 F.3d 139 (2d Cir. 2005), Plaintiff argues that his CFEPA claims should not be barred by res judicata. *Cf. Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 384 (2d Cir. 2003) ("Claims arising subsequent to a prior action need not, and often perhaps could not, have been brought in that prior action; accordingly, they are not barred by res judicata regardless of whether they are premised on facts representing a continuance of the same course of conduct.")

Defendants cite several cases from within this circuit where courts found that a plaintiff's subsequent suit was barred by res judicata even where he did not receive a notice of right to sue until after the prior case was decided. In *Woods v. Dunlop Tire Corp.*, 972 F.2d 36 (2d Cir. 1991), the plaintiff brought suit against her employer alleging violations of the Labor Management Relations Act ("LMRA"). Before filing suit, she had also filed charges with the EEOC, but the EEOC did not issue a Notice of Right to Sue on the plaintiff's Title VII claims until two years after her LMRA claims had been dismissed. When the plaintiff brought a second suit against her employer, asserting her Title VII claims, the district court found that her suit was barred under the doctrine of res judicata.

The Second Circuit affirmed the district court's determination, holding that res judicata was appropriate in that instance, because the plaintiff could have pursued one of two alternate courses of action that would have preserved her right to bring both claims in the same suit:

> As a first alternative, [the plaintiff] could have filed her LMRA claim and then sought a stay in the district court pending the outcome of her Title VII administrative proceedings.  Once administrative review had been completed, [the plaintiff] could then have joined her Title VII claim with her LMRA claim by amending the complaint in the LMRA suit. . . . . As a second alternative, Woods simply could have filed the LMRA action, sought a right to sue notice on her Title VII claim from the EEOC after 180 days, and then amended the complaint in her LMRA suit to include the Title VII claim.

*Id.* at 41; *see also Barnes v. Royal Health Care LLC*, F. App'x 375, 377 (2d Cir. 2009) ("[Plaintiff] attempts to avoid [the effects of res judicata] by arguing that his federal employment discrimination claims were unexhausted at the time he commenced his state court action, and that he therefore could not have asserted them in that action.  However, he could have either (1) commenced his state court action and then stayed the proceedings pending the outcome of his Title VII EEOC charges; or (2) amended his state court complaint to include his Title VII claim once he received a right–to–sue letter from the EEOC.")  Similarly in *Mulero v. Hartford Bd. of Educ.*, No. 05cv630 (PCD), 2006 WL 752852 (D. Conn. Mar. 20, 2006), the district court found that res judicata barred the plaintiff from filing a second suit against her employer relating to her termination where she did not receive her right–to–sue letter from the EEOC before the district court dismissed the first action.  In *Mulero*, the court relied on the Second Circuit's holding in *Wood* to find that while "[i]t may be true that Plaintiff was legally unable to allege a Title

VII claim in the prior complaint . . . , she could have either stayed the proceedings or later amended the complaint." *Id.* at *3.

Plaintiff attempts to distinguish *Woods* and *Mulero* because in those cases, the plaintiffs waited for years after filing their first actions to bring the subsequent suits, and because they could have requested right–to–sue letters 180 days after their EEOC complaints were filed, which would have given them ample time to amend their original complaints with their additional claims.  In this case, Plaintiff requested a release of jurisdiction from the CHRO at the earliest possible date, which was after the district court granted summary judgment in the New York action.  However, in *Mennella v. Office of Court Administration et al*, No. 97-7811, 1998 WL 650812 (2d Cir. Aug. 21, 1998), the Second Circuit extended its holding in *Woods* to apply to those cases where the plaintiff could not have requested a right–to–sue letter until after the original suit had been dismissed:

> According to [the plaintiff], *Woods* cannot apply because his first complaint had been dismissed before the 180–day period of exclusive EEOC jurisdiction had expired.  But this does not avoid the rule set forth in *Woods*, because [the plaintiff] could have sought a stay of his first action in order to allow the requisite periods to pass.

*Id.* at *2.  Here, although Plaintiff received his release of jurisdiction from the CHRO on October 17, 2011, which was several days after the district court granted summary judgment in the New York action, Plaintiff filed his claim with the CHRO on May 16, 2011, before Defendants had even moved for summary judgment.  Thus, Plaintiff had ample time to request a stay of the New York action pending receipt of the release of jurisdiction in order to amend his complaint to add his CFEPA claims.

In a further attempt to distinguish *Woods*, Plaintiff argues that his case is similar to *Devlin v. Transportation Communications Intern.*, 175 F.3d 121 (2d Cir. 1999) and that

therefore res judicata should not apply.  In *Devlin*, the plaintiffs first brought claims under state law and ERISA in a first action, and then in a separate action filed eleven months later, asserted their ADEA claims.  *See id.* at 128.  The plaintiffs waited to file the second suit because the EEOC had not yet issued their right–to–sue letter when the first action was commenced.  *See id.*  However, when the second action was filed, it was referred to the same judge who was deciding the first–filed action and was accepted by that judge on the basis that it was a related case.  *See id.* at 129.  The Second Circuit held that res judicata should not bar the plaintiffs' second suit under these circumstances because the district court had prior notice of both actions, understood that they were related, and had the authority to consolidate them *sua sponte* when the second action was filed.  *See id.* at 129–30.  Plaintiff states that because Judge Rakoff was notified that Plaintiff had filed charges with the CHRO relating to his termination, the district court had knowledge of the potential for both suits and res judicata therefore should not apply under the circumstances.[9]  However, unlike a situation where two related cases are pending before the same judge, Plaintiff's second suit was never before Judge Rakoff, and the mere fact that the district court in the New York action was advised of the existence of Plaintiff's administrative CFEPA claims does not inoculate Plaintiff's second suit from a res judicata challenge.  It is simply unrealistic to require a district court to act *sua sponte* to stay an action indefinitely based on the possibility that the plaintiff might file a related action at some point in the future.  In *Devlin* the district court had specific knowledge of both pending actions on its active calendar and clearly had procedural authority to

---

[9] This was apparently done by Defendants in a footnote to their memorandum of law in support of their motion for summary judgment.  (*See* Ex. 43 to Datoo Aff.)  However, Plaintiff himself never brought the CHRO filing to the attention of the district court, and the issue of seeking a stay was never discussed.

consolidate those related cases *sua sponte*.  Thus its holding is distinguishable from the circumstances in this case.

Plaintiff also references two district court opinions from outside this Circuit where courts found that res judicata did not bar a second suit by a plaintiff in circumstances similar to the case at bar.  *See Ludwig v. Quebecor Dailies, Inc.*, 483 F. Supp. 594 (E.D. Pa. 1980); *Mitchell v. Board of Trustees of Pickens County School Dist.*, 380 F. Supp. 197 (D.S.C. 1973).  While these two cases may be factually similar to the case at bar, they are outdated in that they are at odds with the Second Circuit precedent announced in *Woods* and extended by *Mennella*.  In its opinion in *Woods*, the Second Circuit cited both *Ludwig* and *Mitchell*, but rejected their reasoning to reach the opposite conclusion under similar circumstances.  *See Woods*, 972 F.2d at 39–40.  Under *Woods* and *Mennella*, Plaintiff bore the burden of informing the Southern District of his potential CFEPA claims as soon as they were filed with the CHRO and taking action to preserve his right to assert those claims in the original suit.  Based on the controlling precedent of this Circuit, Plaintiff could have brought or preserved his CFEPA claims for consideration in the New York action by requesting a stay pending the issuance of a release of jurisdiction from the CHRO, but failed to take any steps to do so.  Thus, his current suit asserting his CFEPA claims is barred by the doctrine of res judicata.

### III.    Conclusion

For the foregoing reasons, Defendants' Motion [Doc. # 47] for Summary Judgment is GRANTED.  The Clerk is hereby directed to enter judgment in favor of Defendants and to close the case.


IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.


Dated at New Haven, Connecticut this 18th day of March, 2013.

14